UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

N-12-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:14CR |
| | : |
| | : 18 U.S.C. §§ 1519, 2 (Falsification of |
| | Records in a Federal Investigation); |
| v. | : 18 U.S.C. § 371 (Conspiracy); |
| | : 18 U.S.C. §§ 1001, 2 (False Statements); |
| | : 2 U.S.C. § 437g, *et seq.*, 18 U.S.C. § 2 |
| | : (Illegal Campaign Contributions) |
| JOHN G. ROWLAND | : |

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

Unless otherwise indicated, at all times relevant to this Indictment:

#### The Defendant and His Co-Conspirators

1.     JOHN G. ROWLAND ("ROWLAND") was the former governor of the State of Connecticut. He served as governor of Connecticut from approximately 1995 to 2004, when he resigned from office prior to the completion of his term. ROWLAND had previously served as a representative to the U.S. House of Representatives from Connecticut's Fifth Congressional District from approximately 1985 to 1991.

2.     Brian Foley ("Foley"), a co-conspirator who has been charged separately, was the owner of a Connecticut nursing home company (the "Nursing Home Company"). Foley also owned a number of other related companies, including a real estate company (the "Real Estate Company"). Foley was the husband of Lisa Wilson-Foley.

3.     Lisa Wilson-Foley ("Wilson-Foley"), a co-conspirator who has been charged separately, was a candidate for election to the U.S. House of Representatives from Connecticut's

Fifth Congressional District in 2011 and 2012, and competing in a primary campaign for the nomination of the Republican Party.

4.      Political Advisor 1, an unindicted co-conspirator, was an advisor to Wilson-Foley's Congressional campaign.

5.      Attorney 1, an unindicted co-conspirator, was an attorney for the Nursing Home Company. Attorney 1 also maintained a private law office in New Haven County.

6.      Executive 1, an unindicted co-conspirator, was an executive at the Nursing Home Company.

<u>Other Relevant Entities and Individuals</u>

7.      JGR Associates, LLC was a consulting company founded and owned by ROWLAND.

8.      Lisa Wilson-Foley for Congress was the principal campaign committee for Wilson-Foley's Congressional campaign. The Campaign Committee was registered with the Federal Election Commission, and formed so that Wilson-Foley's campaign could accept contributions and make expenditures on the campaign's behalf.

9.      Candidate 2 was a candidate for election to the U.S. House of Representatives from Connecticut's Fifth Congressional District during the 2009-2010 and 2011-2012 election cycles, and competed in a primary campaign for the nomination of the Republican Party during each of those cycles. Candidate 2 was also the owner of an animal rescue and adoption center, located in Bloomfield, Connecticut (the "Animal Center").

10.     Executive 2 was an executive at the Nursing Home Company.

11.     Campaign Worker 1 was an employee of Wilson-Foley's campaign in the fall of 2011.

12.     Campaign Worker 2 was an employee of Wilson-Foley's campaign in 2011 and 2012.

The Election Act

13.     The Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Sections 431, *et seq*. ("Election Act"), limited financial influence in the election of candidates for federal office, including the office of United States Representative. The Election Act was enforced by the Federal Election Commission and the United States Department of Justice. It provided for public disclosure of certain contributions to and expenditures by federal election campaigns:

   a.   The Election Act limited the amount and source of money that may be contributed to a federal candidate or that candidate's authorized campaign committee ("contributions"); and

   b.   In 2011 and 2012, the Election Act limited convention, primary and general election campaign contributions to $2,500 each for a total of $7,500, from any individual to any one candidate.

14.     The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to compile and publicly report accurate information about the source and amount of contributions to federal campaigns. Federal candidates were required to file periodic reports with the FEC detailing, among other things, contributions made to their campaigns and expenditures made on the campaign's behalf. In these reports, the campaign committees were required to identify each person who, during the relevant reporting period, contributed more than $200 to the committee,

3

together with the date and the amount of any such contribution. These reports were made available to the public.

15.     The Campaign Committee was required to and did file these periodic reports with the FEC.

COUNT ONE
(Falsification of Records in a Federal Investigation)

16.     The allegations contained in paragraphs 1 through 15 of this Indictment are realleged and incorporated as though fully set forth herein.

