# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
UNITED STATES OF AMERICA  :
:
    v.  :
:    Case No. 3:14-CR-79 (EBB)
JOHN G. ROWLAND,  :
:
    Defendant.  :
:    Dated: May 20, 2014
---------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DISMISSAL OF COUNTS 1 AND 3
## <u>BASED ON THEIR FAILURE TO ALLEGE AN OFFENSE</u>

<pre>
                              Reid H. Weingarten
                              William L. Drake
                              STEPTOE & JOHNSON LLP
                              1330 Connecticut Ave. NW
                              Washington, D.C. 20036
                              (202) 429-8082

                              Michelle L. Levin
                              STEPTOE & JOHNSON LLP
                              1114 Avenue of the Americas
                              New York, New York 10036
                              (212) 506-3900

                              Kaitlin A. Halloran
                              HALLORAN & HALLORAN
                              9 Lewis Street, 1st Floor
                              Hartford, Connecticut 06103
                              (860) 726-7810

                              *Counsel for Defendant John G. Rowland*
</pre>

Defendant John G. Rowland ("Mr. Rowland") respectfully submits this memorandum of law in support of his motion to dismiss the Government's April 10, 2014 indictment (the "Indictment"). For the reasons that follow, Counts 1 and 3 of the Indictment should be dismissed.

**I.     INTRODUCTION**

The Government here is attempting to criminalize conduct that is simply not illegal. In doing so, the Government has stretched the bounds of the law well beyond what Congress had intended and well beyond what any court in this Circuit has found permissible.

The Indictment fails to allege unlawful conduct by Mr. Rowland. Each of the Indictment's seven separate counts should be dismissed for this reason. Each count either fails to allege the necessary elements of the offense charged, or the specific facts alleged fall beyond the scope of the relevant criminal statutes at issue.

Mr. Rowland's motion to dismiss seeks the dismissal of the Indictment in its entirety. In separate memoranda, Mr. Rowland seeks the dismissal of Count 2, Counts 4 and 5, and Counts 6 and 7 of the Indictment. In this memorandum, Mr. Rowland seeks the dismissal of Counts 1 and 3 of the Indictment.

Counts 1 and 3 are premised on the allegation that Mr. Rowland created false contracts in violation of 18 U.S.C. § 1519 ("Section 1519").[1] Both Counts must be dismissed for two reasons. First, Section 1519 only applies to existing documents, not newly created documents like those alleged here. Second, the purportedly false contracts are simply not false.

---

[1]     The factual allegations of the Indictment are accepted as true, only for purposes of this motion to dismiss.

**II.     BACKGROUND**

We set forth below the relevant factual and procedural background.

   A.     Factual Background

The Indictment alleges that, on October 18, 2009, Mr. Rowland e-mailed a draft contract (the "Draft Contract") to an attorney that would be signed by Mr. Rowland and a candidate for Congress (the "Candidate").  Indictment ¶¶ 9, 18.  It further alleges that Mr. Rowland met with the Candidate on October 23, 2009 and provided the Candidate with a copy of the Draft Contract.  *Id.* ¶ 19.  According to the Indictment, Mr. Rowland proposed that, while he would perform campaign-related services for the Candidate, he would be paid by an animal rescue and adoption center owned by the Candidate.  *Id.* ¶¶ 9, 17-19.  The Indictment alleges that Mr. Rowland made this proposal to conceal his participation in the campaign from the Federal Election Commission ("FEC") and evade public scrutiny.  *Id.* ¶ 17.

The Draft Contract[2] relied upon by the Indictment is allegedly drafted as between Mr. Rowland's consulting firm, JGR Associates, LLC (*Id.* ¶ 7), and the Candidate.  In it, JGR Associates, LLC agrees to provide consulting services for the Candidate, "as may be reasonably requested by him with respect to the marketing of his Company's sales and service, strategic advice, public relations, business consulting, or such other services as may be required."  Draft

---

[2]     The document that is the basis for the Indictment's allegations concerning the Draft Contract was not attached to the Indictment.  It is attached to this motion as Exhibit 1 to the Declaration of Michelle L. Levin.  It may be considered on this motion because there can be no dispute that this document is the basis for the Government's allegations.  *See United States v. Covington*, 395 U.S. 57, 60 (1969)(noting that, under Federal Rule of Criminal Procedure 12(b)(1), any defense capable of determination without a trial of the general issue may be raised before trial by motion); *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)(recognizing that it is permissible to look beyond the indictment to resolve issues of law on undisputed facts); *United States v. Frutos-Lopez*, 627 F. Supp. 2d 1164, 1166 (C.D. Cal. 2008)(recognizing that extrinsic evidence may be considered on a Rule 12(b) motion to dismiss an indictment).

