UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

*v.*

JOHN G. ROWLAND.

Criminal No. 3:14cr79 (JBA)

July 8, 2014

**RULING DENYING DEFENDANT'S MOTION TO
DISMISS THE SUPERSEDING INDICTMENT**

Defendant John G. Rowland moves [Doc. # 36] to dismiss the Superseding Indictment, contending that the Government has failed to adequately allege that he agreed to engage in illegal conduct.  For the reasons that follow, Defendant's motion will be denied.

I.      **Background**

The Superseding Indictment alleges that Mr. Rowland "devised a scheme to work" as a consultant for two congressional candidates in Connecticut and drafted fictitious contracts in order to obscure from the public and the Federal Election Commission ("FEC") his role in these campaigns.   (Superseding Indictment [Doc. # 38] ¶ 17.) Beginning in October 2009, Mr. Rowland allegedly proposed to "Candidate 2" that he work as a consultant on his congressional race and in order to "conceal the payments to ROWLAND, which Candidate 2's campaign would otherwise be required to report to the FEC, ROWLAND proposed to be paid through a separate corporate entity, that is, the Animal Center," an animal rescue and adoption center owned by Candidate 2.  (*Id.*)  In order "to make the illegal arrangement appear legitimate, ROWLAND drafted and

proposed to enter into a sham consulting contract with Candidate 2, pursuant to which ROWLAND would purportedly perform work for the Animal Center," thereby preventing "campaign contributions and expenditures from being reported to the FEC and the public." (*Id.*) On October 23, 2009, Mr. Rowland allegedly provided Candidate 2 with a draft contract (the "Draft Contract") outlining his consulting arrangement with the Animal Center when Mr. Rowland was in fact "proposing to perform paid campaign work for Candidate 2's Congressional campaign." (*Id.* ¶ 19.) Mr. Rowland is alleged to have created this "fictitious contract" in order to conceal from the FEC and the United States Department of Justice ("DOJ") that the payments made under this contract "would, in fact, be in consideration for work performed by ROWLAND on behalf of Candidate 2's campaign for election to the U.S. House of Representatives." (*Id.* ¶ 26.)

In September 2011, Mr. Rowland allegedly proposed a similar arrangement to Lisa Wilson-Foley, who was a candidate for the U.S. House of Representatives for Connecticut's Fifth Congressional District and who is charged separately as a co-conspirator. (*Id.* ¶¶ 3, 28–29.) Mr. Rowland, Ms. Wilson-Foley, and her husband Brian Foley, also charged separately, allegedly conspired to conceal Mr. Rowland's role as a consultant in Ms. Wilson-Foley's campaign by having Mr. Foley pay Mr. Rowland's $5000 per month fee and routing it through the Real Estate Company that Mr. Foley owned to the law firm (the "Firm") of Attorney 1, who worked for the Nursing Home Company, which Mr. Foley also owned. (*Id.* ¶ 35(c).) In furtherance of this conspiracy, they allegedly created and executed a fictitious consulting agreement (the "2011 Agreement") purportedly between Mr. Rowland and the Firm and agreed that Mr. Rowland would provide "nominal services to the Nursing Home Company in order to

2

create a 'cover' or pretext that he was being paid for providing consulting services to the Nursing Home Company when, in fact, he was being paid for his work on behalf of Wilson-Foley's campaign."  (*Id.* ¶ 34(c).)   The Superseding Indictment alleges that in doing so, Mr. Rowland and the Foleys concealed from the FEC and the public Mr. Foley's unlawful campaign contributions to his wife's campaign by causing the campaign to file disclosure reports with the FEC that failed to report these contributions, which were in excess of the limits set by federal election law.  (*Id.* ¶ 34(d).)

