```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT


 3      ------------------------------ x

 4      UNITED STATES OF AMERICA       :
                                       :Docket NO.
 5                                     :3:14CR00079 (JBA)
             -versus-                  :
 6                                     :
        JOHN G. ROWLAND                :March 16, 2015
 7                                     :3:15 p.m.
        ------------------------------ x

 8


 9


10


11                 TELEPHONE CONFERENCE


12


13


14


15      B E F O R E:   THE HONORABLE JANET BOND ARTERTON


16


17


18   A P P E A R A N C E S:


19


20   FOR THE GOVERNMENT:   LIAM BRENNAN
                           CHRISTOPHER M. MATTEI
21                         Assistant U.S. Attorney's Office
                           157 Church Street, 23rd Floor
22                         New Haven, Connecticut  06510
                           Liam.brennan3@usdoj.gov
23                         Christopher.mattei@usdoj.gov
                           (203) 821-3835
24


25
```

1    **A P P E A R A N C E S:**

2

3    FOR THE DEFENDANT:     REID H. WEINGARTEN
                            WILL DRAKE
4                          STEPTOE & JOHNSON, LLP
                            1330 Connecticut Ave. NW
5                          Washington, DC  20036
                            Rweingarten@steptoe.com
6                          (202)429-8082

7                          JEFFREY A. NOVACK
                            MICHELLE L. LEVIN
8                          STEPTOE & JOHNSON, LLP
                            1114 Avenue of the Americas
9                          New York, New York  10036
                            Jnovack@steptoe.com
10                         (212)378-7519

11

12

13

14

15

16

17

18

19

20
      Court Reporter:        Julia Cashman, LSR
21                           141 Church Street
                             New Haven, Connecticut
22

23

24

25

15:36:03

15:36:03   1          THE COURT:  Good afternoon, counsel.

15:36:07   2          MR. BRENNAN:  Good afternoon, your Honor,

15:36:09   3   Liam Brennan and Chris Mattei here for the government.

15:36:12   4          THE COURT:  This is US versus John Rowland,

15:36:15   5   14CR-79.  And for Mr. Rowland?

15:36:18   6          MR. WEINGARTEN:  Good afternoon, your Honor

15:36:19   7   it's Reid Weingarten, Michelle Levin, Jeffrey Novack and

15:36:23   8   Will Drake in Washington; the three of us are in New

15:36:25   9   York.

15:36:25   10          THE COURT:  All right.  Never know where

15:36:27   11   we're going to get you, Mr. Weingarten.

15:36:28   12          MR. WEINGARTEN:  I bounce around.

15:36:30   13          THE COURT:  There you go.  All right.  I

15:36:33   14   received a communication over the weekend that has

15:36:38   15   caused us to put this on at the Government -- this

15:36:41   16   conference on at the Government's request.  Why don't I

15:36:44   17   let you proceed from there, Mr. Brennan or Mr. Mattei.

15:36:51   18          MR. BRENNAN:  Thank you, your Honor.  We

15:36:53   19   received information on Friday that Brian Foley and

15:36:58   20   Jessica Santos were going to be subpoenaed to the

15:37:01   21   sentencing, assuming that the sentencing occurs, on

15:37:04   22   Wednesday.  This has raised a number of issues about the

15:37:09   23   sentencing, but they are all contingent on the

15:37:13   24   assumption that the sentencing is proceeding.  I can

15:37:17   25   proceed based on that, if you wish, your Honor.

15:37:21  1           THE COURT:  Okay.  I had hoped to get it out

15:37:25  2    this morning; it wasn't quite tidy.  The ruling denying

15:37:31  3    the Motion for a New Trial, the Motion for

15:37:33  4    Reconsideration, should be out within the next half

15:37:36  5    hour.  So let's consider that we are trying to proceed

15:37:39  6    with sentencing on Wednesday.

15:37:41  7           MR. BRENNAN:  Okay.  Thank you, your Honor.

