UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
UNITED STATES OF AMERICA                               :
                                                       :
            v.                                         :
                                                       :        Case No. 3:14-CR-79 (JBA)
JOHN G. ROWLAND                                        :
                                                       :
                                                       :
                                                       :        April 17, 2015
-------------------------------------------------------x
```

**DEFENDANT JOHN G. ROWLAND'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CONTINUED RELEASE PENDING APPEAL**

Andrew L. Fish
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Phone: (212) 415-8541
Fax: (646) 839-2843
E-mail: afish@lockelord.com

Peter G. Billings
Sean P. Barrett
BILLINGS & BARRETT, LLC
941 Grand Avenue, 2nd Floor
New Haven, CT 06511
Phone: (203) 562-0900
Fax: (203) 562-0902
E-mail: peter@billingsandbarrett.com

*Counsel for Defendant John G. Rowland*

# TABLE OF CONTENTS

I.     The Standard for Granting Release Pending Appeal ...........................................1

II.    Mr. Rowland Does Not Pose a Risk of Flight or Danger to the Community ...................1

III.   Mr. Rowland's Appeal Raises Substantial Questions of Law and Fact Likely to Result in Reversal or a New Trial ...................................................................2

       A.     The Government's Novel Use of Section 1519 Presents a Substantial Question for Appeal ...................................................................4

              1.     Mr. Rowland Did Not Violate Section 1519 ..............................4

                     a.     The Draft Contract Rejected by Greenberg Was Not "Falsified" ...................................................................5

                     b.     The Contract with Apple's Counsel Was Not "Falsified"............8

              2.     A New Trial on All Counts Is Required Because of Prejudicial Spillover ...................................................................8

       B.     The Government's Failure to Disclose that Lisa Wilson-Foley Continued to Contradict the Government's Theory of the Case Presents a Substantial Question for Appeal ...................................................................10

              1.     The Government's *Brady* Obligations ...................................11

              2.     The Government Violated Its *Brady* Obligations by Failing to Disclose Wilson-Foley's Statements ......................................11

       C.     Errors in the Court's Jury Instructions Present a Substantial Question for Appeal...................................................................13

       D.     Erroneous Evidentiary Rulings Present Substantial Questions for Appeal ........15

IV.    Conclusion ...................................................................19

Defendant John G. Rowland respectfully submits this memorandum in support of his motion for continued release pending appeal. Mr. Rowland does not present a risk of flight or a danger to the community, and his appeal presents multiple substantial questions of law and fact that are likely to result in reversal or a new trial. Unless Mr. Rowland is granted continued release pending appeal, he will likely serve a substantial portion of his 30 month sentence before his appeal is decided. For these reasons, this Court should grant Mr. Rowland continued release pending appeal.

## I.     The Standard for Granting Release Pending Appeal

A court "shall order the release" of a convicted defendant if the court finds (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and (2) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact" that is "likely to result" in reversal or a new trial. 18 U.S.C. § 3143(b). Once the defendant makes the requisite showing, "the statute establishes a right to liberty that is not simply discretionary but mandatory." *See United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).

To qualify as "substantial," a question need only be "one of more substance than would be necessary to a finding that it was not frivolous"—in other words, "a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). A defendant need not prove that he is likely to prevail on the substantial questions he raises. *Id.* at 124-25. Rather, he must show only that if he were to prevail, the likely result would be reversal or a new trial. *Id.*

## II.     Mr. Rowland Does Not Pose a Risk of Flight or Danger to the Community

There can be no dispute that Mr. Rowland does not pose a risk of flight or danger to the

community. Mr. Rowland has remained free on bail since being charged in April 2014, and he has appeared in Court whenever required. Because Mr. Rowland does not pose a risk of flight or danger to the community, this Court, without objection, has allowed Mr. Rowland to self-surrender to a designated Bureau of Prisons facility. Accordingly, the first requirement for release pending appeal is satisfied. *See* 18 U.S.C. § 3143(b)(1)(A).

