UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :

     :    Case No. 3:14cr79 (JBA)

     :

     v.      :

     :

     :

JOHN ROWLAND      :    May 8, 2015

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR CONTINUED RELEASE PENDING APPEAL**

The Government respectfully submits this opposition to the Defendant's motion for bail pending appeal. The Defendant's motion fails to establish that the appeal raises substantial issues of law or fact that will likely result in a new trial. Accordingly, the Defendant's motion should be denied.

I.     The Legal Standard

Under 18 U.S.C. § 3143(b), a district court must order a convicted defendant detained pending appeal unless it determines that (1) there is clear and convincing evidence "that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) "the appeal is not for purpose of delay"; (3) "the appeal raises a substantial question of law or fact"; and (4) if the appeal is decided in the defendant's favor, it is "likely to result in reversal or an order for a new trial." *See United States v. Randell*, 761 F.2d 122, 124-25 (2d Cir. 1985). A "substantial question" is one that is "close," "fairly debatable," or "very well could be decided the other way." *Id*. at 125 (quotation marks omitted).

The defendant bears the burden of establishing all of the criteria for release pending appeal.  *Id.*; *see also United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (recognizing statutory "presumption in favor of detention" following conviction).  Moreover, a defendant must establish the infirmity of every count of his conviction.  *See Randell*, 761 F.2d at 125-26 (declining to consider whether fraud charges raised substantial questions because tax charges were effectively unchallenged); *see also Morison v. United States*, 486 U.S. 1306, 1306-07 (1988) (Rehnquist, J., in chambers) ("Because Morison has not shown that his appeal is 'likely to result in reversal' with respect to all the counts for which imprisonment was imposed, his application is denied." (citation omitted)).

II.     Defendant Rowland Violated 18 U.S.C. §1519

a. The Defendant Misstates the Government's Theory of the Offense

In his memorandum, the Defendant claims that the Government's theory of the case at trial was that the draft contract with Greenberg "was 'falsified' because it omitted an express reference to campaign services and that reference would have been material to the Federal Election Commission or the Department of Justice." Dkt. No. 249 at 6.  This is inaccurate. The Government has alleged, and the evidence at trial showed, that Defendant Rowland offered to work for Mark Greenberg's congressional campaign, but that he wanted the payments to be routed through an external, non-campaign source, namely the Simon Foundation. Mr. Rowland drafted the contract with the intent to deceive – that is, he drafted the contract in order to give the appearance that Rowland was not, in fact, working for

the campaign, but that he was working for Greenberg in another capacity.  As Black's Law Dictionary states, "falsify" means "to make deceptive." Black's Law Dictionary 720 (10th ed.2014) (defining "falsify" as "[t]o make deceptive; to counterfeit, forge, or misrepresent; esp., to tamper with (a document, record, etc.)"). Mr. Rowland's goal, as evidence at trial showed, was to make his proposal to Greenberg appear as if Rowland would be playing a non-political role. However, in truth, Rowland was proposing for Greenberg to hire him for a campaign role.  Trial Tr. 96:13-97:8 (Mark Greenberg: "[Mr. Rowland] offered his services to be an advisor, be a consultant for the campaign in telephone conversations and e-mails over that period . . .  he indicated that he didn't want to be paid by the campaign, that he wanted to be paid by other entities, perhaps the Simon Foundation, perhaps other real estate entities.")  He designed the contract decidedly to obscure that fact and to obstruct any Government investigation into his activities.   Indeed, Mr. Rowland used the contract to do just that.  He sent the contract to the Government, through his attorney, in an attempt to make the Government believe that he had been seeking a role consulting for Mr. Greenberg's businesses and the Simon Foundation. This was false, obstructive and exactly what Mr. Rowland designed the contract to do.

Similarly, Count Three, the creation of the contract with the Law Offices of Christian Shelton, involves a falsified document.  The Defendant would like the Court to believe that the Government alleged that this contract involved the "omission" of a fact.  That is incorrect. The Government's theory of the case was that

the entire contract between John Rowland and Christian Shelton was an outright fiction, or falsification.  It was not real.  There was no meeting of the minds between Rowland and Shelton, no negotiation between Rowland and Shelton, and no consulting that Rowland did for Shelton. Mr. Rowland and Mr. Foley created the falsified contract to obscure the fact that *they* had a meeting of the minds – that they had an understanding that Foley would pay Rowland for his work on Lisa Wilson-Foley's campaign.

### b. The Defendant Misapplies *Blankenship*

As he did in his Motion to Dismiss Counts One and Three, the Defendant rests much of his argument on *United States v. Blankenship*, 382 F.3d 1110 (11th Cir. 2004). In his motion, the Defendant claims that the contracts in Counts One and Three could not be "false" because, according to *Blankenship*, a contract can only be considered false if (1) it represents a forgery or alteration or (2) contains misrepresentations of material fact.   In *Blankenship*, the 11th Circuit examined whether an ostensibly valid contract was "false" because no services were performed under the contract.  The 11th Circuit determined that the contract was essentially "breached," but it was not false.

