# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :        Criminal No. 3:14cr79(JBA)

v.        :

JOHN G. ROWLAND        :        February 4, 2020

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## FOR EARLY TERMINATION OF SUPERVISED RELEASE

The Government respectfully submits this opposition to the defendant's motion for early termination of his term of supervised release (Doc. 259).  Termination of the defendant's supervision just over halfway into its term is not warranted by the defendant's conduct or by concerns over his ability to perform his job.  The Government fully supports the mission of the defendant's employer, Prison Fellowship, to further the rehabilitation of sentenced prisoners and ease their transition back into society.  However, the inconvenience to that organization posed by the defendant's supervised release is not insurmountable and ultimately must yield to the compelling public interest in maintaining adequate supervision over a two-time convicted felon as he reintegrates into society.  The defendant's motion should therefore be denied.

## I.    Background

The defendant's criminal history is well known.  Over a four-year period (between 1998 and 2001), the defendant, while Governor of the State of Connecticut, accepted more than $100,000 in gratuities for providing certain individuals and entities with state business and with preferential treatment in state matters.  *United States v. Rowland*, Case No. 3:04cr367(PCD), Doc. 3.  The defendant resigned from office on July 1, 2004, shortly before a Select Committee of Inquiry of the Connecticut House of Representatives was to issue a report on his various ethical

violations.  On December 23, 2004, the defendant pleaded guilty to conspiracy to commit honest services fraud and tax fraud, in violation of 18 U.S.C. § 371.  *Id*.  On March 18, 2005, the defendant was sentenced to 12 months and 1 day of imprisonment and 3 years' supervised release, which he served.

Approximately three years after his release, Rowland resumed his criminal activity. Beginning in 2009, Rowland attempted to surreptitiously and fraudulently reinsert himself into the political process without the knowledge of the public or government agencies.  *See United States v. Rowland*, 826 F.3d 100 (2d Cir. 2016).  First, beginning in 2009, the defendant attempted to convince Mark Greenberg, who was exploring a run for the United States Senate, to hire him as a paid campaign consultant.  Although Greenberg turned down the deal, Rowland later attempted to use a sham draft contract with Greenberg's company to thwart the Government's investigation several years later.  Then, in the 2012 election cycle, the defendant conspired with U.S. House of Representatives candidate Lisa Wilson-Foley to hide his work as a campaign consultant by entering into another sham contract with the nursing home company owned Wilson-Foley's husband.

On September 19, 2014, the defendant was convicted by a jury of seven counts of falsification of records, conspiracy, false statements, and illegal campaign contributions.  On March 25, 2015, the defendant was sentenced by the Court to 30 months' imprisonment, followed by three years' supervised release, and a $35,000 fine.  The defendant was released from Bureau of Prisons custody on May 25, 2018 and has been on supervised release since then.  His supervised release is due to expire on May 24, 2021.

## II.   **Legal Standard**

A court is authorized to grant early termination of supervised release, after considering several factors in 18 U.S.C. § 3553(a), "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).  As relevant here, those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), and "the need for the sentence imposed to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant," §§ 3553(a)(2)(B) & (a)(2)(C). [1]

The decision to grant early termination of probation or supervised release rests within the sound discretion of the district court.  *United States v. Rasco*, No. 88 CR 817(CSH), 2000 WL 45438, at *3 (S.D.N.Y. Jan. 19, 2000).  Early termination, however, is "not warranted as a matter of course."  *United States v. Herrera*, No. 94 CR 1021 (RWS), 1998 WL 684471, at *2 (S.D.N.Y. Sept. 30, 1998).  "It may be justified 'occasionally' in cases of new or unforeseen circumstances." *Id.* (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)); *see Rasco*, 2000 WL 45438, at *1 ("Early discharge or another form of modification is appropriate to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release."). "Such relief is warranted only '[o]ccasionally,' when 'changed circumstances—for instance,

---

[1] The defendant also invokes certain non-statutory factors enumerated by the Judicial Conference's Guide to Judicial Policy. *See* Defendant's Memorandum at 2.  These factors were intended to guide the Probation Office, not the court, in assessing the appropriateness of recommending early termination. *See* Guide To Judiciary Policy, Vol. 8, Pt. E: "Supervision of Federal Offenders" (Monograph 109) §380.10(b) (setting out factors to guide whether early termination should be "recommended to the court" by the Probation Office); *see also* § 110 ("Part E: Supervision of Federal Offenders (Monograph 109) is designed to provide United States probation officers with guidance…").  Nonetheless, even after eighteen months, any recommendation must account for an "identified risk to the public." *Id.*  It is not clear that the Probation Office has accounted for the defendant's criminal history here; indeed, it has previously expressed significant concern with the defendant's pattern of abuses. *See* PSR § 115.

3

exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).'" *United States v. Weintraub*, 371 F. Supp. 2d 164, 166 (D. Conn. 2005) (Arterton, J.) (quoting *Lussier*, 104 F.3d at 36).

The defendant has the burden of demonstrating that circumstances warrant early termination. *Rasco*, 2000 WL 45438, at *3 ("If the defendant desires to have that period shortened he must show that the circumstances warrant it, not that the government cannot prove otherwise."). If the defendant presents no new or exceptional circumstances, early termination is not warranted. *Id*. ("While Rasco's good behavior in prison and on supervised release is laudable, I am not satisfied that his conduct has been so unusual as to merit the early termination of his supervised release."); *Herrera*, 1998 WL 684471 at *2 ("Although Herrera seems to have adjusted well to probation, there are no new or exceptional circumstances sufficient to warrant a termination of his probation term."); *United States v. Martin*, No. 89 Cr. 405 (DNE), 1992 WL 178585, at *1 (S.D.N.Y. July 13, 1992) ("The factors that led to imposition of the original sentence, however, remain unchanged. . . . This court does not find, nor does defendant even offer, the existence of new circumstances that merit a modification of the original sentence.").

Full compliance with the terms of supervision is expected and does not justify early termination. *United States v. Sheckley*, 129 F.3d 114 (2d Cir. 1997) (summary order) ("Triestman is, therefore, not entitled to early termination simply because he has successfully served a portion of his supervised release term."); *Weintraub*, 371 F. Supp. 2d at 167 (denying 77-year old defendant's motion for early termination of supervised release absent exceptional good behavior or illness); *Rasco*, 2000 WL 45438, at *2; *United States v. Medina*, 17 F. Supp. 2d 245, 247

(S.D.N.Y. 1998) (defendant's compliance "with the terms of his supervision is commendable, but ultimately that is what is expected of him").  If simple compliance with the terms of the Court's supervision were sufficient to justify early termination, "the exception would swallow the rule." *Id.*; *see also United States v. McKay*, 352 F. Supp. 2d 359, 361 (S.D.N.Y. 2005).

Early termination is not warranted simply because a defendant faces challenges in seeking or maintaining employment.  *United States v. Gross*, No. CR 05-0717 (ADS), 2012 WL 259923, at *2 (S.D.N.Y. Jan. 27, 2012) ("Also, the fact that supervised release has made it difficult to find new employment is not a reason to grant early termination.  Unfortunately, almost every supervised release presents this difficulty.").  "Mere inconvenience" to a defendant's employment "does not rise to the level of new or unforeseen circumstances that would warrant early termination."  *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. August 3, 2015).  Instead, to support early termination a defendant must establish "that remaining on supervised release will threaten his opportunities to advance or endanger any employment he may have."  *United States v. Bastien*, 111 F. Supp. 3d 315, 322 (E.D.N.Y. 2015); *see also Rasco*, 2000 WL 45438, at *2 ("More importantly, [the defendant] has not indicated that he is presently seeking to change jobs or that his supervised release has actually prevented him from obtaining more lucrative employment."); *United States v. Harris*, 689 F. Supp. 2d 692, 695 (S.D.N.Y. 2010) ("[Defendant] demonstrates convincingly that being on supervised release not only creates multi-faceted obstacles to his advancing in his company and ... industry ... but also places his employment at hazard in the present economic downturn."); *United States v. Buckler*, No. 08 CR 800 (SJ), 2011 WL 3439526, at *2 (E.D.N.Y. June 15, 2011) ("The supervised release conditions hinder Defendant's ability to accept invitations to perform in various venues, therefore hindering his ability to support his family. … The Court sees no reason to continue restrictions on

Defendant for the remainder of his supervised release term, during which time Defendant may maximize his earning potential as a street performer.").

## III.   **Discussion**

The sole basis advanced by the defendant for early termination—inconvenience to his new employer, Prison Fellowship—does not satisfy his burden to show changed circumstances such that a three-year term of supervised release is now "too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Weintraub*, 371 F. Supp. 2d at 166.  While the Government regrets any inconvenience to Prison Fellowship, these concerns simply cannot overcome the public's interest in the continued supervision of someone who has repeatedly violated the community's trust and gone to great lengths to hide those crimes from the view of authorities.

### A.  **The defendant's employment is not at risk.**

First, the defendant has not established that his continued supervision "will threaten his opportunities to advance or endanger any employment he may have." *Bastien*, 111 F. Supp. 3d at 322.  According to Prison Fellowship President James Ackerman, the defendant is in no risk of losing his job even if his motion for early termination is unsuccessful, and even if he cannot lead prison visits for the remainder of his supervision.[2]  Thus this case is distinguishable from *United States v. Harris*, F. Supp. 2d 692, 695 (S.D.N.Y. 2010), relied on by the defendant (Defendant's Memorandum. at 4), where the defendant's supervision "created multi-faceted obstacles to his

---

[2] Factual representations regarding the defendant's employment contained herein are principally drawn from a phone interview of James Ackerman, President and CEO of Prison Fellowship, on January 8, 2020.  The Government very much appreciates Mr. Ackerman's cooperation in verifying the circumstances of the defendant's employment, and the Government's position here is in no way meant to undermine or impede the important work being done by Mr. Ackerman and his colleagues.

advancing his company . . . [and] place[d] his employment in hazard."  In fact, this defendant has been successfully working for Prison Fellowship since approximately May 2018 despite his supervision.  As Northeast Development Director, the defendant has already raised millions of dollars from major donors principally in New York, Connecticut, Massachusetts, and New Jersey.  According to Mr. Ackerman, the defendant has been successful in raising money—far more so than his predecessor—both because of his background as well as donors' interest in meeting him.

Second, the defendant's supervision is an inconvenience to Prison Fellowship, but not an impediment either to the organization's mission or the defendant's gainful employment there.  According to Mr. Ackerman, prison visits occur on average approximately once per month in the defendant's region.  A prison visit is one of the most important tools the organization has to show donors the organization's work in prisons, and may include attending a program class or a graduation.  Where the defendant has been prevented from taking donors into a prison, Prison Fellowship has used a proxy to accompany donors into the prison.  According to Mr. Ackerman, this has been a "pain in the neck" for Prison Fellowship, but has not proven insurmountable and has not prevented the defendant from effective fundraising.

**B.  The defendant has not demonstrated exceptionally good behavior.**

Contrary to the defendant's contention, the simple fact of his employment at Prison Fellowship is not indicative of such "exceptionally good behavior" that the interests of justice no longer demand the sentence the Court originally imposed.  *Weintraub*, 371 F. Supp. 2d at 166.  There is no question that Prison Fellowship is doing meaningful work helping prisoners better themselves and prepare for life after incarceration.  However, the defendant is not a volunteer in advancing those goals.  Rather, he is paid a low six-figure salary for his principal marketable assets—his name recognition and his well-honed fundraising skills—on behalf of an organization

situated to take advantage of his status as a recently incarcerated offender. While there is certainly nothing wrong with the defendant doing so, it is hardly "exceptional" conduct or an indicator that "he is seriously committed to returning to a life of serving others." Defendant's Memorandum at 6.[3] Indeed, the defendant's invocation of his prior public service as evidence of this supposed commitment lacks credibility given his history of putting his own interests above those of society.

### C. The legitimate public interest in supervision outweighs the inconvenience to Prison Fellowship.

The § 3553(a) factors warranting the imposition of the defendant's sentence are as real today as they were when originally imposed, and outweigh the inconvenience to the defendant's employer. In particular, the defendant committed a serious crime warranting significant punishment, as recognized by this Court in imposing 30 months' imprisonment and three years of supervised release; the defendant's criminal history has seen him repeatedly reject society's rules in favor of his own ego and financial self-interest; and the Court should be sufficiently concerned with the possibility of recidivism here that continued supervision is appropriate.

      1.    The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1)).

Despite the defendant's renewed attempts to minimize his conduct in this case, *see* Defendant's Memorandum at 7 ("While Mr. Rowland appreciates the seriousness of his offense, there was no violence that occurred in connection with the offense."), the defendant's crime was an attack on a core facet of our democracy, that is, fair and transparent elections. One letter to the

---

[3] There are echoes of the defendant's post-incarceration conduct from his earlier conviction. Following his first release from prison, he earned hundreds of thousands of dollars through talk shows and speaking engagements, and also took a position as Waterbury's economic development director, claiming in 2008 that his position in Waterbury "has qualities of redemption. The city gets a second chance. I get a second chance." *See* Doc. 182 at 12. Unfortunately, his "redemption" was short lived, as his next offense began the following year.

Court at sentencing noted that "the election process must have integrity for voters to believe in democracy," and the Court observed that enforcement of the campaign finance laws "is how you achieve a free and open campaign process."  Sentencing Transcript ("Sen. Tr.") at 76-77.  By hiding his involvement in Lisa Wilson-Foley's campaign through lies and sham contracts, the defendant placed his own financial interests and his own ego ahead of these vital democratic principles.  Worse yet, the defendant did not just corrupt the campaign reporting process, but he also manipulated the public through using his position as a talk show host to advocate for Wilson-Foley and attack her adversaries without revealing that he was being paid to do so.

Moreover, not only was the defendant's present offense of conviction spread over several years and two election cycles, but it came directly on the heels of his sentence for another insidious attack on our political system, that is, his conviction for accepting illegal gratuities while Governor. As the Probation Office found, "[t]here is a troubling pattern that emerges from Mr. Rowland's history.  Unethical behavior while in office, accepting things of value in exchange for his political influence, and now similar types of conduct where there are clandestine agreements made to exchange money for power and control." PSR ¶ 115.  While these offenses are distinct and involve somewhat different harms, they are both characterized by an arrogance that has seen the defendant prize his own financial and political advancement over the interests of others, particularly the people of Connecticut.

> 2. The need to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B)) and the need to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C)).

Twenty months of good behavior while on supervised release has not altered the Government's and the Court's legitimate concerns regarding the possibility of recidivism.  The Court observed at sentencing, "Obviously, Mr. Rowland's prior incarceration did not bring about

the result which was believed would result at his first sentencing.  That is, he would never be seen in federal court again."  Sen. Tr. 78.  In fact, the defendant's most recent offense began in 2009, not long after the end of his supervision stemming from his first offense.  Only time will tell whether another conviction and 30 months' incarceration was sufficient to achieve the deterrence that the defendant's first conviction and year-and-a-day sentence did not.  But given the facts, and the defendant's proclivity toward hiding his unethical and illegal behavior, the Court should have little faith that the defendant's employment with Prison Fellowship reflects that he has been cured of any risk of reoffending.  Rather, the Court should proceed with particular caution in considering the application of a defendant who proven time and again that his self-interest will override his respect for the law and his fellow citizens.

Moreover, while general deterrence is not of overwhelming importance at this point, it is worth reiterating words spoken by the defendant in 2000 when he was still Governor—"When we run for public office, we ask for the public trust….  When that trust is violated, the damage becomes in some ways permanent because it is immediately part of our popular culture and part of the public's perception….  The public needs to know that offenders are punished under our system of government."  Doc. 182 at 14.  Despite the passage of time since he resigned from public office in disgrace, the public continues to pay close attention to his fate.  *See* Hartford Courant, "Ex-Gov. John Rowland asks for release from probation to devote himself to a new position in prison ministries," Jan. 14, 2020.  Following the defendant's own admonition, the public must know that the Court and the Government have not lost sight of the seriousness of the defendant's crimes against democratic principles, and will not excuse the defendant from the just punishment for those crimes.

**IV.     Conclusion**

For the reasons set forth herein, the motion for early termination of supervised release should

be denied.


Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


/s/
DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02874
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5376
david.novick@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY