UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:14cr79 (JBA) |
| v. | |
| | November 5, 2020 |
| JOHN G. ROWLAND | |

**RULING DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

Defendant John G. Rowland files this motion seeking early termination of his supervised release in order to be able to fulfill all his duties as a prison ministry employee. (Def.'s Mem. in Supp. of Early Termination [Doc. # 259-1] at 1.) The Government opposes his motion and maintains that early termination "is not warranted by the defendant's conduct or by concerns over his ability to perform his job." (Gov.'s Mem. in Opp. [Doc. # 261] at 1.) Defendant's probation officer does not object to Defendant's request. (Def.'s Mem at 1.) For the reasons that follow, Defendant's Motion for Early Termination of Supervised Release is DENIED.

**I. Background**

In 2004, Defendant John G. Rowland pleaded guilty to conspiracy to commit honest services fraud and tax fraud while he was serving as Governor of the State of Connecticut. (Gov.'s Mem. at 1-2.) After serving twelve months and one day of incarceration and three years of supervised release, ending on February 10, 2009, Defendant resumed the same type of criminal activity beginning in October 2009. (*Id.* at 2.) On September 19, 2014, Defendant was convicted by a jury of seven counts of falsification of records, conspiracy, false statements, and illegal campaign contributions. (Jury Verdict [Doc. # 146] at 1-2.) Defendant was sentenced to thirty months imprisonment followed by three years of supervised release and a $35,000 fine, which

he has since paid. (Judgment [Doc. # 244].) His supervised release is due to expire on May 24, 2021. (Gov.'s Mem. at 2.)

Following his release from prison, Defendant became the Director of Development for the Northeast Region of Prison Fellowship, a nonprofit organization that serves prisoners, former prisoners, and their families. (Def.'s Mem at 5.) As a part of his job, Defendant is expected to "visit prisons throughout all of New England, New York, New Jersey, Pennsylvania, and Ohio," showing the facilities to potential volunteers and donors. (*Id.* (internal quotation marks omitted).) Because of his status as a probationer on supervised release, he is unable to visit correctional facilities in New York and Ohio and state correctional facilities in Connecticut. (*Id.*) Defendant maintains that another employee cannot visit the prison in place of him because he has "personal relationships with over 125 potential donors." (*Id.* at 5.) Defendant therefore argues that his ability to fulfill his employment responsibilities is compromised, although he does not suggest any similar limitations related to all other prisons under his purview. In addition, Defendant maintains that his full compliance with the terms of his supervision, coupled with the nonviolent nature of his offense, indicate that the public interest would not be compromised by early termination of his supervision. (*Id.* at 6.) The Court disagrees.

## II.   Legal Standard

Defendant moves for release under 18 U.S.C. § 3583(e)(1), which permits the Court, after considering certain § 3553 sentencing factors, to "terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised released, [] if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." In determining whether early termination of supervised release is appropriate, the court considers "general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). Early release is warranted

> only occasionally, when changed circumstances – for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release will render a previously imposed term or

condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).

*Id.* at 166. "The decision whether to grant early termination rests within the discretion of the district court." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010); *see also id.*

### III.   Discussion

Defendant argues that early termination of his supervised release is appropriate because supervision prevents him from fulfilling the duties of his job and because his conduct on supervision has been "exemplary." (Def.'s Mem at 4, 6.)

    a.   *Defendant's Employment*

Defendant cites *Harris* for the proposition that a defendant's supervised release should be terminated when supervision interferes with his ability to fulfill his employment responsibilities. (Def.'s Mem. at 4 (citing *Harris*, 689 F. Supp. 2d, at 695).) In *Harris*, the defendant was sentenced to 188 months in prison and ordered to pay $200 million in restitution to the victims of his financial crimes. *Harris*, 689 F. Supp. 2d, at 692. After his release from prison, the defendant found a job in the petroleum business which involved working with clients and trading partners to increase business and to find new business in which his employer might invest. *Id.* at 693. However, his supervised release term prohibited him from entering into contracts on behalf of the company and required him to seek permission from the Probation Department before traveling outside of the jurisdiction. *Id.* The court granted the defendant's motion for early termination of supervised release, finding that his supervised release placed "his employment at hazard in the present economic downturn" and was unlikely to impact the "meaningful redress" of the $200 million in restitution owed to victims. *Id.* at 695.

Defendant Rowland argues that his circumstances are even more compelling than those of the defendant in *Harris* since Defendant's supervised release is interfering with his employment and, unlike the defendant in *Harris*, he has no outstanding debts to pay either to the Government or any victims. (Def.'s Mem. at 4.) The Government maintains that *Harris* is distinguishable from the instant case because Defendant has not actually demonstrated that supervised release will place his "employment in hazard." (Gov.'s Mem. at 6-7.) The Government

notes that Defendant has been employed by the Prison Fellowship for over a year and successfully raised millions of dollars from major donors throughout the region, indicating that his employment is not threatened by his supervision status and does not constitute a changed circumstance. (*Id.* at 7.)

Although the Court recognizes Defendant's positive contributions through Prison Fellowship, it nevertheless concludes that Defendant has failed to make a showing that his circumstances have changed in such a way that compels early supervision of supervised release. Unlike in *Harris*, there is no indication that Defendant's employment is in jeopardy as a result of his supervised release. During the time Defendant held this position while under supervision, he has apparently been very successful in raising money for Prison Fellowship's programs. Indeed, James Ackerman, President of Prison Fellowship, wrote that Defendant "is doing an excellent job for our ministry and we believe would be an even greater asset to those we serve if allowed to visit prisons across his territory," without indication that Defendant's continued employment is at risk. (Ackerman Letter, Ex. A to Def's Mem. [Doc. # 259-2].)

      b. *Defendant's Behavior During Supervision*

Defendant also argues that his post-release conduct also supports his early termination of supervised release. (Def.'s Mem. at 6.) Defendant maintains that he has complied with all the terms of his supervision, has had no trouble with the law since his release, and is described by his probation officer as an "exemplary probationer." (*Id.*) In light of his successful reintegration into the community and the nonviolent nature of his offense, Defendant argues that there is no risk to the community if the Court were to terminate his supervision. (*See id.* at 7-8.)

The Government disputes that Defendant has demonstrated exceptionally good behavior, instead contending that he has merely complied with the conditions of his supervision. (Gov.'s Mem. at 4.) The Government maintains that compliance is insufficient to justify early termination because, otherwise, "the exception would swallow the rule." (*Id.* (quoting *United States v. Sheckley*, 129 F.3d 114 (2d Cir. 1997).)   The   Government   further   argues   that   the

4

seriousness of Defendant's offense, his history of reoffending, and the need for general deterrence all support requiring Defendant to remain under supervision. (Gov.'s Mem. at 8-10.)

The Court acknowledges that Defendant has complied with all of his supervision conditions. However, strict compliance is not sufficient to trigger early termination of supervised release since strict compliance is expected of all defendants under supervision.

**IV. Conclusion**

The strictures on how Defendant is able to carry out the responsibilities of his job do not put Defendant's position at risk, and even though he might be able to do an even better job if not on supervision, that does not warrant termination of the term of supervision imposed. Given that this is Defendant's second time around in the arena of criminal breach of public integrity laws, the supervisory term of release is neither too harsh nor inappropriately tailored to serve the general punishment goals of § 3553(a). For the reasons set forth herein, Defendant's Motion for Early Termination from Supervised Release [Doc. # 259] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of November 2020.