17.     Beginning in approximately October 2009, ROWLAND devised a scheme to work for the Congressional campaign of Candidate 2, and to conceal from the FEC and the public the fact that he would be paid to perform that work. To conceal the payments to ROWLAND, which Candidate 2's campaign would otherwise be required to report to the FEC, ROWLAND proposed to be paid through a separate corporate entity, that is, the Animal Center. Further, to make the illegal arrangement appear legitimate, ROWLAND drafted and proposed to enter into a sham consulting contract with Candidate 2, pursuant to which ROWLAND would purportedly perform work for the Animal Center. By proposing to run the campaign related payments to ROWLAND through the Animal Center, ROWLAND sought to prevent actual campaign contributions and expenditures from being reported to the FEC and the public.

18.     On or about October 18, 2009, ROWLAND emailed an attorney: "attached is a contract that I have put together I hope you will be impressed, then I thought I better run it by you." Attached to the email was a document titled, "[Candidate 2] contract.docx." The attached document was a contract to be signed by ROWLAND and Candidate 2 that outlined fictitious duties that ROWLAND would perform for the Animal Center.

4

19.     On or around October 23, 2009, ROWLAND met with Candidate 2 at the Animal Center. At the meeting, ROWLAND provided Candidate 2 with the fictitious contract, purporting to establish a paid consulting relationship between ROWLAND and the Animal Center. In fact, ROWLAND was proposing to perform paid campaign work for Candidate 2's Congressional campaign.

20.     On or about October 23, 2009, ROWLAND emailed Candidate 2 with the subject line "working together." ROWLAND wrote: "Let me know if you want to put your own proposal together. Unfortunately, it was very difficult to get into a long discussion this week in Bloomfield. Your wife was very patient with us and I didn't want to push it. Let me know. Have a great weekend. Love the Gov."

21.     On or about November 2, 2009, in furtherance of his scheme, ROWLAND emailed Candidate 2: "Do you want to meet again?"

22.     On or about November 3, 2009, Candidate 2 responded via email: "I always enjoy your company." ROWLAND replied: "I appreciate that you enjoy my company, but do you want to negotiate a contract? By the way, there will be another Republican candidate or two after today's election. let [sic] me know thanks."

23.     On or about December 16, 2009, ROWLAND emailed a political consultant: "I have talked with [Candidate 2] about helping him, his little non-political friends tell him I would hurt him [maybe in the htfd. courant readership] but I don't think in the 5th, and actually no one knows [Candidate 2][.] I told his people that most political types would be more curious that I was helping [Candidate 2] and would be a help to his fledging [sic] campaign .... if [Candidate 2] is willing to spend his own $$ and raise some he could win."

5

24.     On or about May 23, 2010, ROWLAND emailed Candidate 2: "I'm not as unpopular as your campaign manager would lead you to believe !! especially , [sic] in the 5th district. I can get you elected .... If you are interested[.]"

25.     On or about June 1, 2010, ROWLAND wrote to Candidate 2 that other political consultants "can not get [sic] you elected .. none of them will want me involved for obvious financial self interests [sic] ... I give you the only chance of winning and that is still going to be hard, [ by the way what you don't understand is .. if I go with you I am going against alot [sic] of friends from 25 yrs ,, [sic] not easy for me to do[.]]  Sorry about today , [sic] I thought I was coming over , for you to give me a pitch , not that I was supposed to sell myself to you, I tried that already."

26.     On or about October 18, 2009, in the District of Connecticut, ROWLAND, in relation to and in contemplation of a matter within the jurisdiction of the FEC and the United States Department of Justice, did knowingly falsify and make material false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of that matter, that is, ROWLAND falsified and made material false entries in a contract for services between ROWLAND and Candidate 2 in order to conceal from the FEC and the United States Department of Justice that payments made pursuant to the fictitious contract would, in fact, be in consideration for work performed by ROWLAND on behalf of Candidate 2's campaign for election to the U.S. House of Representatives.

All in violation of Title 18, United States Code, Section 1519.

6

COUNT TWO
(Conspiracy)

27.     The allegations contained in paragraphs 1 through 15 of this Indictment are realleged and incorporated as though fully set forth herein.

## Background of the Conspiracy

28.     On or about September 5, 2011, ROWLAND emailed Foley and Wilson-Foley: "I have an idea to run by you, what days are good?"

29.     On or about September 12, 2011, ROWLAND, Foley and Wilson-Foley met to discuss ROWLAND's idea. At the meeting, ROWLAND recommended to Foley and Wilson-Foley that they hire him to work on Wilson-Foley's campaign. ROWLAND suggested that he could replace Wilson-Foley's campaign consultant, who was based in Washington, D.C., and perform a variety of services for the campaign.

30.     On or about September 14, 2011, ROWLAND emailed Foley: "I had a brief chat with Lisa, I get it, Let's you and I meet[.]"

31.     On or about September 16, 2011, ROWLAND met with Foley. At the beginning of the meeting, ROWLAND falsely stated that Candidate 2 had offered ROWLAND a position on his Congressional campaign, but that ROWLAND would prefer to work for Wilson-Foley. In fact, Candidate 2 had made no such offer.

## The Conspiracy

32.     From on or about September 16, 2011 to in or about April 2012, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, ROWLAND, together with Foley and Wilson-Foley, who have been charged separately, and others known and

unknown to the Grand Jury, did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other to:

     a.    knowingly falsify and make false entries in a document in relation to and in contemplation of a matter within the jurisdiction of the FEC and the United States Department of Justice with the intent to impede, obstruct, and influence the investigation and proper administration of that matter, in violation of Title 18, United States Code, Section 1519;

     b.    falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the executive branch of the United States Government by, among other things, causing the Campaign Committee to create and file false and misleading campaign finance reports with the FEC, in violation of Title 18, United States Code, Sections 1001(a)(1) and 2;

     c.    make contributions and cause contributions to be made by Foley through the Real Estate Company to the Campaign Committee, which aggregated $2,000 or more (but less than $25,000) during a calendar year, in excess of the limits of the Election Act, in violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f) and 437g(d)(1)(A)(ii), and Title 18, United States Code, Section 2;

     d.    defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the FEC, in violation of Title 18, United States Code, Section 371.

Purpose of the Conspiracy

33.    The purpose of the conspiracy was to conceal from the FEC and the public that ROWLAND was paid money in exchange for services he provided to Wilson-Foley's campaign for election to the U.S. House of Representatives.

Manner and Means of The Conspiracy

34.    The manner and means by which ROWLAND, Foley, Wilson-Foley and others, both known and unknown to the Grand Jury, sought to accomplish the objects of the conspiracy included the following:

   a.    It was part of the conspiracy that ROWLAND, Foley and others created and executed a fictitious contract outlining an agreement purportedly for consulting services between ROWLAND and the law offices of Attorney 1.

   b.    It was part of the conspiracy that Foley made payments to ROWLAND for his work on behalf of Wilson-Foley's campaign in excess of the legal contribution limits, and routed those payments from the Real Estate Company through the law offices of Attorney 1 and on to ROWLAND.

   c.    It was part of the conspiracy that ROWLAND provided nominal services to the Nursing Home Company in order to create a "cover" or pretext that he was being paid for providing consulting services to the Nursing Home Company when, in fact, he was being paid for his work on behalf of Wilson-Foley's campaign.

   d.    It was part of the conspiracy that Wilson-Foley, ROWLAND and others concealed from the FEC and the public Foley's unlawful contributions to

the Campaign Committee and the payments to ROWLAND, by causing the Campaign Committee to file with the FEC false and misleading campaign finance reports that failed to disclose these illegal contributions.

Overt Acts

35.     In furtherance of the conspiracy and to accomplish its purpose and objects, ROWLAND, Foley, Wilson-Foley and others, both known and unknown to the Grand Jury, committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.     On or about September 27, 2011, ROWLAND emailed Wilson-Foley: "Does [campaign staffer] know I am 'helping' … should I work with him on delegate ideas/strategy[?]"

b.     In or about October 2011, ROWLAND began working regularly on Wilson-Foley's campaign.

c.     On or about October 11, 2011, Attorney 1 emailed Foley: "[Executive 1] asked me to construct a consulting agreement between [the Nursing Home Company] and John Rowland[.] I would recommend that due to me [sic] Rowland's background and the compliance issue that creates and links to Lisa's campaign that the contract be between my Law Office and Mr [sic] Rowland – that way there is no connections."

d.     On or about October 12, 2011, Attorney 1 emailed Foley and attached a document titled, "RowlandConsult.doc." The email stated, "Attached is a draft agreement b/t Rowland and my law firm[.] I have discussed with [Executive 1 and Executive 2] – please let me know if you have any

10

revisions[.]" The attached draft contract referred to ROWLAND as "the Consultant." In a section titled "Duties," the draft contract stated, "The Consultant shall provide the following services ('Services'): a) Provide education, opinions and information on the State of Connecticut and federal government's election process; b) Assistance with the campaign of any candidate that the Nursing Home Company or its member(s) become engaged with[.]" A section titled "Restricted Activities" provided that, "During the Term and for a period of one (1) year after termination of this Agreement, Consultant will not directly or indirectly: (i) Assist, become employed, consult or contract with any 2012 candidate for federal or State of Connecticut office in which the [Nursing Home Company] or its Managing Member is not engaged in."

e.   In or about the week beginning October 9, 2011, Wilson-Foley advised Campaign Worker 1 that paying ROWLAND through Foley was advantageous to Wilson-Foley's campaign.

f.   On or about October 13, 2011, Attorney 1 emailed Foley: "I spoke with [Executive 1] on the Rowland [sic] and your VM[.] I'll make the changes[.]"

g.   On or about October 17, 2011, Attorney 1 emailed a copy of a second draft of the contract to Executive 1 and Executive 2. In a section titled "Duties," the draft contract still stated, "The Consultant shall provide the following services ('Services'): a) Provide education, opinions and information on the State of Connecticut and federal government's election

11

process." The second draft deleted the previous sub-paragraph b). The second draft also proposed deleting a paragraph entitled "Restricted Activities."

h.   On or about October 19, 2011, ROWLAND emailed Foley: "I think this arrangement is going to work out better than either one of us had anticipated.  I wanted to follow up because I think we left 'our agreement' a little up in the air regarding 'term' [sic] ,want [sic] to talk today or tomorrow by phone?"

i.   On or about October 21, 2011, Foley emailed Attorney 1: "Make the agreement for 6 months and put in language that the agreement in [sic] not for political purposes – Lisa's campaign."

j.   On or about October 24, 2011, Attorney 1 emailed Foley a draft version of the contract.

k.   On or about October 24, 2011, ROWLAND emailed Foley: "Looking at wed late morning with [a potential lobbyist for the Nursing Home Company]. Would like to do a meeting with you , [sic]  Lisa and [Political Advisor 1] at your convenience as well."

l.   On or about October 25, 2011, ROWLAND emailed Foley: "Meet [lobbyist] 10;30ish [sic] at [sic] tour office * meet with Lisa [Political Advisor 1] after.?"  Foley forwarded the email to Wilson-Foley, Executive 1, Executive 2 and back to ROWLAND.

m.   On or about October 25, 2011, Foley emailed himself, ROWLAND, Wilson-Foley, Executive 1 and Executive 2: "OK for 10:30 at the [nursing home] office. Lisa and [Political Advisor 1] at about 12:00."

n.   On or about October 26, 2011, Foley emailed Attorney 1: "Where is the language on Non political [sic]." Attorney 1 responded: "I left it out because it (in my opinion) draws attention to it. Also since the contract is with my firm, I am not concerned it will ever be discovered."

o.   On or about October 27, 2011, ROWLAND emailed Foley: "Don't remember if I put JGR Associates , LLC as the Company on the draft contract but that will give us more cover as well vs. individual[.]"

p.   On or about October 27, 2011, Foley emailed Attorney 1 a copy of ROWLAND's handwritten changes to the contract.

q.   On or about November 7, 2011, Foley and ROWLAND finalized the contract. They dated the contract to October 1, 2011.

r.   On or about November 7, 2011, ROWLAND sent an email to Attorney 1 attaching an invoice for $10,000. The Invoice was directed to "The Law Offices of [Attorney 1]." It stated, "Services: Consulting fee per our agreement; For the month of Oct. and November, $5,000 per month."

s.   On or about November 11, 2011, Attorney 1 paid ROWLAND $10,000 in funds originating with Foley.

t.   On or about November 16, 2011, Wilson-Foley sent an email to ROWLAND and Political Advisor 1, containing the storyboard of a

13

commercial that the Nursing Home Company was going to air to promote Wilson-Foley's campaign.

u.    On or about November 30, 2011, ROWLAND emailed Wilson-Foley, saying, "I mentioned this to [Political Advisor 1] as well … I am just a volunteer helping you and 'many other Republican candidates' in case anyone asks. I want to stay under the radar as much as possible and get the job done.. after Clarke [sic] gets out of the race it can be different , want to avoid a bad article, will try to make Sat nite."

v.    On or about December 2, 2011, ROWLAND sent an email to Attorney 1 attaching an invoice for $5,000. The Invoice was directed to "The Law Offices of [Attorney 1]." It stated, "Services: Consulting fee per our agreement; For the month of Dec. $5,000 per month."

w.    On or about December 6, 2011, Attorney 1 paid ROWLAND $5,000 in funds originating with Foley.

x.    On or about December 18, 2011, Political Advisor 1 emailed ROWLAND: "At a party last night, [a political associate] said there was talk about your role in [Wilson-Foley's] campaign being subsidized by [Foley] and [Wilson-Foley] enterprises. I said it was news to me as well as your role. Not sure [political associate] believed me, but I gave it a shot. I have not completely reviewed Lisa's response if asked, but we should have something[.]"

y.    On or about December 18, 2011, ROWLAND responded to Political Advisor 1 via email: "interesting, where do you think he got info?"

z.   On or about December 18, 2011, Political Advisor 1 responded to ROWLAND via email: "I didn't ask but my gut tells me it came from [Campaign Worker 1]. [The political associate] brought his name up later, so that made me think of it. I don't think [Campaign Worker 2] is the leak and he doesn't know [the political associate]."

aa.  On or about December 20, 2011, Political Advisor 1 emailed Wilson-Foley about commercials that the Nursing Home Company was going to air featuring Wilson-Foley. Political Advisor 1 informed Wilson-Foley via email that he believed the commercials would cause an opponent to file a complaint with the FEC: "So, now, instead of talking about what we want to talk about we are in a story that has words like 'illegal' 'skirting' 'violation' and 'wealthy.' ... While some people will see the ad, notice you and make the connection, most people won't."

bb.  On or about December 21, 2011, ROWLAND emailed Executive 1, copying Political Advisor 1 and forwarding Political Advisor 1's email to Wilson-Foley from the previous day.   ROWLAND wrote, "[Political Advisor 1] and I have been talking about the forwarded email, we have some real concerns this is a lose/lose problem. Putting Lisa in the ads gets us nothing, no name ID no credit politically, but will raise alot [sic] of 'issues' use of corporate $$ etc. think if Linda Mcmahon [sic], statrted [sic] doing WWF ads the press and the Dems will cream her, plus I know Brian thinks it gets her name out but it really doesn't it just begs the issue.

15

no [sic] gain. I know it seemed harmless but the more we think about it , [sic] it will bring legitimate criticism with no upside."

cc.   On or about January 2, 2012, ROWLAND sent an email to Attorney 1 attaching an invoice for $5,000. The Invoice was directed to "The Law Offices of [Attorney 1]." It stated, "Services: Consulting fee per our agreement; For the month of Jan. $5,000 per month."

dd.   On or about January 10, 2012, Attorney 1 paid ROWLAND $5,000 in funds originating with Foley.

ee.   On or about January 16, 2012, Attorney 1 emailed Foley, copying Executive 1 and Executive 2, and attached a document created by ROWLAND to support the pretext that he was being paid for services rendered to the Nursing Home Company. Attorney 1 wrote, "This is the quarterly report from John Rowland per the agreement he has with me." The "Quarterly Report" consisted of one page of hand written notes and a number of attached pages.

ff.   On or about February 6, 2012, Attorney 1 emailed Foley, copying Executive 1 and Executive 2, and attached a document to the email.  The attached document was created by ROWLAND to support the pretext that ROWLAND was being paid for services rendered to the Nursing Home Company.

gg.   On or about February 6, 2012, Attorney 1 paid ROWLAND $5,000 in funds originating with Foley.

16

hh.  On or about February 27, 2012, Political Advisor 1 emailed Wilson-Foley, copying ROWLAND and Campaign Worker 2.   Political Advisor 1 advised that a reporter claimed to know that ROWLAND "is 'working' for us, which I said was incorrect. I said John was offering advise [sic] and was supportive (he had the fact that [ROWLAND] was calling delegates) but doing it freely and on his own time.  I said he was not being paid."

ii.  On or about March 1, 2012, ROWLAND emailed Attorney 1 an invoice for $5,000. The Invoice was directed to "The Law Offices of [Attorney 1]." It stated, "Services: Consulting fee per our agreement; For the month of March $5,000 per month."

jj.  On or about March 3, 2012, Attorney 1 and ROWLAND engaged in an email discussion about extending ROWLAND's contract.

kk.  On or about March 6, 2012, Foley directed Attorney 1 to extend ROWLAND's contract for six months.

ll.  On or about March 6, 2012, Attorney 1 paid ROWLAND $5,000 in funds originating with Foley.

mm.  In or about March 2012, ROWLAND had a conversation with Foley in which ROWLAND asked for a bonus if Wilson-Foley won the Republican convention.

nn.  On or about April 1, 2012, ROWLAND emailed Attorney 1 an invoice for $5,000. The Invoice was directed to "The Law Offices of [Attorney 1]." It stated, "Services: Consulting fee per our agreement; For the month of April $5,000 per month."

oo.   On or about April 7, 2012, Attorney 1 paid ROWLAND $5,000 in funds originating with Foley.

pp.   On or about April 10, 2012, Attorney 1 advised ROWLAND via email that ROWLAND's check for the seventh month of payment was "going out tomorrow."

qq.   On or about April 21, 2012, Political Advisor 1 sent a text message to ROWLAND: "Gov – we have to disclose the legal relationship between you and [the Nursing Home Company] as a subcontractor. Brian, [Campaign Worker 2], [Wilson-Foley] and I have talked and we need to chat but call Brian ASAP."

rr.   On or about April 21, 2012, Political Advisor 1 drafted talking points designed to mislead the public concerning the true purpose of the payments to ROWLAND, and circulated those talking points to ROWLAND, Foley, Wilson-Foley and Campaign Worker 2.

ss.   On or about April 25, 2012, Executive 1 circulated to Attorney 1 a proposed press release regarding the payments to ROWLAND. The press release was designed to mislead the public concerning the true purpose of the payments to ROWLAND.

tt.   On or about April 25, 2012, Executive 1 circulated to Foley and Wilson-Foley the draft press release.

uu.   On or about April 26, 2012, responding to allegations by Candidate 2 that ROWLAND had approached Candidate 2 during the 2009-2010 election cycle and proposed a similar illegal arrangement, Political Advisor 1

18

wrote to ROWLAND: "if you have anything to refute [Candidate 2], I need it to start to f_ck this smuck [sic]."

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
(Falsification of Records in a Federal Investigation)

36.     The allegations contained in paragraphs 1 through 15 and 28 through 35 of this Indictment are realleged and incorporated as though fully set forth herein.

37.     On or about November 7, 2011, in the District of Connecticut, ROWLAND, in relation to and in contemplation of a matter within the jurisdiction of the FEC and the United States Department of Justice, did knowingly falsify and make material false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of that matter, that is, ROWLAND falsified and made material false entries in a contract for services between ROWLAND and the law offices of Attorney 1 in order to conceal from the FEC and the United States Department of Justice the fact that payments made pursuant to the fictitious contract would, in fact, be in consideration for work performed by ROWLAND on behalf of Wilson-Foley's campaign for election to the U.S. House of Representatives.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNTS FOUR AND FIVE
(Causing False Statements)

38.     The allegations contained in paragraphs 1 through 15 and 28 through 35 of this Indictment are realleged and incorporated as though fully set forth herein.

39.     On or about the dates set forth below, in the District of Connecticut and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, ROWLAND knowingly and willfully caused the submission of a materially false,

19

fictitious and fraudulent statement and representation, that is, the submission by an authorized campaign committee of a candidate for the U.S. House of Representatives to the FEC of a report that was materially false and misleading in reporting contributions made to the campaign.

| COUNT | DATE | TIME PERIOD COVERED | REPORT |
|-------|------|---------------------|--------|
| 4 | 1/31/2012 | October 1, 2011 – December 31, 2011 | 2011 Year End Report |
| 5 | 4/15/2012 | January 1, 2012 – March 31, 2012 | April 2012 Quarterly Report |

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT SIX
(Illegal Campaign Contributions)

40.     The allegations contained in paragraphs 1 through 15 and 28 through 35 of this Indictment are realleged and incorporated as though fully set forth herein.

41.     During the calendar year 2011, in the District of Connecticut and elsewhere, ROWLAND caused contributions, which aggregated $2,000 or more (but less than $25,000) during a calendar year, to be made by Foley through the Real Estate Company to the Campaign Committee in excess of the limits of the Election Act.

All in violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f) and 437g(d)(1)(A)(ii) and Title 18, United States Code, Section 2.

## COUNT SEVEN
(Illegal Campaign Contributions)

42.     The allegations contained in paragraphs 1 through 15 and 28 through 35 of this Indictment are realleged and incorporated as though fully set forth herein.

43.     During the calendar year 2012, in the District of Connecticut and elsewhere, ROWLAND caused contributions, which aggregated $2,000 or more (but less than $25,000)

during a calendar year, to be made by Foley through the Real Estate Company to the Campaign

Committee in excess of the limits of the Election Act.

All in violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f) and

437g(d)(1)(A)(ii) and Title 18, United States Code, Section 2.

A TRUE BILL

/ s /

FOREPERSON

UNITED STATES OF AMERICA

MICHAEL J. GUSTAFSON
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515

LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY

CHRISTOPHER M. MATTEI
ASSISTANT UNITED STATES ATTORNEY

21