Contract at 1.  The Indictment does not allege that the contract was ever signed, or that Mr. Rowland ever performed work for the Candidate.  *See generally* Indictment.

According to the Indictment, roughly two years later, on September 12, 2011, Mr. Rowland met with Lisa Wilson-Foley ("Ms. Wilson-Foley"), also a candidate for Congress, and her husband, Brian Foley ("Mr. Foley"), the owner of a nursing home company and a number of other related companies, including a real estate company.  *Id*. ¶¶ 2, 3, 29-30.  The Indictment alleges that, at that meeting, Mr. Rowland proposed that he perform work for Ms. Wilson-Foley's campaign.  *Id.* ¶ 29.  The Indictment further alleges that, on October 11, 2011, an attorney for the nursing home company recommended to Mr. Foley that any contract with Mr. Rowland be between Rowland and the attorney's firm (the "Firm") to avoid links to Ms. Wilson-Foley's campaign.  *Id.* ¶ 35(c).  Mr. Rowland is not alleged to have participated in this discussion or the initial drafting of the contract.  Ultimately, according to the Indictment, on November 7, 2011, Mr. Rowland signed a services agreement (the "2011 Agreement") with the Firm.  *Id.* ¶ 37.  According to the Indictment, Mr. Rowland did indeed perform services for Mr. Foley's nursing home company.  *Id.* ¶ 34.

The 2011 Agreement[3] relied upon by the Indictment calls for Mr. Rowland to be paid $5,000 a month to: (1) "[p]erform such consulting services for the [Firm] regarding marketing, strategic advice and business consulting for the [Firm's] clients or managing Members employment interests;" (2) "meet with the [Firm] or the [Firm's] designees as needed but at least

---

[3] The document that is the basis for the Indictment's allegations concerning the 2011 Agreement was not attached to the Indictment.  It is attached to this motion as Exhibit 2 to the Declaration of Michelle L. Levin.  It may be considered on this motion for the same reasons discussed in *supra*, note 2.

3

two times per month;" and (3) "[p]rovide education, opinions and information on any issue the [Firm] or its Managing Member requires." 2011 Agreement at 1.

The Indictment alleges that this structure was created to conceal from the FEC and the public Mr. Rowland's participation in Ms. Wilson-Foley's campaign. Indictment ¶ 37. The Indictment alleges that, consistent with the 2011 Agreement, Mr. Rowland was paid through the Firm—$10,000 in November and $5,000 each month in December through April—and that all of these funds originated with Mr. Foley. *Id.* ¶¶ 35(s), (w), (dd), (gg), (ll), and (oo). It further alleges that Mr. Foley's payments to the Firm constituted campaign contributions to Ms. Wilson-Foley in excess of the legal limits and that her campaign was required, but failed, to disclose the payments as contributions. *Id.* ¶¶ 34(d), 40-43. The Indictment does not allege, however, that Mr. Rowland was aware of the ultimate source of the payments from the Firm, or that he knew of, or was in any way involved in, the alleged failure to disclose by the campaign.

B.    Procedural Background

On April 10, 2014, the Government charged Mr. Rowland in a seven-count indictment. Count 1 of the Indictment alleges that the October 18, 2009 Draft Contract violated 18 U.S.C. § 1519. *Id.* ¶ 26. Counts 2 through 7 of the Indictment are all premised on the 2011 Agreement. They allege:

> Count 2 – a conspiracy to commit the offenses outlined in Counts 3 through 7 and to defraud the United States, all in violation 18 U.S.C. § 371;
>
> Count 3 – destruction, alteration, or falsification of records, in violation of 18 U.S.C. § 1519;
>
> Counts 4 and 5 – false statements, in violation of 18 U.S.C. §§ 1001(a)(2) and 2; and
>
> Counts 6 and 7 – causing unlawful contributions, in violation of 2 U.S.C. §§ 441a(a)(1)(A), 441a(f), 437g(d)(1)(a)(ii) and 18 U.S.C. § 2.

4

Mr. Rowland's motion to dismiss seeks the dismissal of the Indictment in its entirety. In this memorandum, Mr. Rowland seeks the dismissal of Counts 1 and 3 of the Indictment. In four additional memoranda also accompanying the motion, Mr. Rowland seeks the dismissal of the remaining counts. In those memoranda, Mr. Rowland argues that:

- Count 2 should be dismissed because it fails to allege an agreement: (1) to commit the Offenses outlined in Counts 3 through 7; or (2) to defraud the United States because the only agreement alleged–to conceal Mr. Rowland's payments from the FEC–could be accomplished through lawful means.

- Counts 4 and 5 should be dismissed because: (1) they fail to allege any involvement by Mr. Rowland in the alleged false statements; (2) they fail to allege knowledge by Mr. Rowland of the false statements; and (3) the false statements that are alleged are based on an FEC reporting obligation that may not be applicable, and a failure to satisfy the reporting obligation that may actually be applicable is not alleged.

- Counts 6 and 7 should be dismissed because: (1) they fail to adequately allege the requisite intent by Mr. Rowland, even in a conclusory manner; and (2) on the facts alleged, the purported unlawful contributions are equally consistent with lawful campaign expenditures by Ms. Wilson-Foley.

- Counts 6 and 7 should also be dismissed because they are premised on an unconstitutional campaign contribution limitation.

### III.   STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure permits pre-trial motions on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). On such a motion, "the facts alleged by the government must be taken as true" and courts may not test the sufficiency of the evidence. *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (quotation omitted). They may, however, assess the sufficiency of the allegations. They may do so in two respects.

First, at a minimum, an indictment must allege the elements of the offense charged. *United States v. Capoccia*, 503 F.3d 103, 113 (2d Cir. 2007). And, to the extent an offense "includes 'generic terms, it is not sufficient that the indictment shall charge [it] in the same

5

generic terms as the definition.'" *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)). Rather, "'it must state the specifics" and "descend to particulars.'" *Stavroulakis*, 952 F.2d at 693 (quoting *Russell*, 369 U.S. at 765) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1876)).

Second, the court need not blindly accept a recitation in general terms of the element of the offense and, if the specific facts that are alleged fall beyond the scope of the relevant criminal statute, the indictment fails to state an offense. *United States* v. *Russell*, 639 F.Supp.2d 226, 231 (D. Conn. 2007)("It would be proper, however, to dismiss an indictment that fails to state an offense under the charged statute."); *Aleynikov*, 737 F. Supp. 2d at 176 ("Dismissal [of an indictment] is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."); *United States v. Willner*, No. 1:07-cr-00183-GEL-1, 2007 WL 2963711, at *2 (S.D.N.Y. Oct. 11, 2007) (recognizing that the court may assess, on a motion to dismiss an indictment, whether the alleged "facts, assuming they can be proven," constitute a crime); *see also United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) ("To determine whether an 'indictment contains the elements of the offense intended to be charged, a district court may look for more than a mere recitation in general terms of the essential elements of the offense.") (quotation omitted); *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) ("To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish *prima facie* the defendant's commission of that crime.").

## IV.   ARGUMENT

As detailed below, Counts 1 and 3 of the Indictment must be dismissed. On both Counts, the specific facts alleged in the Indictment fall outside the scope of Section 1519.

A.	Count 1

Count 1 of the Indictment alleges that Mr. Rowland "did knowingly falsify and make material false entries in a document," namely, the 2009 Draft Contract, in violation of 18 U.S.C. § 1519.  That provision provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519.  This Count should be dismissed for two reasons.

1.	Section 1519 Solely Applies To Pre-Existing Documents, Not New Documents Like The Draft Contract

This Count should be dismissed because the portion of Section 1519 relied upon by the Indictment— "falsifies" "or makes a false entry in any . . . document" —prohibits the falsification of *existing* documents, not the creation of new documents, like the Draft Contract.[4]

First, this construction of the statute is supported by the statute's plain meaning.  Words in a statute should ordinarily be afforded their plain meaning.  *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  To falsify a document literally means to make a document false.  To make a false entry in a document connotes the making of a false statement in a form document.  *United States v. Schmeltz*, 667 F.3d 685, 688 (6th Cir. 2011)

---

[4] This Circuit has yet to directly confront this issue.  This Court should reject the reasoning of those courts that have come to the opposite conclusion.  *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008); *United States v. Stevens*, 771 F. Supp. 2d 556, 563-64 (D. Md. 2011).

7

(recognizing that "false entry" charge is "usually reserved for entries made on pre-existing forms"). Both presume a previously existing document. Accordingly, the statute prohibits only *making a document false* and not the *making of a false document*. If Congress had intended otherwise, it could easily have said as much.

Second, this interpretation is supported by the principle of *noscitur a sociis*. Under that principle, words grouped in a list should be given a related meaning. *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990). Here, the statute's prohibition on falsification follows its prohibition of alteration, destruction, mutilation, concealment, and covering up – actions that can only apply to existing documents. 18 U.S.C. § 1519. Accordingly, the statute's prohibition on falsification should be construed, like its adjacent words, as solely covering manipulation of pre-existing documents.

Third, this interpretation is supported by the statute's legislative history. To the extent there is ambiguity in a statute, the Court may look to the statute's legislative history for guidance. *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676, 698 (2d Cir. 2013). Here, Section 1519's legislative history confirms that its focus was on the preservation of uncorrupted evidence, not the creation of fraudulent new materials.

Section 1519 had its genesis in The Corporate and Criminal Fraud Accountability Act of 2002, which was intended "to provide for criminal prosecution of persons who alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 1 (2002); S. 2010, 107th Cong. (2002). When it was introduced to the floor by Senator Leahy, he made clear that its focus was on the destruction of evidence. 148 Cong. Rec. S7418 (daily ed. July 26, 2002). It was described as an anti-shredding provision intended to *preserve* existing evidence. *Id.* at S748, S7419; S. Rep. No. 107-146, at 2 (2002) ("This bill contains a number of provisions intended

to . . . ensure that evidence—both physical and testimonial—is preserved and available in fraud cases.").

The remarks of several Senators illustrate that Congress intended the statute to be circumscribed to existing documents, and even *that* prohibition would itself be limited. They voiced concern that the statute "could be interpreted more broadly than we intend. In [their] view, section 1519 should be used to prosecute only those individuals who *destroy* evidence with the specific intent to impede or obstruct a pending or future criminal investigation. . . . It should not cover the destruction of documents in the ordinary course of business, even where the individual may have reason to believe that the documents may tangentially relate to some future matter within the conceivable jurisdiction of an arm of the federal bureaucracy." *Id.* at 27.

Finally, to the extent there are any doubts as to the construction of the statute, the rule of lenity militates in favor of the more limited scope urged here. *United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); *United States v. Granderson*, 511 U.S. 39, 54 (recognizing that, "where text, structure, and history fail to establish that the Government's position is unambiguously correct," the rule of lenity is applied); *United States v. Banki*, 685 F.3d 99, 109 (2d Cir. 2011) (citing *Santos*, 553 U.S. at 514, in applying the rule of lenity).

### 2. The Draft Contract Is Not False

Count 1 should also be dismissed because the Count does not adequately allege that the Draft Contract is false. This is so for two reasons.

First, an unsigned, unexecuted draft contract between private parties (on which no work was ever performed and no payments were ever made) cannot be false. Holding otherwise would be tantamount to criminalizing an inchoate thought crime. The Government recognized as

9

much when it charged Mr. Rowland under Section 1519 for the 2011 Agreement as of the date the Agreement was allegedly *executed*, not the date it was drafted.

Second, even if a draft contract in this type of circumstance could be false, the alleged Draft Contract was not false in any way. As discussed above, the alleged Draft Contract called for Mr. Rowland's consulting company to provide the Candidate with consulting services, "as may be reasonably requested by him with respect to the marketing of his Company's sales and service, strategic advice, public relations, business consulting, or such other services as may be required." These wide-ranging and open-ended obligations are consistent with what the Indictment claims was falsely concealed in the Draft Contract: that Mr. Rowland would be paid for work for the candidate's campaign.

B.   Count 3

Count 3 of the Indictment alleges that Mr. Rowland "did knowingly falsify and make material false entries in a document," namely, the 2011 Agreement, in violation of 18 U.S.C. § 1519. This Count should be dismissed for two reasons.

First, for the same reasons described above, as a new, rather than existing document, the 2011 Agreement is not the type of document contemplated by the statute. There is no allegation that Mr. Rowland has sought to compromise the integrity of evidence in its original form, either through destroying, altering, falsifying, or fabricating that evidence.

Second, the 2011 Agreement, as alleged, was not false. The 2011 Agreement provided that Mr. Rowland would perform services for the Firm and its clients and be paid by the Firm for those services. The Indictment alleges nothing to the contrary and points to no false statements in the 2011 Agreement.

The Government may argue that this is an overly formalistic reading of Section 1519 because, according to the Indictment, the 2011 Agreement had the effect of obscuring payments to Mr. Rowland by the campaign.  But a lack of falsity cannot be excused based on intent to conceal.  Section 1519 requires both intent to conceal *and* falsification and holding otherwise would improperly collapse these separate elements into a single inquiry.  *See United States v. Subeh*, No. 04-CR-06077-CJS, 2006 WL 3407891, at *2 (W.D.N.Y. Nov. 27, 2006) (recognizing that a "literal truth" defense is applicable to false statement prosecutions under the analogous 18 U.S.C. § 1001, even where the intent of the defendant is to evade or mislead); *United States v. Carey*, 152 F. Supp. 2d 415, 423-24 (S.D.N.Y. 2001) (same); *United States v. Hsia*, 24 F. Supp. 2d 33, 58 (D.D.C. 1998) , rev'd on other grounds, 176 F.3d 517 (D.C. Cir. 1999) (same).  And it is a cardinal rule of statutory construction that statutes should be interpreted to avoid rendering terms superfluous.  *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Moreover, this seemingly technical distinction is one the campaign finance laws embrace.  As discussed in Mr. Rowland's Memorandum in Support of Dismissal of Count 2, it is perfectly proper, under the federal election law, for a committee to disclose only the purpose of an in-kind contribution without detailing its ultimate recipient.  It is also perfectly proper, as discussed in Mr. Rowland's Memorandum in Support of Dismissal of Count 2, for a campaign committee to only disclose expenditures to its direct vendors, and a committee is not required to disclose the payments of a vendor to any sub-vendor.

In sum, Count 3 should be dismissed because the Indictment's allegation of intent to conceal is insufficient; the Indictment was required, and failed, to allege falsity.

## V. CONCLUSION

For the reasons set forth above, the Court should dismiss Counts 1 and 3 of the Indictment.

        Respectfully submitted,

        /s/ Reid H. Weingarten
        Reid H. Weingarten [phv01200]
        William L. Drake [phv06671]
        STEPTOE & JOHNSON LLP
        1330 Connecticut Ave. NW
        Washington, D.C. 20036
        PH: (202) 429-8082
        FAX: (202) 429-3902
        rweingarten@steptoe.com
        wdrake@steptoe.com

        Michelle L. Levin [phv06670]
        STEPTOE & JOHNSON LLP
        1114 Avenue of the Americas
        New York, New York 10036
        PH: (212) 506-3900
        FAX: (212) 506-3950
        mlevin@steptoe.com

        Kaitlin A. Halloran [ct28710]
        HALLORAN & HALLORAN
        9 Lewis Street, 1st Floor
        Hartford, Connecticut 06103
        PH: (860) 726-7810
        FAX: (860) 726-7813
        khalloran@halloranlawct.com

        *Counsel for Defendant John G. Rowland*

Dated: May 20, 2014