The Superseding Indictment charges falsification of records related to a federal investigation in violation of 18 U.S.C. § 1519 as to the Draft Contract (Count One) and the 2011 Agreement (Count Three); Conspiracy in violation of 18 U.S.C. § 371 (Count Two); causing false campaign contribution disclosure reports to be filed with the FEC in violation of 18 U.S.C. §§ 1001(a)(2) and 2 (Counts Four and Five); and illegal campaign contributions in violation of 2 U.S.C. §§ 441a(1)(A), 441a(f), and 437(g)(d)(1)(a)(ii) (Counts Six and Seven).[1]

## II.    Discussion

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future

---

[1] After Defendant filed this Motion to Dismiss, the grand jury returned a Superseding Indictment which is identical to the original indictment in all respects except that it explicitly alleges that Defendant acted knowingly and willfully in Counts Six and Seven.  (*See* Gov.'t's Opp'n [Doc. # 42] at 6 & n.1.)  Except for this one change all of Defendant's arguments regarding the original indictment are equally applicable to the Superseding Indictment and Defendant addresses the impact of the Superseding Indictment in his reply brief [Doc. # 54] regarding Counts Six and Seven.

prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).   Although "an indictment must 'charge[ ] a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events,'" it "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *Id.* (quoting *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992)) (alterations in original).   "[T]he government need not particularize all of its evidence."  *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991).

"Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . ., the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment" and the allegations in the indictment must be accepted as true.  *Alfonso*, 143 F.3d at 776–77 (reversing dismissal of an indictment when the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge); *accord Costello v. United States*, 350 U.S. 359, 363 (1956) (If "valid on its face," a grand jury indictment "is enough to call for trial of the charge on the merits." (internal citations omitted)).

### A.   Counts One and Three (Falsification of Records)

Mr. Rowland contends that Counts One and Three charging falsification of records related to a federal investigation in violation of 18 U.S.C. § 1519 must be dismissed for two reasons.  First, he claims that § 1519 only applies to "the falsification of *existing* documents, not the creation of new documents" that may be false.  (Def.'s Mem.

Supp. [Doc. # 36-1] at 7 (emphasis in original).)   Second, he contends that the Draft

Contract and 2011 Agreement were not false.  (*Id.* at 10.)  For the reasons that follow, the

Court rejects both propositions.

18 U.S.C. § 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up,
> falsifies, or makes a false entry in any record, document, or tangible object
> with the intent to impede, obstruct, or influence the investigation or
> proper administration of any matter within the jurisdiction of any
> department or agency of the United States or any case filed under title 11,
> or in relation to or contemplation of any such matter or case, shall be fined
> under this title, imprisoned not more than 20 years, or both.

1.      *Falsification of Documents Allegedly Created by Defendant*

Counts One and Three allege that by creating the Draft Contract and the 2011

Agreement Defendant "did knowingly falsify and make material false entries in a

document with the intent to impede, obstruct, and influence the investigation and proper

administration of that matter."  (Superseding Indictment ¶¶ 26, 37.)  Defendant offers

four reasons why to "falsify" and to make "false entries in a document" as used in § 1519

and the Superseding Indictment applies only to pre-existing documents.   First, he

contends that the "plain meaning" of "falsifies" is "to make a document false" and "[t]o

make a false entry in a document connotes the making of a false statement in a form

document," and both "presume a previously existing document."  (Def.'s Mem. Supp. at

7–8.)

The Second Circuit has not yet addressed this issue, Defendant cites no cases in

support of his interpretation, and as he acknowledges (*see id.* at 7 n.4), other courts have

rejected his interpretation of § 1519.  *See United States v. Stevens*, 771 F. Supp. 2d 556, 563

(D. Md. 2011) ("No federal court has endorsed [the defendant's] argument that a document must be pre-existing to be subject to § 1519's proscriptions.  By contrast, many federal courts have held that § 1519 applies equally to one who takes a pre-existing document and adds or deletes information from it to make it false, and to one who creates a false document from whole cloth.") (collecting cases).

For example, in *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008), the defendant argued that § 1519 did not provide fair notice as required by the Due Process Clause that his false statement in a police report that he drafted regarding the use of force was within the ambit of the statute, because the language in the statute "'alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry' assumes there is evidence already existing upon which these acts could be performed."  The Eleventh Circuit rejected this argument, holding that while the defendant "created the document in which he made the false statement, such an act is clearly covered by the language of the statute" and while the references to "[a]lteration, destruction, mutilation and concealment certainly suggest § 1519 is concerned partially with evidence destruction, . . . it is not *solely* concerned with destruction or tampering"  and "[n]othing suggests the document mentioned in § 1519 must be already existing at the time the false entry was made."  *Id.* at 744 (emphasis in original); *see also United States v. Schmeltz*, 667 F.3d 685, 688 (6th Cir. 2011) ("[Section 1519] plainly criminalizes the creation of a false document.").

The Court concurs with the conclusion of the Eleventh Circuit and all other federal courts that have addressed this issue.  Contrary to Defendant's assertion, nothing in § 1519 or the meaning of the phrases to "make a false entry" or "falsifies" necessitates a pre-existing document.

Second, Defendant contends that the canon of statutory construction, *noscitur a sociis*,[2] which "dictates that words grouped in a list should be given related meaning," *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (internal quotation marks omitted), supports his statutory interpretation because "the statute's prohibition on falsification follows its prohibition of alteration, destruction, mutilation, concealment, and covering up—actions that can only apply to existing documents" and thus "the statute's prohibition on falsification should be construed, like its adjacent words, as solely covering manipulation of pre-existing documents." (Def.'s Mem. Supp. at 8.)

However, as discussed above, there is nothing ambiguous in § 1519's use of "falsifies" or "makes a false entry" that would require resort to this canon of construction. *See United States v. Stevens*, 559 U.S. 460, 474–75 (2010) ("As that canon recognizes, an ambiguous term may be given more precise content by the neighboring words with which it is associated. . . .  But the phrase . . . at issue here contains little ambiguity" and the terms "should be read according to their ordinary meaning." (internal quotation marks omitted)); *see also Hunt*, 526 F.3d at 744.  Moreover, under Defendant's interpretation "falsifies" and "makes a false entry" would have essentially the same meaning as "alters," "mutilates," "conceals," and "covers up."  Although the canon Defendant urges to be applied "counsels that a word 'gathers meaning from the words around it,'" it should not be used to give a word "essentially the same function as other words in the definition, thereby denying it independent meaning."  *Babbitt v. Sweet Home Chapter of*

---

[2] "The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).

*Communities for a Great Oregon*, 515 U.S. 687, 702 (1995) (quoting *Jarecki,* 367 U.S. at 307).

Third, Defendant contends that "[t]o the extent that there is ambiguity" in the statute, the Court may look to the legislative history of § 1519, which he contends supports his interpretation.  (Def.'s Mem. Supp. at 8.)  However, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194 (1985)).  Here, "[t]he words of the statute are unambiguous, and, thus, 'judicial inquiry is complete'" without the need to consult legislative history.  *United States v. Gray*, 642 F.3d 371, 377 (2d Cir. 2011) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Hunt*, 526 F.3d at 744 ("Hunt cannot avoid the result compelled by the plain language by selectively citing legislative history.  We hold § 1519's plain language placed Hunt on notice that his action of knowingly making a false statement about the circumstances of Woodard's arrest with the intent to impede an FBI investigation was conduct sufficiently proscribed by § 1519.").

Fourth, Defendant asserts that "to the extent there are any doubts as to the construction of the statute, the rule of lenity militates in favor of the more limited scope urged here."  (Def.'s Mem. Supp. at 9.)  Under the rule of lenity "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."  *United States v. Simpson*, 319 F.3d 81, 86 (2d Cir. 2002) (quoting *United States v. Bass,* 404 U.S. 336, 348 (1971)).  "The rule of lenity, however, is not applicable unless there is a grievous

ambiguity or uncertainty in the language and structure of [a statute] such that even after a court has seized [everything] from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States*, 500 U.S. 453, 463 (1991) (internal citations, quotation marks and alterations omitted).  Since the Court has concluded, as discussed above, that § 1519 is not ambiguous, the rule of lenity is not applicable.

    2.  *False Statement Alleged*

    Defendant next contends that Counts One and Three should be dismissed because the documents created by Mr. Rowland were not false.  He contends that the Draft Contract charged in Count One, "an unsigned, unexecuted draft contract between private parties (on which no work was ever performed and no payments were ever made) cannot be false" and to hold "otherwise would be tantamount to criminalizing an inchoate thought crime."  (Def.'s Mem. Supp. at 9.)  Defendant cites no authority for this proposition and the Superseding Indictment does not allege any "inchoate thought crime" but rather that Mr. Rowland actually drafted and "provided Candidate 2 with the fictitious contract, purporting to establish a paid consulting relationship between ROWLAND and the Animal Center" (Superseding Indictment ¶ 19) and that this contract was false, because it "outlined fictitious duties that ROWLAND would perform for the Animal Center" (*id.* ¶ 18) when Mr. Rowland was in fact "proposing to perform paid campaign work for Candidate 2's Congressional campaign" (*id.* ¶ 19) and that he drafted this contract in order "to prevent actual campaign contributions and expenditures from being reported to the FEC and the public" (*id.* ¶ 17).

    Defendant further contends that the Draft Contract cannot be considered "false" based on *United States v. Blankenship*, 382 F.3d 1110, 1133 (11th Cir. 2004) in which the

Eleventh Circuit noted that because a contract "gives each party nothing more than a legal expectancy in having the other party either perform or (generally) respond in damages," a contract is not "false" merely because a party later breaches it.  Instead, the *Blankenship* court concluded that "it appears there are only two ways in which a contract can possibly be considered 'false:'" (1) "if a person forges or alters it" or (2) "if it contains factual misrepresentations."  *Id.* at 1132.

  *Blankenship* does not support Defendant's argument, however, because Mr. Rowland is not charged with breaching an otherwise valid contract, but rather with creating a contract that was entirely "fictitious" in order to obstruct federal campaign finance laws.  This contract is thus alleged to contain "factual misrepresentations" and can be considered "false" under the second category outlined in *Blankenship*.  *See id.* at 1132.  For example, in *United States v. Jespersen*, 65 F.3d 993, 998 (2d Cir. 1995), the defendant was an IRS employee who required one of the IRS's contractors to remodel his home for free, and once a grand jury started investigating the arrangement, had the contractor create a false and backdated contract showing that the work had been paid for. The Second Circuit affirmed his conviction for obstruction of justice, because the contract "fraudulently showed that [the contractor] had been paid for the work performed." *Id*

  Second, Defendant maintains that even if such a document could be false, it was not in this case, because the Draft Contract called for Mr. Rowland's consulting company to provide "wide-ranging and open-ended obligations" to Candidate 2's company, which is "consistent with what the Indictment claims was falsely concealed in the Draft Contract: that Mr. Rowland would be paid for work for the candidate's campaign."

10

(Def.'s Mem. Supp. at 10.)   As discussed above, the Superseding Indictment alleges otherwise and whether that allegation can be proven is an issue for the jury to determine at trial on the basis of the evidence, not for the Court on a pre-trial motion to dismiss. *See United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999) ("There was no basis for the District Court to [make] assum[ptions]" regarding what the evidence would show because "the facts alleged by the government must be taken as true.").

Defendant likewise argues as to Count Three that "the 2011 Agreement, as alleged, was not false" because it "provided that Mr. Rowland would perform services for the Firm and its clients and be paid by the Firm for those services" and the Superseding Indictment "alleges nothing to the contrary and points to no false statements in the 2011 Agreement." (Def.'s Mem. Supp. at 10.)   However, the Superseding Indictment alleges that this agreement was "fictitious" and "part of the conspiracy that Foley made payments to ROWLAND for his work on behalf of Wilson-Foley's campaign in excess of the legal contribution limits, and routed those payments from the Real Estate Company," controlled by Mr. Foley, "through the law offices of Attorney 1 and on to ROWLAND." (Superseding Indictment ¶¶ 34(a)–(b).)   Mr. Rowland is further alleged to have "provided nominal services to the Nursing Home Company in order to create a 'cover' or pretext that he was being paid for providing consulting services to the Nursing Home Company when, in fact, he was being paid for his work on behalf of Wilson-Foley's campaign" (*id.* ¶ 34(d)) "in order to conceal from the FEC and the [DOJ] the fact that payments made pursuant to the fictitious contract would, in fact, be in consideration for work performed by" Mr. Rowland on behalf of the Wilson-Foley campaign" (*id.* ¶ 37).

11

While at trial Mr. Rowland may be able to develop an evidentiary basis for his position that the contract was not false because he did in fact provide consulting services to Attorney 1, the Superseding Indictment need not specifically rule out this.  *See United States v. Sisson*, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses.").  It is sufficient that the Superseding Indictment alleges and describes how the 2011 Agreement was false, i.e., that it was intended to conceal Mr. Rowland's involvement with the Wilson-Foley campaign in order to influence a federal investigation.[3]  (*See* Superseding Indictment ¶ 37.)  Accordingly, Defendant's motion to dismiss Counts One and Three is denied.

---

[3] In his reply brief, Defendant acknowledges that the "validity of an indictment is tested by its allegations, not whether the Government can prove its case" but contends that he has "appropriately challenged the sufficiency of the Indictment's *allegations*" and "that a conclusory recitation of the elements of the offense is insufficient where the specific facts alleged do not constitute a crime."  (Reply [Doc. # 51] at 6 (internal quotation marks omitted) (emphasis in original).)  As made clear by *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) cited by Defendant in support of this proposition, however, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." (internal quotation marks omitted).  Only if "a charging document fails to state an offense [because] the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation" is dismissal of an indictment appropriate.  *Id.* at 264–65 (internal quotation marks omitted); *see also, e.g., Gov't of the V.I. v. Greenidge*, 600 F.2d 437, 438–40 (3d Cir. 1979) (indictment alleging assault on male companion of a rape victim does not, as a matter of law, state an offense under statute that criminalizes assaulting a rape victim).  Here, however, the Superseding Indictment alleges in what manner the Draft Contract and 2011 Agreement were false and how they were intended to impede a federal investigation, which is plainly within the scope of § 1519.

### B.      Counts Four and Five (Causing False Statements to be Filed)

Defendant contends that Counts Four and Five, charging that Mr. Rowland caused the filing of false campaign disclosure reports omitting the in-kind contributions by Mr. Foley to his wife's campaign through the Firm, in violation of 18 U.S.C. §§ 1001(a)(2) and 2, must be dismissed for three reasons: (1) the Superseding Indictment fails to allege Mr. Rowland's involvement in the campaign disclosure such that he could have "caused" it as charged; (2) it fails to allege Mr. Rowland's knowledge of the false disclosures; (3) and the allegations of in-kind contributions by Mr. Foley are "equally consistent" with in-kind contributions by Ms. Wilson-Foley, and although, such contributions would trigger their own reporting obligations, the failure to satisfy these obligations is not alleged.  (Def.'s Mem. Supp. [Doc. # 36-3] at 1.)

> 18 U.S.C. § 1001 provides:
>
> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years . . . or both.

18 U.S.C. § 1001(a)(2).  Defendant is also charged under the aiding and abetting statute, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," 18 U.S.C. § 2(a) and "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal," *id.* § 2(b).

Defendant first contends that the Superseding Indictment "simply does not allege how Mr. Ro[w]land caused the Wilson-Foley campaign to file false disclosures" nor "that he had any involvement in that decision, let alone that he caused it."  (Def.'s Mem. Supp. at 2.)  To the extent that Defendant faults the Superseding Indictment for not outlining the Government's evidence against him, no such showing is required in an indictment. *See Cephas*, 937 F.2d at 823.  In his reply brief, Defendant clarifies that he challenges the legal sufficiency of these counts, contending that "the Government's generic recitation of the elements of the offense are insufficient because the specific facts alleged, even if proven, would not demonstrate any involvement by Mr. Rowland in any false disclosures" because the Superseding Indictment only alleges that "Mr. Rowland received payments for work on the campaign from the Firm" but not "any participation in, or aiding of, the preparation of the campaign's subsequent disclosure."  (Reply [Doc. # 53] at 2.)

The Superseding Indictment alleges that Mr. Rowland, Mr. Foley, and Ms. Wilson-Foley "did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other to:" (1) "knowingly falsify and make false entries in a document" (Superseding Indictment ¶ 32(a)); (2) to "falsify, conceal, and cover up by trick, scheme, and device a material fact . . . by, among other things, causing the Campaign Committee to create and file false and misleading campaign finance reports with the FEC" (*id.* ¶ 32(b)); (3) to make illegal campaign contributions by Mr. Foley through the Real Estate Company (*id.* ¶ 32(c)); and (4) to "defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the FEC" (*id.* ¶ 32(d)).  All this was allegedly done

14

with the objective of "conceal[ing] from the FEC and the public that ROWLAND was paid money in exchange for services he provided to Wilson-Foley's campaign for election to the U.S. House of Representatives." (*Id.* ¶ 33.)

Although Defendant is correct that the Superseding Indictment does not specifically allege how Mr. Rowland caused a false filing with the FEC, it need not do so. It is sufficient to track the language of the statute and detail how Mr. Rowland was part of a conspiracy that had as its objective the filing of the false report and that he aided and abetted the filing of this report.  For example, in *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007), the Supreme Court held that an indictment charging attempted illegal reentry into the United States was not defective for failing to allege the "specific overt act" that would be proven at trial.  Because the "two constitutional requirements for an indictment" are that it "'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense,'" the indictment's "use of the word 'attempt,' coupled with the specification of the time and place of respondent's attempted illegal reentry, satisfied both" because it "provided respondent with more adequate notice than would an indictment describing particular overt acts" and "the time-and-date specification in respondent's indictment provided ample protection against the risk of multiple prosecutions for the same crime."  *Id.* (quoting *Hamling*, 418 U.S. at 117 (alterations in original)).  Likewise, the Superseding Indictment here is not defective for not alleging the specific steps that Defendant took to cause with his alleged co-conspirators the filing of a false report and adequately alleges

the elements of the charged offense and the specific dates of filing the specific reports at issue and the time period they covered.  (*See* Superseding Indictment ¶ 39.)

Second, Defendant contends that the Superseding Indictment fails to adequately allege intent by Mr. Rowland, because it "does not allege any knowledge by Mr. Rowland that the campaign would fail to report the alleged contributions by Mr. Foley, or even that Mr. Rowland knew the payments from the Firm originated with Mr. Foley" and "has instead only alleged knowledge that the campaign hoped to obscure payments to Mr. Rowland," which "does not support an inference that Mr. Rowland knew the campaign would fail to disclose Mr. Foley's alleged contributions."  (Def.'s Mem. Supp. at 2.) However, the Superseding Indictment alleges that Mr. Rowland "did knowingly falsify and make material false entries . . . in a contract for services between ROWLAND and the [Firm] in order to conceal from the FEC and the [DOJ] the fact that payments made pursuant to the fictitious contract would, in fact, be in consideration for work performed by ROWLAND on behalf of Wilson-Foley's campaign for election to the U.S. House of Representatives."  (Superseding Indictment ¶ 37.)   Additionally, it alleges that Mr. Rowland conspired with Wilson and Wilson-Foley to accomplish these ends.  (*Id.* ¶ 34.)

Defendant contends that these factual allegations are not sufficient, because "[o]bscuring payments to Mr. Rowland did not depend upon the campaign filing false contribution reports."  (Def.'s Mem. Supp. at 2.)  As discussed *infra* regarding Count Two, the fact that Defendant can argue potential scenarios under which obscuring the payments to him would not have been illegal does not make the indictment deficient for failing to refute such potential defenses.  *See Sisson*, 399 U.S. at 288.  Accordingly, Defendant's Motion to Dismiss is denied as to Counts Four and Five.

16

C.      **Counts Six and Seven (Illegal Campaign Contributions)**

Defendant contends that Counts Six and Seven, charging that he caused illegal campaign contributions in excess of the legal limits, in violation of 2 U.S.C. §§ 441a(1)(A), 441a(f), and 437(g)(d)(1)(a)(ii), must be dismissed, because (1) the underlying campaign contribution limits are unconstitutional; (2) they fail to allege that Mr. Rowland acted willfully; and (3) "the payments the Indictment has characterized as campaign contributions by Mr. Foley are equally consistent with campaign expenditures from the personal funds of Ms. Wilson-Foley, which are not subject to any limit." (Def.'s Mem. Supp. [Doc. # 36-4] at 2.)

As Defendant acknowledges, the Supreme Court has not revisited the constitutionality of individual campaign contribution limitations since it upheld those limitations in *Buckley v. Valeo*, 424 U.S. 1 (1976). (*See* Def.'s Mem. Supp. [Doc. # 36-5] at 1 n.1.)  In *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1442 (2014), the Supreme Court held that "aggregate limits," which "restrict[] how much money a donor may contribute in total to all candidates or committees" in a given election cycle violated the First Amendment.  *McCutcheon*, however, did "not involve any challenge to the base limits" that are alleged to have been violated in this case and "restrict how much money a donor may contribute to any particular candidate or committee" and which *Buckley* "previously upheld as serving the permissible objective of combatting corruption."  *Id.* Although in Defendant's view, base contribution restrictions limiting individual contributions to an individual candidate "are no longer sustainable" in light of the reasoning of *McCutcheon* (Def.'s Mem. Supp. at 3), the Court will follow *Buckley*'s holding that such contributions are constitutional and leave "to [the Supreme] Court the

prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

As to Defendant's contention that Counts Six and Seven of the original Indictment fail to allege that he acted willfully even in conclusory terms, "out of an abundance of caution" after Defendant filed this motion, the Government presented to and received from the grand jury the Superseding Indictment that expressly alleges in Counts 6 and 7 that Defendant acted knowingly and willfully.  (Gov.'t's Opp'n [Doc. # 42] at 6.)  Defendant counters that this "technical correction, while necessary, was not sufficient," because the Superseding Indictment's "formulaic recitation of the elements of the offense is insufficient since the specific facts alleged in the Indictment, even if proven, would not demonstrate the requisite knowledge by Mr. Rowland" and he "is not alleged to have had any knowledge of the source of the funds, such that he could know he was causing an unlawful campaign contribution."  (Reply [Doc. # 54] at 2.)

However, as discussed above, Mr. Rowland is alleged to have "knowingly and willfully caused contributions, which aggregated $2,000 or more (but less than $25,000) during a calendar year, to be made by Foley through the Real Estate Company to the Campaign Committee in excess of the limits of the Election Act."  (Superseding Indictment ¶¶ 41, 43.)  Additionally, Mr. Rowland is alleged to have been part of a conspiracy in which "Foley made payments to ROWLAND for his work on behalf of Wilson-Foley's campaign in excess of the legal contribution limits, and routed those payments from the Real Estate Company through the law offices of Attorney 1 and on to ROWLAND."  (*Id.* 34(b).)  Thus, the Superseding Indictment sufficiently puts Defendant

on notice of the offense charged and alleges facts and conduct that are not outside the ambit of the charged offense. *See Bergrin*, 650 F.3d at 264–65.

Finally, Defendant argues that Counts Six and Seven are deficient, because "the conduct alleged does not necessarily constitute a contribution in excess of the legal limits by Mr. Foley" given that "[o]n the specific facts alleged, the payments at issue could just as well be lawful campaign expenditures by Ms. Wilson-Foley" to her own campaign and federal election law allows candidates to "'make unlimited expenditures from personal funds.'" (Def.'s Mem. Supp. at 2 (quoting 11 C.F.R. § 110.10).)  Further, Defendant contends, because a candidate's personal funds include joint marital assets, *see* 11 C.F.R. § 100.33, the Superseding Indictment is deficient because "[t]here is no allegation . . . that assets used by Mr. Foley to allegedly pay the Firm were not originally" joint marital assets and "assuming they were . . . the payments would constitute payments made by Ms. Wilson-Foley." (Def.'s Mem. Supp. at 2–3.)  Defendant thus argues that "the allegations are equally consistent with the payments being lawful expenditures made by Ms. Wilson-Foley, not impermissible contributions by Mr. Foley" (*id.* at 3) and the Superseding Indictment is "deficient in that it failed to allege that the funds used did *not* qualify as personal funds of Ms. Wilson-Foley." (Reply [Doc. # 54] at 2 (emphasis in original).)

As discussed above, however, an indictment need not refute potential defenses in order to be valid, *see Sisson*, 399 U.S. at 288, and the Court cannot make inferences regarding what the evidence will show at trial on a motion to dismiss.  It is sufficient that the Superseding Indictment alleges and details how Mr. Rowland participated in an agreement to make illegal campaign contributions without refuting every potential

scenario under which this arrangement could have been legal.  Therefore, Defendant's Motion to Dismiss is denied as to Counts Six and Seven.

### D.      Count Two (Conspiracy)

Defendant argues that the conspiracy charge in Count Two is deficient because (1) there are no "allegations of an agreement to commit" the offenses alleged in Counts Three through Seven "beyond the allegations that purport to establish the underlying offenses themselves" and because Counts Three through Seven are deficient, Count Two must fail as well; and (2) the Superseding Indictment "does not allege any unlawful agreement that would interfere with or obstruct the FEC's lawful functions."  (Def.'s Mem. Supp. [Doc. # 36-2] at 2–3.)

A conspiracy conviction under § 371 requires proof of three essential elements: (1) an agreement among two or more persons, the object of which is an offense against the United States or to defraud the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators.  *United States v. Svoboda*, 347 F.3d 471, 476 (2d Cir. 2003).

As discussed above, the Court has concluded that the Superseding Indictment has validly alleged offenses in Counts Three through Seven.  Thus, even if Defendant were correct that Count Two would fail derivatively if those counts were dismissed, given that those counts still stand, there is no basis to dismiss Count Two.  Additionally, a conspiracy count does not necessarily fail if the underlying offenses that are the object of the conspiracy are not adequately pled, because "[i]t is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it

20

is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995) (quoting *Wong Tai v. United States,* 273 U.S. 77, 81 (1927)). "The rationale is that the crime of conspiracy is complete whether or not the substantive offense which was its object was committed" and an "indictment need only put the defendants on notice that they are being charged with a conspiracy to commit the underlying offense." *Id.*

Defendant next argues that the Superseding Indictment fails to allege "any unlawful agreement" to defraud the United States, i.e., one "that would interfere with or obstruct the FEC's lawful functions" and "at most, alleges a conspiracy to conceal payments to Mr. Rowland." (Def.'s Mem. Supp. at 3.)  Defendant contends that such an agreement, however, "is a permissible objective, and therefore does not interfere with or obstruct any FEC functions, because it could have been accomplished in at least two lawful ways."  (*Id.*)  First, Defendant posits that "Mr. Foley's payments qualify as in-kind contributions to the campaign and there is no obligation to disclose the ultimate recipient of payments for such in-kind services," in this case Mr. Rowland, but only the individual making the contribution and the general purpose of the expenditure.  (*Id.* (citing 11 CFR §§ 100.52 (d)(1) and 100.111(e)(1).)  Thus, Mr. Rowland argues, because "it would have been perfectly permissible for the Wilson-Foley campaign to only disclose that it received in-kind contributions from Mr. Foley and the general purpose of those contributions," Defendant contends that the Superseding Indictment fails to allege an unlawful agreement to interfere with or obstruct FEC functions.  (*Id.* at 3–4.)  Alternatively, Defendant posits that "even if the alleged payments had been made by the Wilson-Foley

campaign to the Firm, the Wilson-Foley campaign would only have been required to disclose payments to the Firm" and not "that those payments ultimately went to Mr. Rowland," because "there is no obligation for a campaign to disclose payments made, as alleged, by a vendor, like the Firm, to a sub-vendor, like Mr. Rowland." (*Id.* at 4.)

Defendant acknowledges that each of these potential scenarios would have triggered its own disclosure requirement, with the first requiring the campaign to disclose the in-kind contribution from Mr. Foley and the second requiring the campaign to disclose its payments to the Firm, but contends that the Superseding Indictment is deficient because it "does not allege an agreement by Mr. Rowland to conceal in-kind contributions made by the Foleys or campaign expenditures to the Firm." (Reply [Doc. # 52] at 3–4.) However, that Defendant is able to posit potential scenarios under which his conduct could have been legal based on facts that are not alleged in the Superseding Indictment is not grounds to dismiss an indictment pre-trial. *See Sisson*, 399 U.S. at 288. It is sufficient that the Superseding Indictment states facts that allege that Defendant committed the elements of the offenses charged and has put Mr. Rowland on notice of the underlying offense that he is alleged to have conspired to commit. *See Wydermyer*, 51 F.3d at 325.

III.    **Conclusion**

For the reasons set forth above, Defendant's Motion [Doc. # 36] to Dismiss is DENIED.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 8th day of July, 2014.