15:37:44  8    So the issue that raises for the Government are

15:37:46  9    basically threefold.  One, we think the testimony that

15:37:50  10   we expect to be -- if there is such testimony given by

15:37:55  11   Mr. Foley and Ms. Santos, is irrelevant to the

15:37:58  12   guidelines of sentencing and we don't think need to

15:38:04  13   occur at the sentencing.  The testimony is wrapped in a

15:38:08  14   host of privilege issues that would be lengthy and

15:38:13  15   dangerous to untangle.  For us to actually cross-examine

15:38:16  16   anybody on any of these issues, there would have to be a

15:38:19  17   host of privileged waivers to occur that we have been

15:38:24  18   told have not occurred.  No privilege has been raised as

15:38:27  19   to this.  And so third, you know, there is no right to

15:38:30  20   call witnesses for a factual hearing at sentencing.  And

15:38:34  21   we think this is actually unnecessary and creating

15:38:37  22   somewhat of a circus at the sentencing proceeding that

15:38:41  23   we hope to avoid.  And we can go into each one of these.

15:38:45  24           I mean, I think this all does appear to be

15:38:50  25   engineered by Lisa Wilson-Foley.  The notes that have

| | | |
|---|---|---|
| 15:38:52 | 1 | been given over by Ms. Santos, and the memo to file that |
| 15:38:57 | 2 | has been given over to Ms. Santos relates to Ms. |
| 15:39:01 | 3 | Wilson-Foley's own privilege of Santos' help. To get |
| 15:39:04 | 4 | into that implicates the motive on behalf of both Foley |
| 15:39:08 | 5 | to testify about what the -- what the value of these |
| 15:39:12 | 6 | payments to her are, and motive of Santos to be directed |
| 15:39:16 | 7 | by Foley in turn -- or to be directed by principals of |
| 15:39:21 | 8 | Foley to turn these over. This implicates Brian Foley's |
| 15:39:25 | 9 | conversations with his wife, privileged communications |
| 15:39:27 | 10 | with his wife, and Lisa Wilson-Foley's privileged |
| 15:39:30 | 11 | communications with her husband. There's been no waiver |
| 15:39:32 | 12 | there. This also implicates Santos' conversations with |
| 15:39:35 | 13 | both Foley and possibly Wilson-Foley. And there has |
| 15:39:39 | 14 | been no waiver of privilege there. |
| 15:39:41 | 15 | The Second Circuit case law is very clear |
| 15:39:43 | 16 | that the defense has a right to argue at sentencing and |
| 15:39:47 | 17 | file submissions challenging factual findings. But they |
| 15:39:52 | 18 | have no right to call witnesses for an evidentiary |
| 15:39:55 | 19 | hearing. There's a host of cases on this, it's fully in |
| 15:39:57 | 20 | the discretion of the Court. And I can go through the |
| 15:40:01 | 21 | cases if your Honor likes. |
| 15:40:02 | 22 | THE COURT: Yes, please. |
| 15:40:02 | 23 | MR. BRENNAN: Okay. So the cases -- |
| 15:40:05 | 24 | primarily I think the case most on point, your Honor, is |
| 15:40:08 | 25 | United States versus Romano, Second Circuit case. |

15:40:12  1  Romano pled guilty so he didn't even go to trial.  Going

15:40:17  2  into his sentencing, the Court was making

15:40:20  3  determinations.  A fun fact that came out at the trial

15:40:24  4  of another witness -- so this was a trial of a

15:40:27  5  co-defendant -- sorry, not other witness, but a

15:40:30  6  co-defendant of Romano.  The judge -- so Romano asked

15:40:32  7  for a Fatico hearing on this.  The judge denies the

15:40:35  8  Fatico hearing.  And the Second Circuit held that this

15:40:39  9  was okay.  It said that the facts that came out in the

15:40:43  10  trial of the co-defendant were tested by

15:40:45  11  cross-examination in there.  Even though Romano had pled

15:40:48  12  guilty, in fact, there was a factual basis for the judge

15:40:51  13  to make the judge's determination, and Romano had no

15:40:56  14  right to call witnesses at his own sentencing.  The

15:41:00  15  judge had the discretion to allow him to do so, but the

15:41:04  16  judge's decision to deny Romano the right to call

15:41:08  17  witnesses was not a violation of due process.  And the

15:41:12  18  Court found that due process only required that the

15:41:16  19  defense ought to be able to be allowed to argue at

15:41:20  20  sentencing and to provide submissions.

15:41:21  21          THE COURT:  Why has the Government not moved

15:41:23  22  to quash?

15:41:26  23          MR. BRENNAN:  There had been -- as far as we

15:41:28  24  know, there has been no subpoena yet.  As of Friday,

15:41:33  25  there was no subpoena.  We were told that there was

15:41:36  1   likely going to be a subpoena today, but we were told

15:41:41  2   we'd be informed when and if there is one.  And so far,

15:41:44  3   we are unaware of any subpoena being served.

15:41:46  4           THE COURT:  So why don't --

15:41:48  5           MR. BRENNAN:  And to the issue of the

15:41:50  6   subpoena being calculatingly served late, the defense

15:41:53  7   has had this information for some time, between February

15:41:56  8   25th and March 4th, based on their briefs and filing.

15:42:01  9   They said they were notified after the judge's -- after

15:42:04  10  your Honor's ruling denying an evidentiary hearing, but

15:42:09  11  before they filed their Rule 33 motion.  So sometime

15:42:13  12  between February 25th and March 4th, they got this

15:42:16  13  information.  We only received it on March 9th.  We

15:42:20  14  obviously turned around 16 pages dealing with it in the

15:42:24  15  next two days, and a subpoena has not been issued as of

15:42:28  16  yet.  And so it creates a lot of questions.

15:42:31  17          THE COURT:  All right.  So let's see, let's

15:42:33  18  start with basics.  Mr. Weingarten, is there going to be

15:42:36  19  a subpoena served on Brian Foley and/or Attorney Santos,

15:42:44  20  Jessica Santos?

15:42:45  21          MR. WEINGARTEN:  We haven't yet, and we've

15:42:47  22  advised them we were going to have this conversation

15:42:50  23  with you first and see where we ended up.

15:42:53  24          THE COURT:  Now, there's been no request for

15:42:56  25  a Fatico hearing from the defense, is that correct?

15:42:59  1        MR. WEINGARTEN:  No, that's correct.  And

15:43:00  2   you know, from our perspective, this is a thousand times

15:43:04  3   easier than what has been represented by the Government.

15:43:06  4   We're obviously anticipating being in court on

15:43:09  5   Wednesday.  As the Court well knows, there are

15:43:12  6   guidelines issues.  One of the guidelines issues is the

15:43:15  7   value of the services provided.  We have the memo from

15:43:19  8   Jessica Santos, which I'm sure you have, on March the

15:43:23  9   6th, and she lays out in her last paragraph the

15:43:27  10  information that's relevant to this.  And then we learn

15:43:30  11  that the Government is going to contest it, essentially

15:43:32  12  challenging the integrity or the credibility of Jessica

15:43:35  13  Santos.  So a logical response to us is let's litigate

15:43:40  14  it.  And Jessica Santos can take the stand and repeat in

15:43:44  15  front of you what she said in her memo to us.  And there

15:43:48  16  can be cross-examination as to whether or not she's

15:43:50  17  telling the truth.

15:43:51  18        If necessary, Brian Foley is a source of the

15:43:53  19  information.  He was the one, according to a respected

15:43:58  20  lawyer named Jessica Santos, who repeatedly told the

15:44:01  21  Government that the value of the services was at least

15:44:03  22  five thousand bucks.  It matters to the guidelines

15:44:06  23  calculation.  But we say to ourselves, let's present it

15:44:10  24  to the Court in the best possible way, is to have the

15:44:15  25  people appear in court.

15:44:16 1          You know, the Santoses is not stooges for
15:44:18 2  Rowland by any stretch of the imagination.  I mean
15:44:21 3  obviously, I'm sure they desperately want to keep Lisa
15:44:24 4  Foley out of prison.  And I'm sure they're considering
15:44:27 5  this issue as relevant for her as well.  So I'm guessing
15:44:30 6  that's what the motive is.  But for our purposes, a
15:44:33 7  respected member of the bar has represented that her
15:44:37 8  client repeatedly told the Government that Rowland's
15:44:41 9  services were at least five thousand dollars.  Putting
15:44:44 10 aside completely the fact that we hadn't gotten that
15:44:47 11 information, for purposes of what the Court has to do on
15:44:50 12 Wednesday, it seems to me that this is obviously
15:44:53 13 relevant.
15:44:53 14          THE COURT:  So let me ask -- just a moment.
15:44:57 15 Mr. Weingarten, in your sentencing memo, you argue that
15:45:10 16 even if -- this is footnote 13, even if 2C1.1 applies,
15:45:16 17 and the enhancement is applicable, the amount at issue
15:45:22 18 is far less than the thirty thousand necessary to
15:45:26 19 trigger the six point enhancement.  Does your argument
15:45:31 20 about the necessity for Mr. Foley or Attorney Santos'
15:45:40 21 statement at sentencing change if the Court declines to
15:45:48 22 use 2C1.1, and instead uses 2C1.8?
15:46:01 23          MR. WEINGARTEN:  Well, if I may, I'd like to
15:46:03 24 hand this part of the response over to Jeff Novack.
15:46:07 25 He's my guidelines guy for purposes of this case, if

15:46:10  1    that's okay.

15:46:11  2                    THE COURT:  Fine.

15:46:11  3                    MR. NOVACK: Your Honor, I think the issue

15:46:13  4    here is that whether we use several guidelines that we

15:46:17  5    are using, loss is going to be at issue.  So it's the

15:46:21  6    same issue either way.  And we view this as a

15:46:24  7    complimentary piece to what we've already presented in

15:46:27  8    our sentencing submission of the significant amount of

15:46:31  9    work Mr. Rowland did with which the Government has

15:46:35  10   acknowledged in its own briefing in connection with the

15:46:38  11   Brady motion we filed.  This is a competent piece, and

15:46:44  12   it's relevant, whichever guideline the Court determines

15:46:48  13   is appropriate, whether it's the Probation Office's

15:46:51  14   guideline, which I believe was 2C18, or 2C11.

15:46:57  15                    THE COURT:  2C1.1.

15:47:00  16                    MR. MARINI: So that we do have a dispute

15:47:03  17   with the Probation Office's PSR in terms of which is the

15:47:06  18   appropriate guidelines to use for Count Six and Seven.

15:47:09  19   But in each case, the loss amount seems the issue, your

15:47:15  20   Honor.

15:47:15  21                    THE COURT:  So I'm -- playing this forward a

15:47:19  22   little bit, all Attorney Santos can say is Mr. Foley

15:47:30  23   said he provided five thousand dollars of value in the

15:47:39  24   work he did for Apple.  That's all she can say, right?

15:47:46  25                    MR. WEINGARTEN:  Well, I think there's more

15:47:48　1　than that.　Let's assume she says in front of you

15:47:50　2　everything she said in the paragraph to us.　And then we

15:47:54　3　point to the fact that the Government has repeatedly

15:47:56　4　said to you that Brian Foley, when he joined Team

15:48:01　5　America, has done nothing but tell the truth.　And if in

15:48:04　6　fact he has said repeatedly to the Government that the

15:48:08　7　value of Rowland's work was at least five thousand

15:48:11　8　dollars, and you make your judgment as to which

15:48:14　9　guideline applies, I think that's important.

15:48:18　10　　　　　THE COURT:　Okay, but that's argument.

15:48:21　11　That's not what I was asking you, which is that's all

15:48:25　12　Attorney Santos could say, is yes, that's what Brian

15:48:31　13　Foley told me, and why do I care why -- excuse me, why

15:48:37　14　do I care what he told her, as opposed to what he told

15:48:49　15　the Government, or would say at sentencing.

15:48:54　16　　　　　MR. WEINGARTEN:　I think it's what Brian

15:48:55　17　said to the Government, in front of her.

15:48:58　18　　　　　MR. BRENNAN:　Your Honor, if I may -- your

15:49:00　19　Honor, may I be heard on this?

15:49:03　20　　　　　THE COURT:　Well, yes, let me get the full

15:49:05　21　picture here first.　If the jury's verdict necessarily

15:49:25　22　said that this payment arrangement was to avoid FEC

15:49:44　23　filing requirements, and it was undisputed at trial that

15:49:58　24　some of Mr. Rowland's work for Apple had value for

15:50:09　25　Apple, but that that had not been the purpose of having

15:50:15 1   him do the work, what is the argument for why the

15:50:30 2   thirty-five thousand dollars, as in any loss amount,

15:50:39 3   isn't an appropriate proxy for culpability, even if it

15:50:53 4   conferred value on Apple?

15:50:59 5         MR. WEINGARTEN:  I hope I understand the

15:51:00 6   question.  And I think the answer is the guideline

15:51:04 7   calculation.  And if we get it to there, it matters.

15:51:08 8   And that's what we're endeavoring to do.  And we have

15:51:11 9   their star witness, who they have represented has told

15:51:15 10   nothing but the truth from the time of his cooperation,

15:51:18 11   saying repeatedly to them, not to Jessica, but

15:51:22 12   repeatedly to them, that the value of Rowland's work was

15:51:26 13   at least five thousand dollars.  So that gets us from

15:51:29 14   one guideline to another, which is obviously relevant to

15:51:33 15   what the Court will do on Wednesday.

15:51:35 16         THE COURT:  All right, Mr. Brennan?

15:51:37 17         MR. BRENNAN:  Thank you, your Honor.  I

15:51:38 18   think we've heard a number of things here and I think

15:51:41 19   they're very telling.  One is which Mr. Weingarten just

15:51:44 20   said the issue is prior to your last question, your

15:51:47 21   Honor, it's what Brian Foley said to the Government.

15:51:50 22   And that's not the case, your Honor.  The case is what

15:51:53 23   they're trying to say the issue is, is what is the value

15:51:56 24   to Apple.  Whether that is relevant or not -- we don't

15:51:59 25   agree that's relevant; I'll get to that in a moment.

15:52:01 1 But first what the value to Apple had zero to do with

15:52:04 2 Jessica Santos, zero to to do with what Brian Foley said

15:52:08 3 in any meetings with us, zero to do with any of that.

15:52:11 4 It's a question of what Brian Foley said the value of

15:52:15 5 recommending Ritter to.  Calling Jessica Santos and

15:52:18 6 implicating, which will be wrapped up in all these

15:52:23 7 privilege issues, is trying to turn the sentencing into

15:52:26 8 a circus.

15:52:26 9        The second issue is getting guidelines to

15:52:29 10 thirty thousand dollars.  Now, the question of whether

15:52:32 11 the value -- of what the value of the recommendations to

15:52:35 12 Ritter is, does not get the guidelines to thirty

15:52:39 13 thousand dollars.  It might have value, it might not

15:52:42 14 have value.  But as your Honor just articulated in your

15:52:45 15 question to Mr. Weingarten, the arrangement was -- the

15:52:49 16 purpose of this arrangement, which was testified to at

15:52:52 17 trial, which was cross-examined extensively by Mr.

15:52:55 18 Weingarten, was to payroll into the campaign.  I have a

15:53:01 19 million cites if you would like from the trial record on

15:53:03 20 various pages, where Mr. Foley talks about

15:53:07 21 legitimization, where he talks about why he was really

15:53:09 22 paying Mr. Rowland, how he was paying Rowland

15:53:12 23 throughout.  And it was fully contemplated that Mr.

15:53:14 24 Rowland was going to have to do something.  He was going

15:53:18 25 to have to show up to do something at Apple.

15:53:24  1        But that does not mean, that does not

15:53:26  2   discount, the value of the payments to him from the

15:53:28  3   guidelines purposes.  Because the scheme itself was

15:53:31  4   illegal.  There is no offset in the guidelines, and the

15:53:36  5   defense has not even tried to cite one that would offset

15:53:39  6   the payments to him for the value of the recommendation

15:53:42  7   of the services.  It is very telling, in their filing

15:53:47  8   last week, they did not even cite a guidelines

15:53:49  9   application note, a guidelines -- anything, commentary,

15:53:53  10  that said if Ritter's recommendation was worth five

15:53:56  11  thousand dollars, payment for the month of October

15:53:59  12  should be reduced.  When we know his payment for the

15:54:04  13  month of October clearly was to set up this illegal

15:54:07  14  arrangement, and to get him working on the campaign.

15:54:11  15        If you look actually at the application

15:54:13  16  notes, and I address the Court to 2C1.1 application note

15:54:24  17  three, there is a discussion of how you cannot discount

15:54:29  18  the payment of a bribe from the value to the defendant.

15:54:36  19  So if the defendant had to pay a bribe to get an illegal

15:54:39  20  benefit, they have to do something else that cost them

15:54:43  21  something to get the illegal benefit.  You don't

15:54:45  22  discount the payment up front.

15:54:47  23        THE COURT:  So if this case is, however, not

15:54:50  24  a case involving bribery, how does that application note

15:54:56  25  apply?

15:54:58  1          MR. BRENNAN:  Well, I think there's an

15:55:00  2   analogy situation here, where Mr. Rowland has to provide

15:55:04  3   services at Apple, but you don't discount the value of

15:55:07  4   his services to the benefit to him, which is the gain of

15:55:11  5   this contract to work on the campaign.  At the end of

15:55:14  6   the contract, there's five thousand dollars, every

15:55:16  7   month, for the seven months of payments.

15:55:18  8          Now, there is no -- as your Honor pointed

15:55:21  9   out, this is not specifically a bribery case, and there

15:55:24 10   is no specific guideline discount written into the

15:55:28 11   application notes for the guidelines themselves anywhere

15:55:31 12   in here, and the defense has not articulated one.  And I

15:55:36 13   think that's the problem here.  This is irrelevant to

15:55:39 14   the guidelines.

15:55:46 15          THE COURT:  So if we were looking at 2C1.8,

15:55:55 16   as I think defendant urged, and we look at(b)(1), it's

15:56:05 17   talking about if the value of the illegal transactions

15:56:12 18   exceeded five thousand dollars, increased by the number

15:56:17 19   of levels from the table in 2B1.1.

15:56:24 20          MR. BRENNAN:  That's correct, your Honor.

15:56:25 21          THE COURT:  Doesn't that suggest that the

15:56:31 22   value or not of five thousand dollars of Mr. Rowland's

15:56:39 23   work, getting Tom Ritter or otherwise, doesn't matter?

15:56:49 24          MR. BRENNAN:  Yes, your Honor, the illegal

15:56:51 25   transaction is hiring Mr. Rowland to work on the

| | |
|---|---|
| 15:56:55 | 1 |
| 15:57:02 | 2 |
| 15:57:05 | 3 |
| 15:57:09 | 4 |
| 15:57:12 | 5 |
| 15:57:15 | 6 |
| 15:57:17 | 7 |
| 15:57:20 | 8 |
| 15:57:24 | 9 |
| 15:57:27 | 10 |
| 15:57:30 | 11 |
| 15:57:34 | 12 |
| 15:57:38 | 13 |
| 15:57:40 | 14 |
| 15:57:50 | 15 |
| 15:57:58 | 16 |
| 15:58:06 | 17 |
| 15:58:09 | 18 |
| 15:58:15 | 19 |
| 15:58:19 | 20 |
| 15:58:28 | 21 |
| 15:58:32 | 22 |
| 15:58:39 | 23 |
| 15:58:48 | 24 |
| 15:59:02 | 25 |

campaign by routing payments to him through Richard Realty and the law offices of Christian Shelton. The purpose of that, which was fully gone into at trial, was to get his services on the campaign. Mr. Foley specifically said on page 35 of his transcript that he spent fifteen thousand dollars in campaign services on Mr. Rowland in 2011, and twenty thousand dollars in campaign services on him in 2012, and that's in the transcript, and that is the illegal transaction. He testified multiple times throughout the trial that all the work at Apple was legitimate, it was with the side benefit that it needed to be done to carry out the --

THE COURT: So let me ask Mr. Weingarten this. In order not to create more work than is necessary, what if we just accepted, for the purposes of sentencing, that Brian Foley, in his head, valued Mr. Rowland's recommendation of Mr. Ritter at five thousand dollars. From which you argue therefore, we are below thirty thousand, and all the guidelines analysis. And in that way, we're not getting into this, what I really think is a side show, because I think what is far more central is whether it matters. So why don't we just accept that that's what Mr. Foley values, on whatever basis he does, Mr. Rowland's work for Apple, to be five thousand dollars, leave it at that, and argue the more

15:59:08  1   central points, which is does that -- how does that play

15:59:14  2   within the guidelines.  Doesn't that work?

15:59:21  3          MR. WEINGARTEN:  I think it does.  I just

15:59:22  4   want to respond, you know, I take my position as

15:59:26  5   Rowland's lawyer in your courtroom very seriously.  We

15:59:29  6   have no desire to have a circus on Wednesday.  I mean,

15:59:33  7   and frankly, we were surprised at how this thing has

15:59:37  8   shaken out.  What we have is a lawyer who we find to be

15:59:40  9   completely honorable, making representations that we

15:59:44  10  thought were relative to what you have to decide on

15:59:47  11  Wednesday.  And we then learned that the Government

15:59:50  12  contested them.  Okay, that's fine too.  And we simply

15:59:53  13  believe that the way to resolve this was to lay it all

15:59:58  14  out for you.  And the number we think is relevant is the

16:00:01  15  illegal contributions.  And if in fact, from our

16:00:04  16  perspective, Foley is taking the position, and took the

16:00:07  17  position with the prosecutors, after he's cooperating,

16:00:10  18  that this guy did at least five thousand dollars of

16:00:13  19  work, we win.  Now, obviously, what you propose is that

16:00:16  20  gives us the opportunity to argue.  And fine, we will.

16:00:20  21          THE COURT:  I think that's a very

16:00:21  22  appropriate way to do it.  And I think it gets us where

16:00:31  23  the central issue really should lie.

16:00:37  24          MR. WEINGARTEN:  Okay.

16:00:37  25          THE COURT:  All right?

16:00:38  1          MR. WEINGARTEN:  Can I ask a couple

16:00:40  2  questions about Wednesday?

16:00:40  3          THE COURT:  Yes.

16:00:41  4          MR. WEINGARTEN:  Okay, so, you know,

16:00:43  5  obviously, I have done sentencings before.  I assume we

16:00:47  6  walk in, and we wrestle with the guidelines issues

16:00:50  7  first, is that how the Court does it?

16:00:51  8          THE COURT:  Yes.

16:00:53  9          MR. WEINGARTEN:  Okay.  And then I think

16:00:55  10  we're going to have sort of maybe --

16:00:57  11          THE COURT:  You can do that --

16:00:59  12          MR WEINGARTEN:  -- bring in five people who

16:01:00  13  would like to address the Court.  I think it will be

16:01:02  14  brief.  And I assume they could step up to the podium

16:01:06  15  and speak to you.

16:01:07  16          THE COURT:  Okay, what we'll do is -- and I

16:01:10  17  would suggest that you summarize your positions on the

16:01:14  18  guidelines because you will have set it out in great

16:01:16  19  length in your briefing.

16:01:18  20          MR. WEINGARTEN:  Right.

16:01:18  21          THE COURT:  And we don't need to have the

16:01:20  22  full -- the full monty.  We can just have the summary

16:01:25  23  for record purposes.

16:01:28  24          MR. WEINGARTEN:  But I'm wanting to put --

16:01:30  25  I'm having Jeffrey do it, and he's very eager to do it

16:01:33  1  and he has a lot to say.  He's sitting right here; of

16:01:36  2  course, I'm just kidding.

16:01:38  3          THE COURT:  Okay, succinct is the value of

16:01:43  4  having thought about it a lot.

16:01:45  5          MR. WEINGARTEN:  Right, we understand.

16:01:47  6          THE COURT:  And because I have thought about

16:01:49  7  it a lot, as well.

16:01:51  8          MR. WEINGARTEN:  Right.

16:01:52  9          THE COURT:  And then we'll have our advisory

16:01:57 10  guideline.  I'll then invite you, Mr. Weingarten, to

16:02:05 11  make sentencing remarks and at that time, if you wish,

16:02:11 12  you can call the people who wish to make statements.

16:02:16 13  And then make your remarks, or make your remarks first,

16:02:19 14  or make your remarks both before and after.  I'll then

16:02:23 15  invite the Government to speak.  And then I will invite

16:02:30 16  Mr. Rowland to speak.

16:02:33 17          MR. WEINGARTEN:  Okay.

16:02:34 18          THE COURT:  And then we'll recess, and I

16:02:39 19  will consider your arguments and positions, and the

16:02:43 20  things that the people who spoke said.  And I will come

16:02:47 21  back and give -- and impose sentence.

16:02:50 22          MR. WEINGARTEN:  Okay.  Understood.

16:02:53 23          THE COURT:  Okay?

16:02:55 24          MR. WEINGARTEN:  Mm-hmm.

16:02:56 25          THE COURT:  All right.  All right, do you

16:02:59  1    think there's anything else that we need to take up?

16:03:04  2                MR. WEINGARTEN:  Not for us.

16:03:06  3                THE COURT:  From the Government?

16:03:10  4                MR. BRENNAN:  I don't believe so, your

16:03:11  5    Honor.

16:03:11  6                THE COURT:  All right, you're satisfied with

16:03:13  7    the way I have proposed that we proceed?

16:03:16  8                MR. BRENNAN:  I believe -- I'm still

16:03:20  9    puzzling through it in my mind, your Honor, but I

16:03:22  10   believe we can -- we have our argument --

16:03:27  11               THE COURT:  Your argument is it doesn't

16:03:29  12   matter.

16:03:29  13               MR. BRENNAN:  It doesn't matter.

16:03:30  14               THE COURT:  Right.

16:03:31  15               MR. BRENNAN:  Yes.

16:03:33  16               THE COURT:  Okay.

16:03:34  17               MR. MATTEI:  Your Honor, it's Chris Mattei.

16:03:36  18   I think I would also just add that not only does it not

16:03:39  19   matter, but we think the overall trial record

16:03:46  20   establishes that whatever value Mr. Rowland may have

16:03:51  21   provided based on Mr. Foley's testimony, it was

16:03:56  22   immaterial and insignificant, regardless of what

16:03:59  23   Attorney Santos has put in an e-mail.

16:04:02  24               THE COURT:  Well, that's a different --

16:04:03  25   that's a different point.  What I want to do is stick

| | | |
|---|---|---|
| 16:04:07 | 1 | with the five thousand dollars and hear you out on |
| 16:04:10 | 2 | whether or not it matters or not. |
| 16:04:14 | 3 | MR. MATTEI: I appreciate that. I |
| 16:04:15 | 4 | understand your Honor. |
| 16:04:15 | 5 | MR. WEINGARTEN: Well, let's not have a |
| 16:04:17 | 6 | misunderstanding here. What I heard you say is this is |
| 16:04:20 | 7 | what was in Foley's head. This is the Government's star |
| 16:04:25 | 8 | witness and cooperator, whose integrity they've |
| 16:04:30 | 9 | extolled, what he believes is that Rowland provided at |
| 16:04:32 | 10 | least five thousand dollars worth of service to his |
| 16:04:34 | 11 | company. |
| 16:04:34 | 12 | THE COURT: Of value to the company. |
| 16:04:36 | 13 | MR. WEINGARTEN: Yes, yes. Okay. |
| 16:04:38 | 14 | MR. MATTEI: And what I understand is that |
| 16:04:42 | 15 | for purposes of this sentencing hearing, and simply |
| 16:04:46 | 16 | analyzing the guidelines, you're going to assume that, |
| 16:04:50 | 17 | but you're not making any factual finding to that |
| 16:04:54 | 18 | effect. And I don't know that there could be a factual |
| 16:05:00 | 19 | finding. So we're fine with that approach. But what I |
| 16:05:06 | 20 | get a little bit uncomfortable with is when I hear |
| 16:05:09 | 21 | Attorney Weingarten go on about respected members of the |
| 16:05:12 | 22 | bar making certain representations, as if we somehow |
| 16:05:16 | 23 | conceded that they're true, or that we're corresponding |
| 16:05:18 | 24 | that they're true. We contested them, and we continue |
| 16:05:21 | 25 | to. But what we said and what we're saying right now is |

16:05:23 1 that we think that for whatever issues need to be

16:05:26 2 resolved under the guidelines, they can be resolved

16:05:28 3 without hauling people in to testify and locating all

16:05:33 4 these privileges. And I just want to make sure that

16:05:36 5 that's clear. Because -- anyway, that's -- I'll leave

16:05:41 6 it at that, your Honor.

16:05:42 7 THE COURT: Okay. Is there anything

16:05:43 8 further?

16:05:45 9 MR. WEINGARTEN: No, your Honor.

16:05:46 10 MR. BRENNAN: No, your Honor.

16:05:47 11 THE COURT: All right, thank you very much.

16:05:48 12 Good bye.

16:05:49 13 MR. BRENNAN: Thank you.

14

15

16

17

18

19 COURT REPORTER'S TRANSCRIPT CERTIFICATE.

20 I hereby certify that the within and foregoing is a true

21 and correct transcript taken from the proceedings in the

22 above-entitled matter.

23 /s/ Julia Cashman

24 Official Court Reporter

25 3/18/2015