## III.    Mr. Rowland's Appeal Raises Substantial Questions of Law and Fact Likely to Result in Reversal or a New Trial

Mr. Rowland also meets the second requirement for continued release pending appeal: his appeal is not for the purpose of delay and will raise multiple substantial questions of law and fact that are likely to result in reversal or a new trial. These substantial questions include the following:

First, the Government deployed a novel and unprecedented legal theory, under which Mr. Rowland's drafting of a contract proposal that Mark Greenberg immediately rejected constituted a criminal violation of the "anti-shredding" provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1519 ("Section 1519"). As the Supreme Court recently emphasized, Section 1519 must be construed narrowly in light of the statute's purpose – "to prohibit, in particular, corporate document-shredding to hide evidence of financial wrongdoing." *Yates v. United States*, 135 S. Ct. 1074, 1081 (2015) (plurality opinion). No contract, let alone a draft contract proposal that was immediately rejected, can constitute the sort of "falsified" document criminalized by Section 1519. Accordingly, the convictions on Counts One and Three cannot stand. Moreover, because of prejudicial spillover, a new trial is required on the remaining counts of conviction.

Second, the Government violated its *Brady* obligations by failing to disclose that, even in the months leading up to trial, Lisa Wilson-Foley continued to refute the Government's theory of the case. Unbeknownst to Mr. Rowland, Ms. Wilson-Foley told the Government that, at the time

Mr. Rowland was hired to work at Apple Healthcare ("Apple"), she believed he was being hired for "a real job, not a 'sham.'" Ms. Wilson-Foley would not waiver from her account, even after the Government repeatedly pressed her to change her story and threatened to rescind her husband's misdemeanor plea offer. Had Mr. Rowland known of this powerful exculpatory evidence, there is a reasonable probability that the outcome of the trial would have been different.

Third, errors in the jury instructions, including the mischaracterization of the theory of the defense, necessitate a new trial. The Government's case on Counts Two through Seven centered on its contention that $35,000 Mr. Rowland received for consulting services he had provided to Apple over a seven-month period were actually payments for work on Wilson-Foley's congressional campaign. The theory of the defense was that Mr. Rowland committed no crime because, at a minimum, he understood that he was being paid for services to Apple. The Court erroneously declined to instruct the jury on this theory and instead told the jury that Mr. Rowland's defense was that all the payments he received were *actually* for work performed for Apple. In addition, the Court erroneously declined to instruct the jury on relevant aspects of campaign finance law. Because the jury instructions changed the theory of the defense and omitted relevant legal principles, a new trial is warranted.

Fourth, a series of erroneous evidentiary rulings during trial prejudiced Mr. Rowland's defense. The Court erred by (1) excluding on hearsay grounds emails and other evidence showing that Mr. Rowland believed he was being paid to work for Apple and did, in fact, work for Apple, (2) allowing cooperating witness Brian Foley to opine about the meaning of Mr. Rowland's emails, (3) permitting confederates of candidate Mark Greenberg to opine that Mr. Rowland's alleged proposal was "illegal" and "didn't smell right" and then barring relevant

cross-examination, (4) admitting hearsay evidence offered by the Government on the ground that

it established a witness's state of mind, (5) barring cross-examination of Foley on his prior use of

middlemen to pay campaign consultants, and (6) permitting the Government to redact an email

in a misleading manner. These evidentiary errors deprived Mr. Rowland of his right to a fair trial.

As set forth below, these substantial questions for appeal are likely to result in reversal or

a new trial. Accordingly, Mr. Rowland should be granted continued release pending appeal.

### A. The Government's Novel Use of Section 1519 Presents a Substantial Question for Appeal

#### 1. Mr. Rowland Did Not Violate Section 1519

Counts One and Three charged Mr. Rowland with violating Section 1519, which provides

in pertinent part as follows:

> Whoever knowingly alters, destroys, mutilates, conceals, covers
> up, falsifies, or makes a false entry in any record, document, or
> tangible object with the intent to impede, obstruct, or influence the
> investigation or proper administration of any matter within the
> jurisdiction of any department or agency of the United States . . . ,
> or in relation to or contemplation of any such matter or case [is
> guilty of a crime].

18 U.S.C. § 1519. Count One alleged that Mr. Rowland violated Section 1519 by drafting a

proposed contract between his consulting company and Mark Greenberg – a draft contract that

Greenberg immediately rejected. Count One alleged that Mr. Rowland "falsified and made

material false entries in" the draft contract. Count Three alleged that Mr. Rowland "falsified and

made material false entries in" a contract with Apple's attorney.

The convictions on Counts One and Three cannot stand, because neither the draft contract

rejected by Greenberg nor Mr. Rowland's contract with Apple's attorney were "falsified"

documents or documents with "false entries," as those terms are used in Section 1519. First, one

cannot make a "false entry" in a contract. Contracts are agreements between parties and not

4

recordkeeping devices in which "entries" are made. *See*, *e.g.*, *Yates*, 135 S. Ct. at 1090 (Alito, J., concurring) (noting that the phrase "'makes a false entry in' . . . makes no sense outside of filekeeping"). Second, a contract is "falsified" only if it (1) represents a forgery or alteration of a preexisting contract, or (2) contains misrepresentations of historical fact. *See United States v. Blankenship*, 382 F.3d 1110, 1133 (11th Cir. 2004). Indeed, "a contract is not a factual assertion, and therefore cannot be characterized as 'true' or 'false.'" *Id.* at 1135. Neither the draft contract rejected by Greenberg nor Mr. Rowland's contract with Apple's attorney were forgeries, and neither document contained any misrepresentations of historical fact. Accordingly, these documents were not "falsified" within the meaning of Section 1519.

### a. The Draft Contract Rejected by Greenberg Was Not "Falsified"

The draft contract at issue in Count One was an initial proposal that Mr. Rowland delivered to Mr. Greenberg at their second meeting. (Tr. 96, 114).[1] Mr. Rowland's draft appeared to have been "cut and paste" from his prior contracts. (Tr. 321). The contracting parties in the draft were Mr. Rowland's consulting company and Mr. Greenberg. The draft contract stated, among other things, that Mr. Rowland's company "agrees to perform such consulting services . . . for Mark Greenberg, as may be reasonably requested by him with respect to . . . strategic advice, public relations, . . . or such other services as may be required." (GX 2). The draft contract further stated that Mr. Rowland's company "also agrees to these same services for 'The Simon Foundation', but also including fund raising." (*Id.*). The broad language in the draft contract encompassed political consulting services. (*See*, *e.g.*, Tr. 203-04). In addition, before presenting the draft contract to Mr. Greenberg, Mr. Rowland had specifically proposed that he

---

[1] "Tr." refers to the full trial transcript.

provide fundraising assistance to the Simon Foundation, which was Mr. Greenberg's charitable animal rescue and adoption center. (Tr. 85-86, 205).

Mr. Greenberg immediately rejected the draft contract; he ripped it up and threw it out the day that Mr. Rowland presented it to him. (Tr. 207, 284).

Quite simply, the unexecuted draft contract was neither "falsified" nor contained "false entries." Because Mr. Greenberg rejected the draft contract, it could not possibly have been a "falsified" document (*i.e.*, an altered version of an actual contract between Mr. Rowland and Mr. Greenberg). In any event, the draft contract was not altered, and it contains no false statements of historical fact. Therefore, it was not a "falsified" document or a document with "false entries." *See United States v. Blankenship*, 382 F.3d at 1133.

The Government's theory at trial was that the draft contract was "falsified" because it omitted an express reference to campaign services, and that reference would have been material to the Federal Election Commission or the Department of Justice. (*See, e.g.*, Tr. 2611). This omission theory, on which the jury was instructed over Mr. Rowland's objection (Tr. 2544-45, 2738), is legally unsound. Under the Government's theory, any individual who plans to evade any governmental requirement (*e.g.*, a backpacker who plans to camp in a national park without a required permit) would have an affirmative obligation to mention the planned evasion in relevant contracts and other documents, lest they be subject to 20 years' imprisonment. Congress could not have possibly intended that Section 1519—a statute aimed at prohibiting "corporate document-shredding to hide evidence of financial wrongdoing," *Yates*, 135 S. Ct. at 1081—create an affirmative obligation to mention all information of interest to any governmental agency in any document prepared in the course of business or personal affairs.

Importantly, Section 1519 must be interpreted in light "principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Id.* at 1085 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). In Section 1519, the words "falsifies, or makes a false entry in" follow "alters, destroys, mutilates, conceals, covers up" – actions that all relate to the destruction or concealment of information found in preexisting documents. This confirms that Section 1519 was aimed at prohibiting actions to destroy or conceal records. Section 1519 did not, *sub silentio*, create an new affirmative obligation to include in contracts, drafts and other documents all information of interest to any Governmental agency.

Indeed, if Section 1519 were read to prohibit anyone from drafting a contract or other document that omitted a fact that would be material to any governmental agency, the statute would be unconstitutionally vague. *See, e.g.*, *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (holding that, to comport with due process, a statute must "describe with sufficient particularity what a suspect must do in order to satisfy" it). Moreover, the rule of lenity, which the *Yates* plurality applied to interpret Section 1519, *see* 135 S. Ct. at 1088, reinforces the notion that Section 1519 should not be read (1) to create an affirmative obligation to include facts in contracts or (2) to prohibit the drafting of any contract proposal that is immediately rejected.

In sum, because the draft contract rejected by Greenberg was not a falsified document or a document containing false entries within the meaning of Section 1519, the conviction on Count One cannot stand.

### b. The Contract with Apple's Counsel Was Not "Falsified"

The evidence offered in support of Count Three, which charged that Mr. Rowland "falsified and made material false entries in" a contract with Apple attorney Christian Shelton, is also legally insufficient. The contract (GX 1) was not altered and it contained no false statements of historical fact. Accordingly, in light of the legal principles set forth above, the contract was not a "falsified" document or a document with "false entries." *See United States v. Blankenship*, 382 F.3d at 1133. Accordingly, the conviction on Count Three cannot stand.

### 2. A New Trial on All Counts Is Required Because of Prejudicial Spillover

When a conviction on one count is reversed for legal insufficiency, a new trial is required on the remaining counts "where there is prejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal." *United States v. Hamilton*, 334 F.3d 170, 181-83 (2d Cir. 2003); *see, e.g.*, *United States v. Bruno*, 383 F.3d 65, 91 (2d Cir. 2004). There is a substantial question on appeal about prejudicial spillover in this case.

With regard to Counts Two through Seven (the counts relating to the Wilson-Foley campaign), the Government's chief witness at trial was Brian Foley, the president of Apple and Lisa Wilson-Foley's husband. Indeed, according to the Government, "Foley's cooperation and trial testimony were instrumental." (Government Memorandum in Aid of Sentencing in *United States v. Brian Foley*, No. 3:14cr65 (JBA) ("Gov't Foley Sent. Mem."), at 13). Foley, however, "only began to cooperate with the government after his sister and niece had testified in the grand jury and implicated him in [a] conduit [campaign] contribution scheme" that had nothing to do with Mr. Rowland. (*Id.* at 17). Only then, "[f]acing almost certain indictment and conviction, [did] Mr. Foley start[] cooperating with the government in the case against John Rowland." (*Id.*).

Moreover, Foley testified pursuant to a remarkable deal with the Government. In exchange for his testimony, the Government (1) agreed not to prosecute Foley for any of the numerous felonies he had committed and instead allowed Foley to plead guilty to a single misdemeanor, (2) agreed that Foley's wife, Lisa Wilson-Foley, could plead guilty to a single misdemeanor and (3) agreed not to prosecute Foley's friends, other family members and employees for their participation in Foley's illegal conduit campaign contribution schemes. (Tr. 989-96, 1184). This highly favorable plea offer to a man "[f]acing almost certain indictment and conviction" (Gov't Foley Sent. Mem. at 17) created a strong inventive for Foley to falsely implicate Mr. Rowland in wrongdoing.

Under these circumstances, the evidence offered in connection with Count One, including the testimony of Mark Greenberg, Sam Fischer and Marc Katz, created spillover prejudice with respect to Counts Two through Seven. Indeed, the Government itself admitted that the evidence offered in connection with Count One was "one of the most important aspects of the Government's evidence concerning Mr. Rowland's criminal conduct in connection with the Wilson-Foley campaign." (Gov't Mem. in Opposition to Defendant's Post-Trial Request for Evidentiary Hearing dated January 23, 2015 [Dkt. 201], at 52). Because the Government admittedly bolstered Foley's trial testimony with the Count One evidence, prejudicial spillover requires a new trial on the remaining counts of conviction.

The Count One evidence, including evidence of Greenberg's conversations with Katz and Fischer in 2009 and 2010, would not have been admissible if Count One had not been included in the Indictment. Mr. Rowland's alleged efforts to work for Greenberg in 2009 and 2010 had no relevance to the charges relating to the 2012 Wilson-Foley congressional campaign. With respect to the Wilson-Foley campaign, it is undisputed (1) that Mr. Foley came up with the idea of hiring

Mr. Rowland to work at Apple (2) that Mr. Rowland *never* suggested that Foley or Wilson-Foley pay him for campaign work through a third party, and (3) that Mr. Foley never told Mr. Rowland or anyone else that Mr. Rowland's job at Apple was a sham or that he was being paid for campaign work. (Tr. 1052-53). Yet the Government used testimony from Greenberg, Fischer and Katz to cast Rowland as a person of bad character who did things that "didn't smell right" and who repeatedly sought money from political novices. (*See*, *e.g.*, Tr. 467, 2612, 2625). This prejudiced Mr. Rowland's defense on the counts relating to the Wilson-Foley campaign.

In sum, the Government's novel use of Section 1519 presents a substantial question for appeal likely to result in reversal on Counts One and Three and a new trial on the remaining counts.

B.     **The Government's Failure to Disclose that Lisa Wilson-Foley Continued to Contradict the Government's Theory of the Case Presents a Substantial Question for Appeal**

The Government's violation of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny presents a substantial question for appeal. The Government failed to disclose to Mr. Rowland that, during a March 10, 2014 interview, Lisa Wilson-Foley told the Government that, at the time Mr. Rowland was hired to work at Apple, she believed he was being hired for "a real job, not a 'sham.'" (*See* Affidavit of Craig A. Raabe ¶ 8(b), Exhibit A to Lisa-Wilson Foley's Response to the Court's Order dated January 5, 2005 [Dkt. 202]). The Government also failed to disclose that Ms. Wilson-Foley would not waiver from her account, even after the Government repeatedly pressed her to change her story and threatened to rescind her husband's misdemeanor plea offer. (*See* Defendant's Memorandum of Law in Support of Reconsideration [Dkt. 236], Exh. A at 7, Exh. B, Exh. C). Ms. Wilson-Foley's statements to the Government were highly exculpatory, as they directly contradicted the Government's theory at

trial that Mr. Rowland, Lisa Wilson-Foley and Brian Foley all believed from the start that Mr. Rowland's job at Apple was a sham. (*See, e.g.*, Tr. 48). If Mr. Rowland had known before trial that Ms. Wilson-Foley refused to adopt the Government's version of events, there is a reasonable probability that the result of the proceedings would have been different. The Government's failure to disclose Wilson-Foley's exculpatory statements warrants a new trial and presents a substantial question for appeal.

### 1. The Government's *Brady* Obligations

"*Brady* requires that the government disclose material evidence favorable to a criminal defendant." *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012). "Evidence is favorable if it is either exculpatory or impeaching, *Strickler v. Greene*, 527 U.S. 263, 281-82 . . . (1999), and it is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Mahaffy*, 693 F.3d at 127 (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)). "'[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal,' but rather, a conviction must be reversed 'upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Youngblood*, 547 U.S. at 870).

### 2. The Government Violated Its *Brady* Obligations by Failing to Disclose Wilson-Foley's Statements

The Government violated its *Brady* obligations by failing to disclose the fact that Wilson-Foley refused to adopt the Government's theory of the case, *i.e.*, that Foley, Wilson-Foley and Mr. Rowland entered into a criminal conspiracy on the day that (1) Wilson-Foley told Mr. Rowland about Foley's job offer and (2) Mr. Rowland responded by sending an email to Foley

stating, "I get it" (GX 109). The "I get it" e-mail was a centerpiece of the Government's case. Foley testified that, by writing "I get it," Mr. Rowland meant that he understood that he was "really working for the campaign." (Tr. 809). During summations, the Government referred to the "I get it" email on four separate occasions, and the Government also highlighted the email during Christopher Syrek's testimony. (Tr. 1438, 2633, 2721, 2723, 2728-29). But the fact that Ms. Wilson-Foley believed that Mr. Rowland was being hired for a "real job" at Apple when she told him about the job offer contradicts the Government's interpretation of the "I get it" email and its theory of the case. If Wilson-Foley had told Mr. Rowland about what she believed to be a real job, Mr. Rowland's "I get it" response could not have referred to a criminal scheme. Accordingly, Ms. Wilson-Foley's statements to the Government refuting its theory of the case were highly exculpatory.

Had the Government disclosed Ms. Wilson-Foley's statements denying that she believed Mr. Rowland's job at Apple was a "sham," there is a reasonable probability that the outcome of the proceeding would have been different. The suppressed evidence would have allowed Mr. Rowland, among other things, to impeach Foley's interpretation of the "I get it" email and to highlight the fact (also concealed by the Government) that, during the alleged conspiracy, Foley was repeatedly assuring his wife (the supposed co-conspirator) that Mr. Rowland's work at Apple was real and legitimate. Mr. Rowland would have also likely called Ms. Wilson-Foley to testify that she believed Mr. Rowland was being hired for a real job and that Foley repeatedly assured her that Mr. Rowland was performing real work. There is a reasonable probability that this testimony would have changed the outcome of the proceeding.

Importantly, contrary to this Court's prior rulings, Ms. Wilson-Foley's statements to the Government that she believed getting Mr. Rowland a job at Apple would benefit her campaign

are not inculpatory. First, Ms. Wilson-Foley did not communicate her belief to Mr. Rowland, so it could not have affected his state of mind. Second, under the campaign finance laws, it is not illegal to provide someone with a real job with the hope that they would then volunteer for a campaign. Volunteer services are not a "contribution" to a campaign for purposes of campaign finance law. *See* 2 U.S.C. § 431(8)(B)(i); 11 C.F.R. § 100.74. In other words, for purposes of campaign finance law, volunteer services are not a thing "of value made by any person for the purpose of influencing any election for Federal office." *See* 11 C.F.R. § 100.52 (defining "contribution"). Accordingly, it is legal to hire an individual to perform real work outside of the campaign in part so the individual would be more likely to become a campaign volunteer. *See* 11 C.F.R. § 100.54 (stating that no contribution results if a salaried employee is permitted to work for a campaign as a volunteer during normal work hours, so long as the time is made up by the employee); 11 C.F.R. § 100.74. Creating an environment that would make it more likely that an individual would volunteer for a campaign is not a campaign contribution or a crime.

In sum, the Government's violation of its *Brady* obligations presents a substantial issue for appeal.

**C.     Errors in the Court's Jury Instructions Present a Substantial Question for Appeal**

Errors in the Court's jury instructions also present a substantial question for appeal. "A criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence.'" *United States v. Allen*, 127 F.3d 260, 265 (2d Cir. 1997) (internal quotations omitted); *see United States v. Goldson* 954 F.2d 51, 56 (2d Cir. 1992) ("The fact that Goldson's requested jury instruction was inconsistent with his testimony was not a correct reason for the court to have refused to give the instruction."). To successfully challenge a jury instruction, a defendant must show that his requested charge "accurately represented the law in

every respect and that, viewing as a whole the charge actually given, he was prejudiced." *United States v. Bah*, 574 F.3d 106, 113 (2d Cir. 2009).

In this case, Mr. Rowland asked that the jury be instructed on the defense theory that, regardless of what Foley personally thought (but did not tell anyone (Tr. 1052)), Mr. Rowland believed he was being paid for work at Apple. For example, with respect to Counts Four through Seven, Mr. Rowland asked that the jury be instructed as follows: "Mr. Rowland contends that he understood that any payments he received were for work performed for Apple Healthcare, Inc." (Defendant's Supplemental Proposed Final Jury Instruction [Dkt. 133] at 2). This defense was supported by, among other things, (1) the fact that Foley never told Mr. Rowland or anyone else that Mr. Rowland was being paid to work for the campaign (Tr. 814, 1052), (2) the evidence that Mr. Rowland went to work at Apple following a meeting with Mr. Foley where they discussed Mr. Rowland's job responsibilities at Apple (Tr. 812-13, 1051), and (3) evidence of Mr. Rowland's work at Apple. Moreover, as discussed in Section III.D below, the Court incorrectly excluded evidence of Mr. Rowland's work at Apple and Mr. Rowland's belief that he was being paid to work at Apple.

Even though the record supported Mr. Rowland's proposed instruction, the Court declined to deliver it on the ground that "[i]t's a proxy for his testimony, which the jury didn't hear." (Transcript of Charge Conference dated September 17, 2014 ("Charge Conf. Tr.") at 13). Then, over Mr. Rowland's objection, the Court changed the theory of the defense by removing the phrase "he understood that" from Mr. Rowland's proposed instruction. (*Id.* at 15, 18). As a result, the Court instructed the jury that Mr. Rowland "contends that any payments he received were for work at Apple Health Care, Inc." (Tr. 2580-81). This did not properly describe Mr. Rowland's defense, which allowed for the possibility that Foley (but not Mr. Rowland) believed

that Mr. Rowland was being paid for campaign work. (*See, e.g.*, Tr. 70 ("If there was a conspiracy here, it was a conspiracy of one."); Tr. 2707). Because the Court did not accurately instruct the jury on the theory of the defense, a new trial is warranted.

Further, the Court erroneously declined to instruct the jury that

> [u]nder FEC rules: (1) a candidate can contribute to the candidate's own campaign in unlimited amounts; (2) a candidate can do so by donating to the campaign or by purchasing goods or services directly with the candidate's own money; and (3) in either case, the candidate's contribution to the campaign must be reported to the FEC.

(*See* Defendant's Supplemental Proposed Final Jury Instruction [Dkt. 133] at 1; Charge Conf. Tr. 30-32). This instruction is an accurate statement of the law. *See* 11 C.F.R. §§ 100.52(d)(1), 100.111(e)(1), 104.13, 110.10. Moreover, this instruction was necessary (1) to establish that the Government's witnesses were mistaken when they expressed their belief that it was "illegal" or "didn't smell right" for anyone other than a campaign to pay a consultant and (2) to allow the jury to conclude that the terms of the Greenberg draft contract, which provided that Mr. Greenberg would personally pay Mr. Rowland, (a) were consistent with the campaign finance laws and (b) would have created a disclosure obligation on Greenberg's part. Because the Court declined to instruct the jury on relevant provisions of campaign finance law, a new trial is warranted.

These errors in the jury instructions present a substantial question for appeal.

### D.     Erroneous Evidentiary Rulings Present Substantial Questions for Appeal

Numerous evidentiary rulings also present substantial questions for appeal.

First, the Court erroneously excluded on hearsay grounds emails and non-hearsay evidence offered to show that Mr. Rowland (1) believed he was being paid to work for Apple and (2) was in fact working for Apple. An out-of-court statement offered, not for its truth, but for

another purpose (such as the fact that the statement was made) is not hearsay. *See, e.g.*, *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 89-90 (2d Cir. 2014). Because Rowland's Apple-related emails, statements and other actions were not being offered for their truth, but only for the fact that Mr. Rowland sent them in the course of his work for Apple, the Court erred in excluding them from evidence.

For example, the Court erroneously excluded on hearsay grounds Defense Exhibit 139, which comprised an email exchange between Mr. Rowland and Apple Chief Operating Officer Brian Bedard about unionization efforts. (Tr. 2196-2201). Mr. Rowland offered this email exchange, not for its truth, but to establish that Mr. Rowland was, in fact, working at Apple and taking the initiative to communicate with Mr. Bedard about Apple-related issues. Similarly, the Court erroneously excluded (1) text messages that Mr. Rowland sent to Mr. Bedard regarding union issues at Apple (Tr. 2279-83) and (2) testimony about Mr. Rowland's advice to Apple when Mr. Foley was soliciting campaign contributions from Apple employees (Tr. 2258-59). This evidence would have established that Mr. Rowland was doing actual work at Apple and placing the interests of Apple above those of the campaign. The improper exclusion of this non-hearsay evidence prejudiced Mr. Rowland's defense.

Second, the Court erred in permitting Foley to opine on what Mr. Rowland meant in his email messages. Over objection, Foley was permitted to opine about what Mr. Rowland meant when he wrote such common phrases as "I get it" (Tr. 809), "this arrangement" (Tr. 842), "our agreement" (*id.*), and "cover" (Tr. 867). "[W]here there is a logical, coherent conversation with a plain meaning, the government must establish some foundation to support [the witness's] testimony that the conversation was not what it appeared to be." *United States v. Garcia*, 291 F.3d 127, 141 (2d Cir. 2002). There was no such foundation in this case. Foley testified that (1)

he seldom met with Mr. Rowland (Tr. 903) and (2) he never told Mr. Rowland or anyone else that Mr. Rowland's job at Apple was a sham or a subterfuge (Tr. 814, 1052). Accordingly, in this case, just as in *Garcia*, there was no foundation explaining the basis for Foley's opinion of what Mr. Rowland meant. *See* 291 F.3d at 141. Moreover, because Mr. Rowland's emails were readily understandable, Foley's opinion testimony should have been excluded on the ground that it was not helpful to the jury. *See id.* at 142.

Third, the Court improperly permitted Marc Katz to opine that Mr. Rowland's alleged proposal to be paid by the Simon Foundation "didn't smell right." (Tr. 466-67). Katz's opinion about what "smelled right" was not relevant to any issue in this case. Moreover, the Court compounded this error by (1) not instructing the jury on the relevant provisions of campaign finance law, which allow candidates to make unlimited donations to their own campaigns, and (2) preventing Katz from being cross-examined about the fact that, during the campaign, the Simon Foundation employed the head of a Tea Party organization who, in turn, volunteered for the campaign. (Tr. 570, 585). This cross-examination would have called into question Katz's testimony about what, in his view, "smelled right." The Court similarly erred in initially allowing Sam Fischer to testify over objection that Mr. Rowland's proposal was "illegal." (Tr. 394). Although the Court later provided a curative instruction (Tr. 399-400), the damage had been done. Moreover, Fischer's view about what was legal was not relevant to any issue in the case.

Fourth, the Court erroneously admitted hearsay evidence of Greenberg's statements to Fischer and Katz that Mr. Rowland had proposed to be paid by the Simon Foundation. (Tr. 261-62, 391-92, 464-65). With respect to Katz's testimony, the Court instructed the jury that the testimony was being received "for what Mr. Katz was told by Mr. Greenberg, not whether what he was told was, in fact, truthful or accurate." (Tr. 465). But Katz's state of mind was not

relevant to any issue in this case. Moreover, in summation, the Government used Katz's testimony for the truth of the matter asserted, that is, that Mr. Rowland had made the proposal to Greenberg. (Tr. 2607). Because Greenberg's out-of-court statements were improperly admitted and then used by the Government for their truth, Mr. Rowland suffered prejudice. *See United States v. Gomez*, 617 F.3d 88, 91 (2d Cir. 2010) (rejecting as "not credible" Government's argument that testimony was admitted for a valid, non-hearsay purpose when Government "argued the very hearsay use of the evidence which it now contends it was not offering" during summations).

Fifth, the Court incorrectly barred cross-examination of Foley on his prior use of middlemen to pay campaign consultants. (Tr. 768-69). The Court ruled that the evidence was not relevant to Mr. Rowland's state of mind. (*Id.*). It was, however, relevant to *Foley's* state of mind. Mr. Rowland's theory at trial was that Foley had falsely implicated himself in a scheme involving Mr. Rowland so he could escape liability for the many felonies he admittedly committed with others. Mr. Rowland should have been permitted to impeach Foley's trial testimony by questioning him about (1) the fact that, in the past, he had paid campaign consultants through middlemen in a way that concealed their identity, and (2) he did not believe that tactic was necessary with respect to Mr. Rowland. Mr. Rowland would have then argued to the jury that Foley did not believe the middleman tactic was necessary because he believed the arrangement with Mr. Rowland was legal.

Sixth, the Court incorrectly permitted the Government to redact the name of Mr. Rowland's attorney, Bart Halloran, from an October 18, 2009 email Mr. Rowland sent to Mr. Halloran transmitting the draft Greenberg contract. (GX 500A, Tr. 2092, 2097). As a result of this redaction, the jury was left with the misimpression that Mr. Rowland had provided the draft

contract to Mr. Halloran shortly before Mr. Halloran transmitted it to the Government in April 2013. (Tr. 2097). The redaction allowed the Government to suggest that Mr. Rowland had provided the contract to Mr. Halloran as part of a 2013 scheme to obstruct the Government's investigation, when in fact Mr. Rowland had sent the contract to Mr. Halloran at the time it was drafted. (Tr. 2621-22). Moreover, the fact that Mr. Rowland had sent the draft to Mr. Halloran for review was relevant to show that Mr. Rowland did not believe it was a "falsified" or unenforceable document.

These erroneous evidentiary rulings prejudiced Mr. Rowland's defense, and they therefore present substantial questions on appeal likely to result in a new trial.

**IV.    Conclusion**

Mr. Rowland does not pose a risk of flight or danger to the community, and his appeal will present substantial questions likely to result in reversal or a new trial. Accordingly, Mr. Rowland's motion for continued release pending appeal should be granted.

Respectfully submitted,


/s/ Andrew L Fish
Andrew L. Fish [phv07196]
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Phone: (212) 415-8541
Fax: (646) 839-2843
E-mail: afish@lockelord.com

Peter G. Billings [ct28629]
Sean P. Barrett [ct28999]
BILLINGS & BARRETT, LLC
941 Grand Avenue, 2nd Floor
New Haven, CT 06511
Phone: (203) 562-0900
Fax: (203) 562-0902
E-mail: peter@billingsandbarrett.com

*Counsel for Defendant John G. Rowland*

Dated: April 17, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2015, a copy of foregoing Defendant John G. Rowland's Memorandum of Law in Support of Motion for Continued Release Pending Appeal was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew L. Fish
Andrew L. Fish [phv07196]
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Phone: (212) 415-8541
Fax: (646) 839-2843
E-mail: afish@lockelord.com

*Counsel for Defendant John G. Rowland*