This Court has already rejected arguments based on *Blankenship*. As the Court noted, the contract at issue in this case was not an "otherwise valid contract but rather … a contract that was entirely 'fictitious' in order to obstruct federal campaign finance laws." Dkt. No. 61 at 10.  The testimony at trial established that Rowland created the Greenberg contract to establish evidence of a false alibi – to

make it appear that one set of historical facts was true when the reality was different.  Mr. Rowland proposed working for Greenberg's campaign, but being paid through another entity.  He wrote the contract in a way that made it appear as if his proposal was to have a purely non-political, business relationship with Greenberg.  This was not the case.  Mr. Rowland was proposing campaign work and he drafted the contract in such a way as to obscure that fact. As the Court noted, the contract is "thus alleged to contain 'factual misrepresentations' and can be considered 'false' under the second category outlined in *Blankenship*." *Id.*  The same holds true for the Shelton contract.

### c.  The Defense Misapplies *Yates*

The Defendant relies on *United States v. Yates,* 135 S. Ct. 1074 (2015) to argue that "Section 1519 must be construed narrowly in light of the statute's true purpose." Dkt. No. 249 at 2.  The Defendant, however, overreads *Yates*.  At no point in the *Yates* plurality opinion or in the concurrence does the Court ever say that the statute must be "narrowly construed."  At no point does the Supreme Court limit § 1519's scope to prohibit only corporate document-shredding, as the Defendant also seems to imply.  *See id.* at 2 and 6.  Rather, from beginning to end, *Yates* deals with the definition of the term "tangible object" in the context of the statute.  *See Yates*, 135 S. Ct. at 1081, 1089.

The case against Mr. Rowland had nothing to do with the "tangible object" prong of the statute.  Instead, Mr. Rowland's conviction arose from another provision of § 1519 – namely its prohibition against falsifying a document.  There is

no question that Government Exhibits 1 and 2, the basis for Counts One and Three, were both documents. Just as the Supreme Court required of "tangible objects," the document here – the contracts – recorded and preserved information.  Government Exhibit 1 contained information that made it appear as if Rowland were a consultant for the Law Offices of Christian Shelton. Government Exhibit 2 contained written information that made it appear as if Mr. Rowland was proposing to work for Mr. Greenberg's private entities.  None of this was true.  The contracts were products schemes to deceive the FEC and the Department of Justice about what Mr. Rowland's actions were truly about.

### d.  There Was No Prejudicial Spillover

The Defendant argues that, were the Second Circuit to find that Count One was improperly charged and should be dismissed, prejudicial spillover would occur with regard to Counts Two through Seven.  The Defendant is incorrect.  The information regarding Rowland's proposal to Greenberg would still have been admissible pursuant to Fed. R. Evid. 404(b).  Under Rule 404(b), other acts evidence is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  In fact, the Government gave notice to the Defendant of the fact that the conduct underlying Count One was admissible under 404(b) and arguable as a common scheme or plan.

Here, the Defendant was engaged in two schemes that were largely identical – schemes to route payments for congressional campaign work in Connecticut's Fifth District through outside third parties, hidden through the use of a false and

deceptive contract designed to impede the investigation into the Defendant's activities. The Defendant argues that it was Brian Foley's idea to pay Rowland through an outside third party for his campaign work. *See* Dkt. No. 249 at 9-10.[1] However, Mr. Rowland was an active participant in that process. In Government Exhibit 158, Rowland suggested to Foley that they use "JGR Associates" as the name on the contract to provide them with "more cover." Similarly, in GX 162, Mr. Rowland proposed edits to the contract between him and the Law Offices of Christian Shelton. Along the side of the "Duties" section of the contract, Rowland wrote, "instead more generic??" He included an arrow pointing to the bottom of the page, where Rowland suggested the same language he used in the draft Greenberg contract.[2] *Cf.* GX 162 handwritten section ("(a) perform such consulting services for the Company regarding marketing, strategic advice, business consulting or such services that may be required. (b) reasonably available to provide services during term of Agreement and devote adequate portion of consultant …{unintelligible}"); GX 2 "Consulting Services" ("Consultant agrees to perform such consulting services (the "Services") for Mark Greenberg, as may be reasonably requested by him with respect to the marketing of his Company's sales and service, strategic advice, public relations, business consulting, or such other services as may be required. … Consultant agrees that he shall be reasonably available to provide Services during

---

[1] The defendant incorrectly states "Mr. Foley came up with the idea of hiring Mr. Rowland to work at Apple." The evidence at trial showed the Mr. Foley was looking for Mr. Rowland to work on Lisa Wilson-Foley's congressional campaign, but created the illusion that Mr. Rowland was consulting for Apple as a way to create "cover" for his actions.

[2] The language that Rowland used in GX 2 and suggested in GX 162 could be found in other, ostensibly legitimate contracts, that Mr. Rowland had with other entities.

the term of this Agreement and shall devote an adequate portion of the Consultant's time to ensure satisfactory performance of the Services.")  The plan to execute a false contract with the Law Offices of Christian Shelton may not have originated with Rowland, but he played an active part in the process and shaped the manner in which the contract was written. The scheme was so fundamentally similar, it would clearly have been admissible under Fed. R. Evid. 404(b), whether or not it was the subject of Count One.

Moreover, as the Court is aware, Mr. Greenberg's 2012 disclosure that Mr. Rowland had previously approached him was an integral part of the events that occurred in Lisa Wilson-Foley's campaign and related to the termination of Mr. Rowland's work for the campaign.  Indeed, as alleged in Overt Act "uu" of Count 2, and evidenced in GX 283, in an effort to calm the public outcry over Rowland's contract with Christian Shelton, his role in Lisa Wilson-Foley's campaign, and the then-emerging allegations about his proposal to Greenberg, Chris Healy wrote an email to Rowland asking, "if you have anything to refute Greenberg, I need it to start to fuck this smuck [sic]."  There would be no way for the jury to understand these events without knowing about the allegations regarding Defendant Rowland's proposal to Greenberg in 2009-2010.

Lacking any prejudicial spillover, the Defendant's Motion for Continued Release Pending Appeal falls apart.  For the Defendant to prevail in this motion, he must show likelihood that he will prevail on all counts.  However, even if he were to win on the two § 1519 charges, the rest of Mr. Rowland's conviction would still

stand.  His challenge to the two § 1519 charges, itself lacking in merit, does nothing to increase the likelihood of overturning all of his convictions.  The evidence underlying both charges would be admissible whether or not Counts One and Three were included in the Indictment.

III.    There Was No *Brady* Violation

In his motion, the Defendant argues that "[t]he Government's violation of its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny present substantial question for appeal."  Dkt. No. 249 at 10.  The Defendant's appellate *Brady* claims hinge on an allegation that the Government did not disclose to Mr. Rowland that Ms. Wilson-Foley resisted describing the purported job at Apple as a "sham."  *Id.* at 12.  The Government briefed this *Brady* issue extensively in previous filings, including Dkt. Nos. 210, 215, and 237, and will not re-argue the issue in its entirety here.  This Court has already settled Mr. Rowland's *Brady* allegations.

"To establish a *Brady* violation, a defendant must show (1) that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (internal quotation marks omitted).  In this instance, the Second Circuit will not need to weigh whether any suppressed evidence was even material, as this Court found as a factual matter that no information was suppressed. The Court addressed this issue in Dkt. Nos. 231 and

238 and "concluded that the purportedly undisclosed statements were not 'suppressed' because the underlying information was otherwise made available to Defendant." Dkt. No. 238 at 2. The Court recounted in its rulings the extensive discovery that the Government provided to Mr. Rowland, which included letters from Brian Foley's attorney, a voicemail from Brian Foley's attorney, grand jury transcripts, Memoranda of Interview ("MOIs") and the notes underlying the MOIs. The disclosures that the Government made to the Defendant were well above standard, to the point that Mr. Rowland's counsel commented that the Government prosecutors were from "the only U.S. Attorney's Office in the history of the world" to disclose all notes underlying MOIs to him. Trial Tr. at 2455. This robust discovery protected the Defendant's rights in every regard, nullifying any claims about the insufficiency of the Government's disclosures.

However, even supposing suppression, this Court had little difficulty in dispatching the Defendant's claims of prejudice. "Defendant has not demonstrated prejudice as that phrase is used in the *Brady* context, i.e., that in light of the trial record as a whole, there is a reasonable probability that the undisclosed evidence would have altered the result or undermined confidence in the fairness of the trial." Dkt. No. 238 at 6. The Court has examined extensively, both during trial and the post-trial briefing, the breadth of the Government's evidence against the Defendant. *See* Dkt. Nos. 231 at 11-14 and 238 at 6-8. "Given the strength of the other trial evidence against Defendant and that he has not shown that any material

exculpatory evidence was suppressed, Defendant has not met his burden of showing that there are grounds for a new trial." Dkt. No. 238 at 8.

The Court has thoroughly reviewed the Government's discovery and disclosures and found no suppression. Having exhaustively reviewed these issues, the Court can have confidence that the Defendant has shown no substantial questions for appeal regarding the *Brady* allegation. The allegations are, and have always been, baseless. Morever, the *Brady* issues raised by the Defendant regarding Lisa Wilson-Foley's supposed statements have no bearing whatsoever on the validity of Mr. Rowland's conviction under Count One. Without also raising a substantial likelihood that he might prevail in appealing Count One, the Defendant's Motion for Continued Release Pending Appeal fails.

IV.   The Court's Jury Instructions

The Defendant argues that the Court's jury instructions were defective in two ways. First, the defendant argues that the Court's instruction regarding his theory of the case was inadequate because it did not accurately present his theory. Second, he argues that the Court improperly rejected a legal instruction concerning the legality of certain in-kind contributions. According to the defendant, these purported errors are likely to result in vacatur of all his convictions. The Defendant is incorrect.

a.   Governing Law

The trial court "enjoys broad discretion in crafting its instructions which is only 'circumscribed by the requirement that the charge be fair to both sides.'"

*United States v. Russo*, 74 F.3d 1383, 1393 (2d Cir. 1996) (quoting *United States v. GAF Corp.*, 928 F.2d 1253, 1263 (2d Cir. 1991)).  Although a defendant is "entitled to have the court charge the jury on any defense theory for which a foundation existed in the record, he [is] not necessarily entitled to have that instruction communicated to the jury in the language of his choice." *United States v. Salerno*, 66 F.3d 544, 549 (2d Cir. 1995) (citing *United States v. Johnson*, 994 F.2d 980, 988 (2d Cir. 1993)).

" 'Rather, a charge is sufficient if it adequately appraises the jury of the crime and the defense.' " *Id.* (quoting *Johnson*, 994 F.2d at 988).  The Second Circuit reviews " 'a claim of error in jury instructions de novo, reversing only where, viewing the charge as a whole, there was a prejudicial error.' " *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (quoting *United States v. Aina–Marshall*, 336 F.3d 167, 170 (2d Cir. 2003)).

> b.  The Defense Theory

At the defendant's request, the Court instructed the jury concerning his theory of the case.  The Court's instruction was six paragraphs long, and addressed Mr. Rowland's position with respect to each count.    The Court instructed the jury as follows:

> Mr. Rowland denies the Government's allegations and contends that he acted in good faith at all times and not with the intent alleged in each count of the Indictment.
>
> With respect to Count One, Mr. Rowland contends that he drafted the Greenberg contract, that it was truthful and not intended to obstruct the FEC or the Department of Justice and: (1) Mr. Greenberg could spend his personal money on his own campaign in unlimited amounts; (2) the draft contract was with Mr. Greenberg personally and could

12

include political consulting services; and (3) Mr. Greenberg could have paid Mr. Rowland and reported it to the FEC.

With respect to Count Two, Mr. Rowland contends that he never entered into an agreement to defraud the FEC or Department of Justice, to obstruct the FEC or the Department of Justice by preparing a false contract, to fail to report contributions to the Wilson-Foley campaign, or to cause excessive donations to the Wilson-Foley campaign to be made by Brian Foley.  Mr. Rowland contends that the only agreement he entered into he did in good faith and it was a lawful contract to perform consulting services for Apple Healthcare, Inc.
With respect to Count Three, Mr. Rowland contends that the contract entered into by Mr. Rowland with The Law Offices of Christian B. Shelton, Esq. LLC was truthful and not intended to obstruct the FEC or the Department of Justice and was a contract for work at Apple Healthcare, Inc.

With respect to Counts Four and Five, Mr. Rowland contends that he did not cause, or aid and abet, any failure by the Wilson-Foley campaign to report campaign contributions by Brian Foley to the Wilson-Foley campaign and had no knowledge or involvement of the same.  Mr. Rowland contends that any payments he received were for work performed for Apple Healthcare, Inc.  Mr. Rowland contends that any work performed by him for the Wilson-Foley campaign was in a volunteer capacity.

With respect to Counts Six and Seven, Mr. Rowland contends that he did not cause, or aid and abet, excessive contributions by Brian Foley to the Wilson-Foley campaign.  Mr. Rowland contends that that any payments he received were for work performed for Apple Healthcare, Inc.  Mr. Rowland contends that any work performed by him for the Wilson-Foley campaign was in a volunteer capacity.

Final Jury Instructions, Part III.G.

Mr. Rowland attacks this lengthy, detailed instruction by arguing that, with respect to Counts Four through Seven, the Court should have described Mr. Rowland's "understanding" as to why he was being paid.  In particular, Mr. Rowland claims that the Court should have instructed the jury that "Mr. Rowland

contends that he *understood* that any payments he received were for work performed for Apple Healthcare, Inc." Def.'s Memo. at 14 (emphasis added).

The Court's instruction on the defendant's theory of the case was complete, accurate and adequately apprised the jury of Mr. Rowland's position.  First, it is almost frivolous to suggest that the Court's instruction did not adequately present Mr. Rowland's position as to his state of mind and what he "understood."  The instruction, taken as a whole, repeatedly references Mr. Rowland's position that he lacked criminal intent, acted in good faith and behaved truthfully.  For example, the Court's Instruction on Count Two, which was the overarching conspiracy count, advised the jury that "Mr. Rowland contends that the *only agreement* he entered into he did *in good faith* and it was a lawful contract to perform consulting services for Apple Healthcare, Inc."  Final Jury Instructions, Part III.G.  This instruction clearly communicated Mr. Rowland's view that he did not intend to enter any agreement other than the agreement to perform services for Apple.  That is, the Court instructed the jury on the precise theory that the defendant now suggests it omitted, i.e., Mr. Rowland's good faith understanding of the purpose of the payments.  The Court's instructions on Counts Four through Seven do not expressly repeat the Court's earlier characterization of Mr. Rowland's understanding, but they do clearly communicate Mr. Rowland's theory that the payments from Apple were for work performed at Apple and unrelated to his volunteer work for the campaign.  *See United States v. Wolfson,* 160 Fed. Appx. 95, 97 (2d Cir. 2008) (district court's instruction was "acceptable because it captured the essence of [the

defendant's] theory of the case.") (citing *United States v. Boonphakdee*, 40 F.3d 538, 543 (2d Cir. 1994)).  *See also United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (a defendant is "not necessarily entitled to have [a [defense theory] instruction communicated to the jury in the language of his choice.") (quoting *United States v. Brand*, 467 F.3d 179, 205 (2d Cir. 2006)).

Moreover, taken as a whole, the Court's instructions clearly addressed the concern raised here, i.e., that the jury may have failed to understand that while Mr. Foley may have acted with criminal intent in paying Mr. Rowland, Mr. Rowland may not have had criminal intent when he received those payments.  The Court clearly instructed the jury that its obligation was to assess Mr. Rowland's intent, and that it was *his* knowledge and state of mind that were at issue in the trial.  *See* Final Jury Instructions, Part I.E (Other Persons Not on Trial), Part III.B.4 (Membership in the Conspiracy), Part III.C.5 (Element Four – Knowingly and Willfully), Part III.D.4. (Element Three – Knowingly and Willfully) ("the Government must prove that Mr. Rowland accepted payments knowing that they were for work on the Wilson-Foley campaign").  *See United States v. Thompson*, 263 Fed. Appx. 158, 160 (2d Cir. 2008) ("Our review of jury charges is holistic—we do not examine words or phrases in isolation, but rather in the context of the entire charge.") (citing *United States v. Carr*, 880 F.2d 1550, 1555 (2d Cir. 1989)). Ultimately, the Court's instructions clearly tracked the defense's theory of the case, provided a comprehensive overview of that theory on each count and repeatedly referred to Mr. Rowland's contention that he lacked criminal intent and acted in

good faith.  There was no error in this regard, much less any error that is likely to result in vacatur of the convictions on Counts Four through Seven.[3]

       c.  The Proposed Jury Instructions Regarding Candidate Contributions

The Defendant argues that the Court's refusal to give the following instruction raises a substantial question of law that is likely to result in reversal of the defendant's conviction on Count One:

> [u]nder FEC rules: (1) a candidate can contribute to the candidate's own campaign in unlimited amounts; (2) a candidate can do so by donating to the campaign or by purchasing goods or services directly with the candidate's own money; and (3) in either case, the candidate's contribution to the campaign must be reported to the FEC.

First, the defendant claims that the instruction was "necessary" in order to correct testimony from Government witnesses.  The defendant does not cite the record in describing this testimony, but the Government assumes he is referring to the testimony of Mark Katz and Sam Fischer.  Mark Katz testified that he understood Mr. Rowland proposed to work for the Greenberg Campaign but be paid by the Simon Foundation.  Trial Tr. 465.  Mr. Katz testified that *this proposal* "didn't smell right." Trial Tr. 467.  This testimony was clearly not a statement of law, but, rather, Mr. Katz's description of his own reaction to Mr. Rowland's proposal.  Moreover, even if Mr. Katz's testimony suggested his view that Mr. Rowland's proposal was illegal, his view was correct.  He understood that Mr. Rowland was proposing to be paid directly by the Simon Foundation in order to

---

[3] The Government notes that Mr. Rowland does not challenge the Court's defense theory instruction with respect to Counts One through Three.

provide cover for his campaign services.   Trial Tr. 557.   Payments from the corporate entity of the Simon Foundation would not have been reported as personal contributions by the candidate.   Therefore, the Defendant's proposed instruction does not correspond with the arrangement described by Mr. Katz, i.e., that the entity of the Simon Foundation – not the candidate – would be paying Mr. Rowland for campaign services.

The Defendant also alludes to testimony that the proposal presented by Mr. Rowland was "illegal."   The Government assumes he is referring to Mr. Fischer's testimony.   Mr. Fischer was asked to describe the advice he gave to Mr. Greenberg regarding Mr. Rowland's proposal. *See* Trial Tr. 394.   Mr. Fischer understood that the proposal was for Mr. Rowland to be paid through the Simon Foundation for campaign services.   Trial Tr. 391-92, 447.   Again, the proposal described by Mr. Fischer is not the arrangement described by the jury instruction proposed by the defense.   That aside, however, even if Mr. Fischer's testimony could be construed as a statement that it would have been illegal for Mr. Greenberg to pay Mr. Rowland directly for campaign services, the Court struck this testimony and provided a curative instruction. *See* Trial Tr. 399-400.   In short, nothing about this testimony constituted an inaccurate statement of the law that called for the defense's proposed instruction.   To the contrary, the arrangement described by the proposed instruction had no basis in the evidence that was actually presented.   Mr. Greenberg testified that if he had hired Mr. Rowland as a consultant, the campaign would have paid him directly. *See* Trial Tr. 109.   Likewise, Mr. Fischer testified

that any money Mr. Greenberg contributed to the campaign would have been in the form of cash contributions to the campaign, not direct payments to third parties that would have been reported as an in-kind contribution from him. *See* Trial Tr. 443.

Second, the Defendant claims that the Court's refusal to instruct the jury as requested prevented the jury from concluding that campaign payments under the Greenberg contract would have been lawful and subject to FEC reporting requirements. In fact, the jury was more than capable of drawing that conclusion. Mr. Rowland argued this precise point to the jury, *see* Trial Tr. 2717, and the concept was clearly included as part of the Court's instruction on the defendant's theory of the case. *See* Final Jury Instructions, Part III.G. The defendant now suggests that he was also entitled to a substantive legal instruction declaring that candidate contributions are unlimited and subject to FEC reporting requirements. The Court properly concluded that such an instruction should not be included as part of the defendant's theory of the case because there was no evidence that Mr. Rowland was aware of that particular provision. *See* Transcript of Charge Conference, 32.

V.     The Court's Evidentiary Rulings

The Defendant challenges several of the Court's evidentiary rulings, but provides very little analysis as to why any of the rulings were wrong or likely to result in reversal.

a. Exclusion of Certain Evidence of Mr. Rowland's Communications with Apple Officials

Mr. Rowland claims that the Court erred in excluding certain communications between Mr. Rowland and Mr. Bedard: one email communication,[4] one text message communication and one oral communication.  In his brevity, the Defendant fails to describe fully the circumstances surrounding each offer.  First, DX 136 was the final email in a string of emails between Mr. Rowland and Mr. Bedard.  The earlier emails in the string included an email from Mr. Rowland to Mr. Bedard in which Mr. Rowland advised Mr. Bedard of an effort to unionize personal care attendants.  *See* DX 133.  Mr. Bedard was then permitted to testify about the substance of DX 136, that is, Mr. Rowland's communication to him concerning the unions' attempt to close low rate nursing homes.  Although DX 136 was not admitted, the substance of the communication, which was the purpose of the exhibit, was admitted.  *See* Trial Tr. 2202-2203.  Therefore, the Defendant suffered no prejudice at all from the fact that the final email in the string was not admitted.

Mr. Rowland also challenges the exclusion of a text message[5] he sent to Mr. Bedard which inquired about the status of union negotiations.  The Court confirmed that the Defendant wished to elicit the substance of Mr. Rowland's text message.  The Court suggested that Mr. Bedard would be able to testify about the substance

---

[4] The Defendant mistakenly refers to the email as DX 139.  The Government believes he intends to refer to DX 136.
[5] The Defendant describes them as text messages, but the Defendant offered only one text message exchange – Mr. Rowland's text to Mr. Bedard and Mr. Bedard's response.  *See* Trial Tr. 2279.

of the text message, namely, that Mr. Rowland sent him a text message concerning Apple's union negotiations.  This was the only the purpose of the offer, and that purpose was served when Mr. Bedard testified that he had a text message conversation with Mr. Rowland on April 26, 2012 concerning union negotiations. *See* Trial Tr. 2285.  There was no error here, and certainly no error that is likely to result in vacatur.

Finally, Mr. Rowland challenges the Court's exclusion of his specific response to Mr. Bedard when Mr. Bedard expressed concern about Apple employees being asked to contribute to the Wilson-Foley campaign.  Mr. Rowland elicited that (1) Mr. Bedard expressed his concern to Mr. Rowland, (2) Mr. Rowland reacted and responded to Mr. Bedard's concern and (3) based on that concern, Mr. Bedard concluded that Mr. Rowland shared his concern and would lobby Mr. Foley to stop asking employees to contribute.  *See* Trial Tr. 2258-2260.  In other words, Mr. Rowland presented evidence that he and Mr. Bedard discussed the negative impact of campaign fundraising on Apple.  This was the purpose of the offer.  There was no error, and certainly not material prejudice.

It should be noted, of course, that the Court did admit multiple emails offered by the defense involving Mr. Rowland and Apple officials.  These emails were admitted to demonstrate that Mr. Rowland was engaged in Apple-related work.  In light of that ample evidence, the few communications that the Court partially excluded were not material to the jury's verdict.

b.  Mr. Foley's Understanding of Mr. Rowland's Statements

The defendant claims that the Court erred when it permitted Mr. Foley to testify concerning his understanding of certain facially ambiguous statements made by Mr. Rowland.  The defendant is incorrect.  After considering extensive briefing on the subject, *see* Dkt. Nos. 104, 110 and 112, the Court deferred ruling on the issue until hearing foundational testimony from Mr. Foley.  At trial, the Government carefully and exhaustively established each criterion for the admission of lay opinion testimony under Fed. R. Evid. 701.  The defense states that "there was *no foundation* explaining the basis for Foley's opinion of what Rowland meant." Def.'s Mem. 17 (emphasis added).  Respectfully, this is simply not accurate.  *See* Trial Tr. 807-809, 865-867.  The Government's foundational inquiry established ample circumstances, including Mr. Foley's September 2011 meetings with Mr. Rowland, from which Mr. Foley could rationally deduce that when Mr. Rowland stated, "I get it," and referred to their "agreement" and "arrangement," he was referring to the mutual understanding that they developed and confirmed over the course of their meetings and emails.  In short, the Court did not abuse its discretion in finding that the Rule 701 requirements were satisfied.  Of course, the defense was permitted to and did aggressively cross-examine Mr. Foley on his perception, and the jury was free to credit or discredit Mr. Foley's opinion.

c.  Testimony of Mark Katz and Sam Fischer

The Defendant claims that the Court erred in admitting certain testimony offered by Mr. Katz and Mr. Fischer.  First, the Defendant claims that Mr. Katz

should not have been permitted to testify that Mr. Rowland's proposal to Mr. Greenberg "didn't smell right." The Court did admit this testimony, *absent objection from the defense.* It seems unlikely that Mr. Rowland's conviction on Count One will be overturned based on the admission of this unchallenged testimony, which can be raised on appeal only pursuant to rigorous plain-error review under Fed. R. Crim. P. 52(b). Moreover, the testimony was entirely proper. The Government presented evidence that Mr. Katz was opposed to Mr. Rowland's proposal, counseled Mr. Greenberg to reject it and met with Mr. Rowland twice to discuss aspects of Mr. Rowland's proposal. Mr. Katz's view of the proposal was not only relevant, but critical context for understanding his dealings with Mr. Greenberg and Mr. Rowland.

The Defendant also argues that he should have been permitted to cross-examine Mr. Katz concerning Mr. Greenberg's relationship with Mr. Wilcox. The apparent purpose of this line of questioning was to test the credibility of Mr. Katz's negative view of Mr. Rowland's proposal. The Court properly precluded that line of questioning under Fed. R. Evid. 403. The Court concluded that Mr. Katz's negative view stemmed from the fact that, under Mr. Rowland's proposal, the Simon Foundation would simply be a cover for campaign work. *See* Trial Tr. 569-71. With respect to Mr. Wilcox, however, the defense had no evidence that anybody understood Mr. Wilcox's role at the Simon Foundation to be pretextual. Therefore, according to the Court, it would be improper to impeach Mr. Katz's opinion of the Rowland proposal by alluding to Mr. Wilcox where it could not be shown that the

Wilcox situation was similar to Mr. Rowland's proposal.[6]  The Court properly determined that this line of questioning would be a sideshow and inadmissible under Fed. R. Evid. 403.  *See* Trial Tr. 567-574, 578-585.  It was not an abuse of discretion to do so, nor is the Court's decision on this collateral issue likely to result in vacatur of Mr. Rowland's conviction on Count One.

The Defendant also claims that the Court improperly permitted Mr. Fischer to testify that he considered Mr. Rowland's proposal to be illegal.  Mr. Fischer was not asked to render a legal opinion, and the Court did not permit him to offer one.  In explaining his basis for opposing Mr. Rowland's proposal, he described the proposal as "illegal."   But, the Court certainly did not permit the testimony.  The Court struck the testimony and immediately gave a curative instruction.[7]

Finally, Mr. Rowland attacks Mr. Fischer's and Mr. Katz's testimony concerning Mr. Greenberg's statements to them in which he described Mr. Rowland's proposal.  The Government offered this testimony in the first instance to show that Mr. Greenberg had made prior consistent statements.  *See* Trial Tr. 336-39.  In his opening statement and his cross-examination of Mr. Greenberg, the Defendant contended that Mr. Greenberg recently fabricated his account of the Rowland proposal for political gain in connection with his 2012 campaign for Congress.   Therefore, in the Government's view, Mr. Greenberg's 2009 statements to Mr. Katz and Mr. Fischer were prior consistent statements offered to rebut a

---

[6] Their relationship was a focal point of the defendant's cross-examination of Mr. Greenberg.

[7] The Defendant asserts, without any explanation or analysis, that the Court's order striking the testimony and admonition to the jury was insufficient.

charge that he had recently fabricated his testimony and acted from an improper motive.  The Court properly admitted Mr. Fischer's testimony as such, *see* Trial Tr. 391-92, and then admitted Mr. Katz's testimony as evidence of "what Mr. Katz was told by Mr. Greenberg, not whether what he was told was, in fact, truthful or accurate."  Trial Tr. 465.  In other words, the Court admitted Mr. Fischer's testimony for the dual purpose of rebutting the credibility challenge to Mr. Greenberg and contextualizing Mr. Fischer's conduct, and admitted Mr. Katz's testimony to contextualize his conduct.[8]  This was entirely proper, and not an abuse of discretion that is likely to result in the jury's verdict being overturned.

### d.  Evidence of Other Acts by Mr. Foley

The defense contends that the Court erred when it precluded cross-examination of Mr. Foley on whether he was aware that a campaign could conceal the identity of a vendor by accessing that vendor's services through a "middleman."  Trial Tr. 766.  The Court properly concluded that Mr. Foley's knowledge of an alternative method for concealing a campaign vendor was irrelevant to whether Mr. Rowland was aware of such an alternative.

---

[8] The Defendant asserts that the Government urged the jury to consider Mr. Katz's account of what Mr. Greenberg told him for an improper purpose.  In two sentences over the course of a 70-minute summation, the Government said, "[Katz] said, Mark Greenberg told me that Mr. Rowland said that he was going to be associated with the Simon Foundation as cover for the work on the campaign. That's what Mark Greenberg said at the time to his best friend and campaign manager."  Trial Tr. 2607.  The Government recited the evidence in the same manner that the Court admitted it – evidence of "what Mr. Katz was told by Mr. Greenberg," and the defense did not object.  It seems clear, however, that even if this remark could be construed as expanding the purpose for which the evidence was admitted, it does not rise to a level requiring a new trial.  This is particularly true where there was no objection, and the Court admitted ample additional evidence from which the jury could properly infer that Mr. Rowland did, in fact, propose that the Simon Foundation serve as a cover for his campaign work and that Mr. Greenberg had communicated that to others.  *See* Trial Tr. 96-98, 101-02,107-09, 126, GX 503, GX 504.

The issue of whether Mr. Foley was aware of alternative ways to pay, as alleged, Mr. Rowland, under the arrangement that the Government claims, is not what this jury is ultimately deciding, which is what was Mr. Rowland's intent and purpose in entering into the arrangement in this way, although it is alleged, at least in part, as a conspiracy.

The fact that there were alternative methods available, if there were, doesn't seem to me relevant to this case. What is relevant is whether the methods used were lawful or unlawful. The fact that Mr. Foley may have been aware of what a consultant told him or told his wife at some earlier point in connection with the lieutenant governor's campaign just can't be relevant to what they intended to do here and whether Mr. Rowland was a part of that intent, that is, whether he knew of the unlawful purpose and willfully joined that conspiracy.

. . . .

That said, the basic issue of whether there are legal and compliant ways for the defendant to have undertaken the activities that he did harks back to my improbable bank robber scenario that we discussed earlier, and that is, just because you have an account at the bank that would cover what you were robbing from the bank does not bear on whether you're going into the bank under the circumstances of note, gun and mask, shows the intent to be robbery versus lawful withdrawal.

So I do not believe that that testimony is relevant. And that is my evolved analysis of that issue for now.

Trial Tr. 768-70.  The Court's analysis was correct and continues to have force.

### e.  Evidence Concerning Attorney Halloran

The Defendant argues that the Court erred when it permitted GX 500A to be presented to the jury with Attorney Halloran's name redacted.  GX 500A was an email from Mr. Rowland to Attorney Halloran in which Mr. Rowland attached the contract that he offered to Mr. Greenberg.  The purpose of GX 500A was to show that Mr. Rowland created the contract in October 2009.  The Court properly

excluded evidence that Attorney Halloran was the recipient of that email because the defense's only purpose for which that information was relevant was to show that Mr. Rowland sent the contract to an attorney.  The Defendant acknowledged that he wanted the jury to infer that Mr. Rowland acted in good faith because he provided the contract to an attorney.  *See* Trial Tr. 2002 ("It suggests that he wanted a lawyer to see it.").  The Court properly concluded that the defense's approach would implicate a reliance on counsel theory that the defense claimed it was not asserting.  Trial. Tr. 2092 ("[Including Halloran's name] seems to me to offer nothing more or less as to what Mr. Halloran was saying to Mr. Glover, other than he sent it to Halloran, which then raises the concept of seeking advice of counsel.")  In fact, Mr. Rowland stated unequivocally that would not waive the attorney-client privilege and that he was not asserting a reliance on counsel defense.  Therefore, the Court properly concluded that he could not ask the jury to conclude that he had a good faith belief that the contract was lawful *because* he sent it to an attorney.[9]

---

[9] The Defendant contends that the Government argued that Mr. Rowland provided the contract to Mr. Halloran in 2013 as part of his scheme to obstruct.  Again, the Defendant misconstrues the Government's summation.  The Government advised the jury, "And when the investigation begins, Mr. Rowland, through his lawyer, sends the United States Attorney's Office this letter." Trial Tr. 2621.  The Government said nothing about when or how Mr. Rowland provided the contract to his lawyer.  The Government simply stated his attorney, acting as Mr. Rowland's agent, had sent the letter and the attached contract to the Government.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Defendant's Motion for Continued Release Pending Appeal.

Respectfully submitted,

MICHAEL J. GUSTAFSON
ATTORNEY FOR THE UNITED STATES,
Acting Under Authority Conferred
by 28 U.S.C. § 515

ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT27924
U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3835
Liam.Brennan3@usdoj.gov

CHRISTOPHER M. MATTEI
ASSISTANT UNITED STATES ATTORNEY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2015 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_____

LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY